## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAMILLE BARTLETT, BONNIE YURVATI, MICHAEL SITKUS, JACK GRANT, GLENN GODSHALL, and WILLIAM STAHLER, *Plaintiffs*, | : : : : | |
| | : | NO. 5:13-cv-04331-CDJ |
| | : | |
| vs. | : | |
| | : | |
| KUTZTOWN UNIVERSITY, PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION EAST STROUDSBURG UNIVERSITY, and the following individuals in their personal and professional capacities: JAVIER CEVALLOS, CARLOS VARGAS ABURTO, GERALD SILBERMAN, SHARON PICUS, JOHN GREEN THERESA FRITSCHE, and, MARCIA G. WELSH *Defendants*. | : : : : : : : : : | **JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

By way of counsel, The Kamber Law Group, P.C., Plaintiffs Camille Bartlett, Glenn Godshall, Jack Grant, Michael Sitkus, Bonnie Yurvati, and William Stahler, bring this Amended Complaint against Kutztown University, the Pennsylvania State System of Higher Education, East Stroudsburg University, Javier Cevallos, Carlos Vargas Aburto, Gerald Silberman, Sharon Picus, Theresa Fritsche, and Marcia G. Welsh, for engaging in employment discrimination and retaliation.

## I.    PRELIMINARY STATEMENT

This is an action for award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiffs Camille Bartlett, Glenn Godshall, Jack Grant, Michael Sitkus, Bonnie Yurvati, and William Stahler. These Plaintiffs are former employees of Defendant Kutztown University ("KU"), which is managed by the Pennsylvania State System of Higher Education ("PASSHE"), a state agency.  ESU, a state university, also is managed by PASSHE.

Between 2011 and 2012, KU and PASSHE terminated twelve employees without cause as part of an effort to reduce its workforce:  all twelve employees were over the age of fifty (50).

These were esteemed employees in management positions: two of these plaintiffs have Emeriti status from KU and all had excellent work records. Younger employees, and employees who were not disabled or female (in some departments), were treated substantially differently. Thereafter, several of these plaintiffs applied for positions with KU or other PASSHE universities, including East Stroudsburg University ("ESU"). They were repeatedly denied employment or reemployment by PASSHE universities.

This action is brought to remedy the effects of discrimination and retaliation under the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621 *et seq.,* ( "ADEA"), Title IV of the Civil Rights Act of 1964 and 1991, as amended, at 42 U.S.C. §2000e, *et seq.*, ("Title VII"), the Americans with Disabilities Act as amended, 42 U.S.C. §12111 *et seq.,* ("ADA"), the Equal Protection Act, 42 U.S.C. §1983, the Pennsylvania Human Relations Act, as amended, 43 Pa.C.S.A. §951 *et seq.*, ("PHRA"), and 42 U.S.C. §1986, for economic and equitable relief.

Plaintiffs filed a timely Complaint on July 24, 2013; Defendants filed a Motion to Dismiss on August 27, 2013. Plaintiffs now filed an Amended Complaint on September 12, 2013. Defendants filed a Motion to Dismiss and Sever on September 26, 2013. Plaintiffs filed this Second Amended Complaint on October 14, 2013. Defendants filed a Motion to Strike on October 17, 2013. This Court granted the Motion to Strike on October 21. Plaintiffs now seek to refile their Second Amended Complaint, along with a Motion for Leave to File Plaintiff's Second Amended Complaint in Excess of Twenty Pages and Motion in Opposition to Defendants' Motion to Sever.

## II.    **PARTIES**

1.    Plaintiff Camille Bartlett, is an adult individual residing at 7902 Claussville Rd. Fogelsville, PA 18051 and a former employee of KU ("Bartlett").

2.    Plaintiff Glenn Godshall is an adult individual residing at 36 Keith Lane, Kutztown, PA 19530 and a former employee of KU ("Godshall").

2

3.      Plaintiff Jack Grant is an adult individual residing at 7870 Crosswinds Way, Mount Dora, FL 32757 and a former employee of KU ("Grant").

4.      Plaintiff Michael Sitkus is an adult individual residing at 205 Norwegian Woods Drive, Pottsville, PA 17901 and a former employee of KU ("Sitkus").

5.      Plaintiff Bonnie Yurvati is an adult individual residing at 524 College Garden Drive, Kutztown, PA 19530 and a former employee of KU ("Yurvati").

6.      Plaintiff Dr. William Stahler is an adult individual residing at 482 West Walnut Street, Kutztown, Pennsylvania 19530 and a former employee of KU ("Stahler").

7.      Defendant Kutztown University is a PASSHE university; it is located at 15200 Kutztown Road, P.O. Box 730, Kutztown, PA 19530 ("KU").

8.      Defendant East Stroudsburg University is a PASSHE university; it is located at 200 Prospect Street, East Stroudsburg, PA 18301 ("ESU").

9.      Defendant Pennsylvania State System of Higher Education is a governmental agency located at 2986 N 2nd Street, Harrisburg, PA 17110. ("PASSHE"); it operates fourteen public colleges in Pennsylvania, including Defendants KU and ESU.

10.     Defendant Carlos Vargas is an adult individual; as Provost and Vice President for Academic & Student Affairs for KU, his last known address is 15200 Kutztown Road, P.O. Box 730, Kutztown, PA 19530 ("Vargas").

11.     Defendant Javier Cevallos is an adult individual; as President of KU, his last known address is 15200 Kutztown Road, P.O. Box 730, Kutztown, PA 19530 ("Cevallos").

12.     Defendant Gerald Silberman is an adult individual; as Vice President of Administration and Finance for KU, his last known address is 15200 Kutztown Road, P.O. Box 730, Kutztown, PA 19530 ("Silberman").

13.     Defendant Sharon Picus, is an adult individual; as Executive Director of Human

Resources for KU, her last known address is 15200 Kutztown Road, P.O. Box 730, Kutztown, PA 19530 ("Picus").

14.     Defendant John Green, is an adult individual; as Associate Vice President for University Advancement for KU, his last known address is 15200 Kutztown Road, P.O. Box 730, Kutztown, PA 19530 ("Green").

15.     Defendant Theresa Fritsche is an adult individual; as Director for Human Resources for ESU, her last known address is 200 Prospect Street, East Stroudsburg, PA 18301 ("Fritsche").

16.     Defendant Marcia Welsh is an adult individual; as President of ESU, her last known address is 200 Prospect Street, East Stroudsburg, PA 18301 ("Welsh").

**III.     JURISDICTION AND VENUE**

17.     This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343(3), 42 U.S.C. §§1983 and 1986; this Court has ancillary jurisdiction pursuant to 28 U.S.C. §1367.

18.     Venue is appropriate in this Court under 28 U.S.C. §§1391. The majority of the acts occurred within the jurisdiction of the Eastern District, and most of the parties work or live therein.

19.     All conditions precedent to the institution of this action regarding the EEOC and PHRC have been fulfilled; Plaintiffs' original Complaint was filed within 90 days of issuance of all Claimants' EEOC's Right to Sue letters.

20.     Although public universities, Defendants KU and ESU have not been judicially deemed "instrumentalities of the Commonwealth," and have been sued under federal and state discrimination laws to verdict, and therefore, are not shielded by the Eleventh Amendment of the Constitution from jurisdiction on these claims.

21.     Although a governmental agency, PASSHE has been sued under Section 1983 to verdict, and therefore, is not shielded by the Eleventh Amendment of the Constitution from jurisdiction on these claims.

22.     PASSHE, ESU and KU are "persons," as defined by Section 1983.

## III.    FACTUAL BACKGROUND

### A.    COMMON CLAIMS

23.     Over the past several years, KU and PASSHE have claimed ongoing "economic distress" to a myriad of public sources.

24.     Among the reasons for this economic distress, KU repeatedly has stated that retirement costs for employees are among the most draining expenses for the university. For example, KU produced an organizational powerpoint called the "Six Major Factors" identifying retirement costs as one of the most draining expenses of the university. Likewise in a meeting for the Business Office on reducing costs, Ken Long, a then-member of KU management, said "we need people to die to ease the retirement burden." Defendants have used the pretext of an economic shortfall to actively terminate older (and a subset of older female) employees close to benchmarks in their retirements.

25.     Despite these assertions of shortfall, at all relevant times, KU has continued to hire and engage in various expensive projects, such as campus forestry projects, hiring new employees and consultants. As Yurvati was told by a member of KU management, "we're not in a hiring freeze."

26.     With respect to termination policies, PASSHE has a termination policy, "Merit Principle Policy," which requires non-discriminatory treatment and due process rights relating to the termination of non-represented employees.  Through this process, PASSHE is supposed to serve as a neutral fact-finder and decision-maker.

27.     KU also is bound to follow the Civil Service law on furloughs. However, KU violated the Civil Service Law and its own policy in terminating these employees: for example, it was required to provide prior notice to its employees of its intent to terminate and that they would have an opportunity to rebut the decision.  KU neither provided neither prior notice nor an

5

opportunity to be heard to the employees.  KU is also required to prioritize furloughed employees for rehiring, which has failed to occur.

28.     Upon information and belief, PASSHE conspired with Defendants KU and ESU, along with other PASSHE schools, in their decision-making to terminate older workers and to deny them hiring and rehiring opportunities.

29.     As decision-makers, Defendants Cevallos, Vargas, Picus, Green and Silberman conspired to terminate and to refuse to rehire the plaintiffs.

30.     As decision-makers, Defendants Cevallos, Vargas, Picus, Penn-Mekile, Silberman, Fritsche, and Welsh conspired to refuse to hire/rehire Bartlett with KU or ESU.

31.     Between July 26, 2011 and April 25, 2012, Defendant KU terminated twelve employees an part of a university-wide "furlough" due to alleged economic conditions of the school.

32.     All twelve of the employees were over the age of fifty (50); not a single laid off individual on July 26, 2011, was under the age of fifty.

33.     All twelve of these employees not were fully vested in their retirement benefits and either  were close  to a benchmark or  lost significant benefits in their retirement plans due  to Defendants actions.

34.     These terminated employees were advised that furlough was financially-motivated and unrelated to performance, upon information and belief.

35.     Of those furloughed between July 2011 and April 2012, six are plaintiffs in this case: Bonnie Yurvati, Michael Sitkus, Glenn Godshall, Camille Bartlett, and Jack Grant. William Stahler was "laid off" not for cause shortly thereafter.

36.     Upon information and belief, the jobs or job duties for all, or nearly all, of the Plaintiffs have been replaced by significantly younger employees.  Upon information and belief: (1)

Camille Bartlett's job duties were given to Matthew Delaney and Amanda Kerns who are all younger than 40; (2) Glenn Godshall's job duties were given to Alex Ogeka, who is 35; (3) Bonnie Yurvati's job duties were given to Joe Mumbauer and Tony Rehrig who are both younger than 31, along with an Enterprise Business Director Application Analyst, David Jones, who is a male under the age of 40; (4) Mike Sitkus' job duties were given to Joe Mumbauer and Tony Rehrig who are both younger than 31, along with an Enterprise Business Director Application Analyst, David Jones, who is a male under the age of 40; (5) Jack Grant's job duties were taken over Nicole Becker, a full time KU employee who is approximately 25 years old, and, upon information and belief, some of Grant's duties were taken over as well by a contract employee under age 40; and (6) Dr. Stahler was replaced as Director of Admissions by Nancy Wunderly, who is substantially younger than Dr. Stahler and did not have a known disability.

37.     Defendants had uniformly good reviews and/or were recognized as Emeriti; Defendants had no legitimate non-discriminatory business reason for terminating Plaintiffs' employment and for failing to hire, or rehire, them.

38.     In October 2011, PASSHE created and issued a workplace policy, "Non-represented Employees Severance Program," which offered furloughed employees a severance in exchange for a full waiver of rights. This policy was backdated specifically to become effective from July 2011 so that it would relate back to the former employees terminated in July. PASSHE created, and KU enacted, this policy: (a) to curtail the multiple actions arising against KU (and possibly other universities) and (b) to mislead employees into waiving their rights before they learned they have a claim of discrimination. KU implemented this policy and offered it to former employees, including these Plaintiffs. While these Plaintiffs refused to sign, the policy shows a policy and practice of discrimination by the Defendants.

39.     Plaintiffs believe and aver that both KU and PASSHE has repeatedly refused to allow Plaintiffs to be considered for employment with PASSHE universities; and that the individual Defendants have retaliated against the plaintiffs by refusing to hire, recommend, and/or rehire them, because they exercised their EEOC rights.

40.     Upon information and belief, KU continues to force older workers (along with other protected workers) out of employment by avoiding termination but, instead, moving them into positions where they lack necessary skill sets.

41.     Upon information and belief, KU has continued to hire new employees and spend monies, which shows the pretextual nature of their claims of termination for economic hardship.

## B.      INDIVIDUAL CLAIMS

### i)      Bonnie Yurvati

42.     Plaintiff Bonnie Yurvati ("Yurvati") is age fifty-two (52) and with twenty-seven (27) years of work experience with KU.

43.     Yurvati worked as a Senior Systems Analyst in the department of Institutional Research, Planning and Systems Development.

44.     Prior to July 26, 2011, there were five Analysts and one supervisor in Yurvati's department: Yurvati, Sitkus, Paul Siegfried, and Lynold McGhee, were over the age of fifty (50); two Analysts were under the age of thirty-five (35).

45.     On July 26, 2011, KU and PASSHE terminated three of the employees over the age of 50: Yurvati, Sitkus, and their supervisor, Lynold McGhee; they retained two male analysts who were under the age of 35.

46.     They also retained Paul Siegfried, who was over the age of 50 and fully vested in his retirement, because he already had planned to retire.  Notably, when Siegfried provided a statement

in support of Plaintiffs' EEOC investigation, he was forced to retire even earlier due to duress by Vargas and/or Cevallos.

47.     On July 26, 2011, Richelyn Penn-Mekile and Carole Wells brought Yurvati into a meeting; they told her she was being furloughed, and it was strictly financial in nature and she was not being terminated due to performance.

48.     Yurvati asked them if she could (1) communicate with her supervisor about updating him on current projects; (2) use the restroom; and (3) go through her desk for her belongings. She was told she cannot speak to her supervisor, and was only allowed to use the restroom with a member of HR standing next to her in the bathroom itself. She was then escorted off the property by KU Police like a criminal.

49.     After she was terminated, Yurvati's job duties were performed by two substantially younger male individuals, as provided above; no women were left in the Department.

50.     Upon information and belief, KU and PASSHE, contrary to their stated claims of economic distress and the Civil Service Code, actively advertised to hire for Yurvati's position, but refused to consider Yurvati.

51.     Yurvati filed an EEOC and PHRC charge against both KU and PASSHE for age and gender discrimination on December 28, 2011.

52.     According to PASSHE and KU Merit Principle Policy, Yurvati had the option to appeal her layoff to PASSHE under PASSHE's "Merit Principle Appeal" policy, which states, in part, that employees will not be discriminated against or treated unfairly.

53.     Yurvati filed her Merit Principle Appeal with PASSHE based on discrimination.

54.     PASSHE and KU were aware of the EEOC Charges filed against them before Yurvati's Merit Principle Appeal hearing, before a PASSHE Hearing Examiner, on January 12, 2012.

55.     Defendant KU failed to present a prima facie case to PASSHE. For example, KU failed to present the final decision-makers (Cevallos and Vargas) at the hearing; it produced witnesses who openly contradicted their own testimony as to any alleged shortfall and the reasons for Yurvati's termination; and it failed to show an actual financial shortfall requiring the terminations.

56.     At the hearing, according to the admissions of Defendants Picus, Silberman, Steward, and other KU management, each of the Directors or appropriate supervisors, e.g. Carole Wells[1] and John Green, made their own lists as to who was to be terminated; the list was then subject to the approval of a group of Defendants including Picus, Cevallos, and Vargas as the final decisionmakers. Picus testified they knew everyone terminated on July 26, 2011 was over the age of 50. Picus further testified she was familiar with the disparate impact theory under the age discrimination acts but simply did not consider it.

57.     Despite the obvious failings by KU at the hearing, and despite being the alleged "neutral," PASSHE conducted an unfair hearing; over Yurvati's objections, it: (a) refused to sequester witnesses; (b) allowed in "evidence" that was incomplete and admittedly prepared for the sole purpose of the hearing by KU; (c) refused to permit evidence of job postings listed by KU contemporaneously or following Yurvati's termination; and (d) refused to allow a witness to testify as to the discrimination occurring at KU. PASSHE also refused to recuse Cathleen McCormack, Esquire over Yurvati's objections: McCormack represented KU, PASSHE, and ESU against Yurvati's EEOC Charge, but was also representing KU in front of a PASSHE Hearing Officer. Plaintiff avers that these events occurred in retaliation against Yurvati for filing her EEOC Charge.

---

[1] Wells is the Assistant Provost for KU and was a level above Yurvati's supervisor, Lynold McGhee. Upon information and belief, Wells made the decision to terminate Yurvati, instead of McGhee, as Wells also terminated McGhee, an African-American man over the age of fifty.

58.     The abuse of process continued; in retaliation for the EEOC filing, PASSHE issued a Preliminary Decision that included errors and misstatements. Yurvati filed lengthy Exceptions, explaining the errors. PASSHE ignored Yurvati's Exceptions without making substantive changes to the decision, and affirmed the Final Decision denying her reinstatement.

61.     Thereafter, Yurvati spoke to Silberman who told her not to bother trying to apply for reemployment with KU because she filed complaints against KU.

62.     Despite Silberman's advice not to apply for jobs, on January 18, 2013, Yurvati applied for a position with KU called "Fiscal Assistant" in the Accounts Payable office: Yurvati was qualified for the position as to all "minimum qualifications" and "preferred qualifications." KU and PASSHE rejected Yurvati without justification by via an e-mail on February 21, 2013.

### ii)     **Michael Sitkus**

63.     Plaintiff Michael Sitkus ("Sitkus") is age fifty-two ("52") and had  twenty-nine ("29") years of service with KU.

64.     Like Yurvati, Sitkus worked as a Senior Systems Analyst in the department of Institutional Research, Planning and Systems Development.

65.     On July 26, 2011, Sitkus was furloughed by the Assistant Vice President, Ken Steward, and by the Director of Human Resources, Dennis Engle; Sitkus was told that his furlough was strictly financial in nature and he was not being terminated due to performance.

66.     Sitkus was watched by Dennis Engle, Human Resources, as he packed his desk, and was escorted off the property by KU Police like a criminal.

67.     Like Yurvati, (a) Sitkus was one of the six employees employed in the department, (b) Sitkus was one of the three employees over the age of 50 who were terminated; (c) both employees under the age of 35 were retained; and (d) the only remaining Analyst over the age of 50 had already fully vested in retirement and had already announced his intent to retire.

68.     Upon information and belief, KU has actively advertised to hire for Sitkus' position, but have not considered Sitkus for rehire.

69.     Defendants KU and PASSHE, including the individual defendants named herein, treated Sitkus less favorably than employees younger than forty, and then retaliated against him because he filed a charge with the EEOC.

### iii)     Camille Bartlett

70.     Plaintiff Camille Bartlett ("Bartlett") is over the age of fifty (50) and had twenty two (22) years of service with KU.

71.     Bartlett was employed as the Director of Administrative Services and Dining Services under the Department of Administrative Services.

72.     Bartlett was furloughed by Silberman by telephone while she was on her honeymoon; Silberman told her that her furlough was strictly financial in nature and she was not being terminated due to performance.

73.     Upon return from her honeymoon, Bartlett was not permitted to visit KU during work hours, even to pack her personal belongings. Bartlett was required to come in after hours to pack her personal items while being watched by the Director of Human Resources and the Campus Police.  She was then escorted off campus by the Campus Police like a criminal.

74.     Bartlett's salary was derived primarily from income from auxiliary revenue generated from student meal plan fees; upon information and belief, terminating her did not save KU a substantive amount of money.

75.     Upon information and belief, Bartlett's job duties have been replaced by substantially younger individuals who are under the ages of forty (40).

76.     On December 15, 2011, Bartlett was granted Emeriti status by the KU Council of Trustees for her exceptional service.

77.     Bartlett was qualified, and applied, for a position of Temporary Enrollment Services Manager with ESU on August 5, 2011.

78.     She filed her EEOC charge in this case on or about December 28, 2011.

79.     On March 19, 2012, Plaintiff was notified by Fritsche, Director of Human Resources for ESU, that she was not selected "based on her qualifications."

80.     In November 2012, Plaintiff applied for the position of Chief of Staff at ESU; Fritsche again advised Bartlett that she did not meet the qualifications.

81.     Bartlett was qualified for both positions, but was not hired, upon information and belief, because ESU has conspired with KU and PASSHE to violate her rights because she had filed an EEOC charge against PASSHE and KU.

82.     Upon information and belief, Fritsche previously worked in Human Resources at KU, has maintained her friendships and contacts with KU, and conspired not to hire Bartlett.

83.     Upon information and belief, this conspiracy only occurred with the active involvement and consent on Maria Welsh.

84.     Although an Emeriti, Bartlett has not been invited to Emeriti university functions. Bartlett asked Cevallos' Chief of Staff why she was not invited to Emeriti events. She was told by Cevallos' staffperson that Cevallos stopped all of her invites because she filed an EEOC Complaint.

85.     Defendants KU, PASSHE and ESU, including the individual defendants named herein, treated Bartlett less favorably than male employees and employees younger than forty, and then retaliated against her because she filed a charge with the EEOC.

### iv)     Glenn Godshall

86.     Plaintiff Glenn Godshall ("Godshall") is age sixty-four (64), a veteran, and had twelve (12) years of service with KU.

87.     Godshall was employed as Director of Alumni Relations for KU.

88.     On July 26, 2011, Godshall was called into a meeting with Green, who informed of his furlough; Green told him that his furlough was strictly financial, and not due to performance. Godshall was watched by Human Resources as he packed his desk and he was escorted off the property by KU Police like a criminal.

89.     Upon information and belief, Godshall was replaced by two substantially younger individuals under the age of forty (40).

90.     Other younger employees in Alumni Relations were provided positions elsewhere within the University; Godshall was not offered another position.

91.     On September 22, 2011, Godshall was granted Emeriti status by the KU Board of Trustees for his service to KU.

92.     Upon information and belief, Godshall, as an Emeriti, has not received all invitations and benefits conferred on other Emeriti in retaliation for his filing an EEOC Charge.

93.     By this termination, Godshall has lost income, pension benefits, health insurance, dental insurance, and has suffered extreme embarrassment, mental distress, and humiliation.

94.     Defendants KU and PASSHE, including the individual defendants named herein, treated Godshall less favorably than employees younger than forty, and then retaliated against him because he filed a charge with the EEOC.

### v)     **Jack Grant**

95.     Plaintiff Jack Grant ("Grant") is sixty-five (65) years old, a veteran, and had six (6) years of service with KU.

96.     Grant was employed as an Internal Operations and Data Manager in the Undergraduate Admissions Department.

97.     Grant was furloughed by Dennis Engle, Human Resources, on July 26, 2011; he was told that his furlough was strictly financial in nature and he was not being terminated due to performance.

98.     Grant was told to turn over his badge and keys, was watched by Human Resources as he packed his desk, and was escorted off the property by KU Police, like a criminal.

99.     Upon information and belief, KU has replaced Grant with a substantially younger employee under the age of forty (40).

100.    By this termination, Grant has lost income, pension benefits, health insurance, dental insurance, and has suffered extreme embarrassment, mental distress, and humiliation.

101.    Defendants KU and PASSHE, including the individual defendants named herein, treated Grant less favorably than male employees and employees younger than forty, and then retaliated against him because he filed a charge with the EEOC.

### vi)    William Stahler

102.    Plaintiff Dr. William Stahler is age sixty-five (65) with nine (9) years of experience with KU.

103.    Dr. Stahler has over thirty (30) years of experience in college admissions; he started with Defendants in 2002 as the Director of Admissions at KU.

104.    Every year, Dr. Stahler received excellent evaluations and achieved or exceeded enrollment goals relating to size, diversity and academic quality of students.

105.    In 2004, Dr. Stahler was appointed Chair of the Enrollment Management Team for the university; he also was a member of the Middle States Review Team, which is an honor.

106.    Dr. Stahler's work as Director was demonstrably excellent: (a) university enrollment increased from eight thousand five hundred to ten thousand seven hundred (8,500 to 10,700) students; new transfer students increased from 424 in 2002 to 760 in 2010; (b) he met all of the

school's enrollment goals; and (c) in March 2011, Dr. Stahler created a surplus of funds in the amount of $50,000 for Defendants. Because of his repeated success in recruiting undergraduates, in 2010, Dr. Stahler was given the responsibility to handle enrollment for Graduate Admissions.

107.    In April 2010, Dr. Stahler suffered a heart attack.

108.    In or about May 2010, Dr. Stahler was not cleared to return to work yet. Despite this, Defendant Vargas insisted that Dr. Stahler (1) return to work on-site, (2) perform a presentation, and (3) visit a high school in Philadelphia. Dr. Stahler explained he was not yet cleared to work; Vargas told him he had to fulfill these obligations, nonetheless. Given Vargas's insistence, and despite his medical condition and lack of clearance for work, Dr. Stahler performed these tasks.

109.    On or about February 2011, Vargas notified Dr. Stahler that he would be terminated as Director of Admissions as soon as a new candidate could be found and Vargas offered Stahler a non-existent position of Director of Academic Initiatives, which did not then exist and would have been a demotion. Vargas then told him that if he did not take that position, he should anticipate being replaced within three weeks.

110.    In February, Vargas indicated that no candidate was found yet, and Dr. Stahler may be kept on as Director of Admissions through Fall 2011.

111.    Dr. Stahler sought positions elsewhere within and outside the university. In April 2011, the Dean of the College of Visual and Performing Arts offered Stahler a job as Associate Dean, beginning in July 2011.

112.    Although it was a demotion from Director of Admission, it was an existing position, and Dr. Stahler accepted the job.

113.    At the same time, Dr. Stahler was offered a position as a Director of Admissions at different college; Dr. Stahler rejected the offer based on his reliance for the offer of Associate Dean.

16

114.    In May 2011, Vargas informed Dr. Stahler that he would not allow Stahler to take the position of Associate Dean. While Vargas would allow Stahler to perform the obligations of the job, he only agreed to have Stahler serve as an "Interim Assistant Dean." Interim Assistant Dean is not only a demotion from Associate Dean; it is also a temporary position.

115.    In July 2011, Dr. Stahler took the position of Interim Assistant Dean.

116.    In April 2012, Vargas informed Dr. Stahler that his job as Interim Assistant Dean was "ending." Dr. Stahler asked if the position of the Director of Academic Initiatives was available and filled; Vargas informed Dr. Stahler that the position was not filled, but would not be filled due to anticipated budgetary constraints.

117.    Vargas terminated Dr. Stahler on April 25, 2012. Upon his termination in 2012, Dr. Stahler applied for multiple other positions for which he was qualified at other PASSHE universities. Of the fourteen PASSHE universities, four PASSHE schools, in addition to KU, had openings for which Dr. Stahler was qualified; and he applied for employment. Dr. Stahler interviewed at Edinboro University, Lock Haven University, Slippery Rock University, and Cheyney University, all PASSHE schools. Despite excellent credentials and interview process, and despite his alleged termination not for cause, Dr. Stahler did not receive any job offers from any other PASSHE schools.

118.    In February 2012, Dr. Stahler was replaced as Director of Admissions by Nancy Wunderly, who is substantially younger than Stahler and did not have a known disability.

119.    Defendants KU and PASSHE, including the individual defendants named herein, treated Stahler less favorably than non-disabled employees and employees younger than forty, and then retaliated against him because he filed a charge with the EEOC.

## IV.    CLAIMS

### COUNT I:  AGE DISCRIMINATION UNDER THE ADEA
*(All Plaintiffs v. Defendant KU)*

120.     Plaintiffs repeat their allegations from Paragraphs 1-119.

121.     It is believed, and therefore averred, that Defendants terminated Plaintiffs based on age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et. seq.*

## COUNT II: AGE RETALIATION UNDER THE ADEA
### *(All Plaintiffs v. Defendants KU, PASSHE, and ESU)*

122.     Plaintiffs repeat their allegations from Paragraphs 1-121.

123.     It is believed, and therefore averred, that Defendants refused to hire or rehire Plaintiffs based on age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et. seq.*

## COUNT III:  GENDER DISCRIMINATION UNDER TITLE VII
### *(Plaintiffs Bartlett and Yurvati v. Defendant KU)*

124.     Plaintiffs repeat their allegations from Paragraphs 1-123.

125.     It is believed, and therefore averred, that Defendants discriminatorily and systematically terminated Plaintiffs Bartlett and Yurvati based on gender, in violation of Title VII, 42 U.S.C. §2000(e), *et. seq.*

## COUNT IV:  GENDER RETALIATION UNDER TITLE VII
### *(Plaintiffs Bartlett and Yurvati v. Defendant KU)*

126.     Plaintiffs repeat their allegations from Paragraphs 1-125.

127.     It is believed, and therefore averred, that Defendants retaliated against Plaintiffs Bartlett and Yurvati by refusing to hire or rehire them, in violation of Title VII, 42 U.S.C. §2000(e), *et. seq.*

## COUNT V:  DISCRIMINATION BASED ON VIOLATIONS OF THE ADA
### *(Stahler v. Defendant KU)*

128.     Plaintiffs repeat their allegations from Paragraphs 1-127.

129.    It is believed, and therefore averred, that Defendants, in a continuous violation, discriminatorily and systematically demoted and terminated Stahler in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*

### COUNT VI:  DISCRIMINATION UNDER 42 U.S.C. §1983
*(All Plaintiffs v. Defendants KU, ESU and PASSHE)*

130.    Plaintiffs repeat their allegations from Paragraphs 1-129.

131.    It is believed, and therefore averred, that Defendants discriminated against the Plaintiffs in violation of the Equal Protection Clause, with respect to not only their inclusion in protected classes, but also with respect to the due process denied Yurvati through her hearing with PASSHE and the refusal to comply with Civil Service Law, as provided under 42 U.S.C. §1983.

132.    Plaintiffs seek monetary relief; Plaintiffs further seek equitable relief and remedies, as provided herein, in addition to any remedies available at law.

### COUNT VII:  DISCRIMINATION UNDER 42 U.S.C. §1983
*(All Plaintiffs v. All Named Individuals Defendants in their Professional Capacities)*

133.    Plaintiffs repeat their allegations from Paragraphs 1-132.

134.    It is believed, and therefore averred, that Defendants discriminated against the Plaintiffs in violation of the Equal Protection Clause, with respect to not only their inclusion in protected classes, but also with respect to the due process denied Yurvati through her hearing with PASSHE and the supervisors' refusal to comply with Civil Service Law, as provided under 42 U.S.C. §1983.

135.    Plaintiffs seek monetary relief; Plaintiffs further seek equitable relief and remedies, as provided herein, in addition to any remedies available at law.

### COUNT VIII:  DISCRIMINATION UNDER 42 U.S.C. §1983
*(All Plaintiffs v. All Named Individual Defendants in their Individual Capacities)*

136.    Plaintiffs repeat their allegations from Paragraphs 1-135.

137.   It is believed, and therefore averred, that Defendants discriminated against the Plaintiffs in violation of the Equal Protection Clause, with respect to not only their inclusion in protected classes, but also with respect to the due process denied Yurvati through her hearing with PASSHE and the refusal to comply with Civil Service Law, as provided under 42 U.S.C. §1983.

138.   Plaintiffs seek monetary relief; Plaintiffs further seek equitable relief and remedies, as provided herein, in addition to any remedies available at law.

## COUNT IX:  DISCRIMINATION BASED ON AGE UNDER THE PHRA
### (All Plaintiffs v. Defendant KU)

139.   Plaintiffs repeat their allegations from Paragraphs 1-138.

140.   It is believed, and therefore averred, that Defendant KU discriminated against Plaintiffs due to age, in violation of the Pennsylvania Human Relations Act, 43 P.S. 951, *et. seq.* ("PHRA").

## COUNT X:  DISCRIMINATION BASED ON DISABILITY UNDER THE PHRA
### (Stahler v. Defendant KU)

141.   Plaintiff Stahler repeat his allegations from Paragraphs 1-140.

142.   It is believed, and therefore averred, that Defendants discriminated against Plaintiff due to disability, in violation of the PHRA.

## COUNT XI[1]:  DISCRIMINATION BASED ON GENDER UNDER THE PHRA
### (Bartlett and Yurvati v. Defendant KU)

143.   Plaintiffs repeat their allegations from Paragraphs 1-142.

144.   It is believed, and therefore averred, that Defendants discriminated against Plaintiffs due to their gender as sex-plus cases, in violation of the PHRA.

## COUNT XII:  RETALIATION BASED ON VIOLATIONS OF THE PHRA
### (All Plaintiffs v. Defendants KU, PASSHE, and ESU)

145.   Plaintiffs repeat their allegations from Paragraphs 1-144.

---

[1]   For administrative ease, Plaintiffs have renumbered this "second" Count X and subsequent Counts.

146.   It is believed, and therefore averred, that Defendants retaliated against Plaintiffs by conspiring and refusing to hire/rehire them in violation of the PHRA.

### COUNT XIII:  AIDING AND ABETTING AS VIOLATIONS OF THE PHRA
*(All Plaintiffs v. All Named Individual Defendants)*

147.   Plaintiffs repeat their allegations from Paragraphs 1-146.

148.   It is believed, and therefore averred, that Defendants Cevallos, Vargas, Silberman, Picus, and Green knew, had reason to know, and/or personally participated in some of said actions described herein, and discriminated and retaliated against Plaintiffs in violation of the PHRA.

149.   It is believed, and therefore averred, that Defendants Fritsche and Walsh knew, had reason to know, and/or personally participated in the said actions described herein, and thereby retaliated against Plaintiff Bartlett, in violation of the PHRA.

### COUNT XIV:  DECLARATORY AND INJUNCTIVE RELIEF
*(All Plaintiffs v. All Defendants)*

150.   Plaintiffs repeat their allegations from Paragraphs 1-149.

151.   There exists an actual, present and justiciable controversy between Plaintiffs and Defendants concerning their rights and duties with respect to Defendants' conduct  described herein. Plaintiffs contend that Defendants violated Plaintiffs' rights under the constitutions and laws of the United States and the Commonwealth of Pennsylvania. Upon information and belief, Defendants deny that their conduct violated Plaintiffs' legal rights. Plaintiffs fear that the discrimination and harassment they have received, and others as well, will continue, and therefore seek a judicial declaration that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States and the Commonwealth of Pennsylvania.

## VI.   REMEDIES REQUESTED

WHEREFORE and as the direct and proximate result of Defendants' discriminatory and retaliatory treatment, Plaintiffs have been caused to suffer and is requesting damages in the form of

lost wages; anticipated wages; benefits; health insurance (including vision, dental, and other benefits); tuition reimbursement; out-of-pocket expenses, attorney's fees and costs; emotional distress; mental anguish; reinstatement; reinvestment in the Plaintiffs' lifetime healthcare annuity; bridging to full vesting in pension and retirement; pain and suffering; inconvenience; humiliation; loss of the enjoyment of life; and punitive damages, equaling four million dollars for all Plaintiffs. Plaintiffs further demand attorneys' fees, as provided under 42 U.S.C. Section 1988 for all claims related to Plaintiffs' claims under Section 1983. Plaintiffs further request equitable relief, declaratory and injunctive relief directing Defendants to cease its discriminatory and retaliatory failure to hire/rehire and to place a statement publicly in each Plaintiff's personnel file stating Defendants terminated and failed to rehire each Plaintiff solely for discriminatory reasons, and other such relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Rule 38(b), Federal Rules of Civil Procedure plaintiffs demand trial by jury for all the issues plead herein.

Dated: <u>October 14, 2013</u>  By: /s/ *Deirdre Kamber Todd*
        Deirdre Kamber Todd
        ID No. 92613
        THE KAMBER LAW GROUP, P.C.
        1275 Glenlivet Drive, Suite 100
        Allentown, PA 18106
        (484) 224-3059
        dkambertodd@kamberlawgroup.com
        *Attorney for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CAMILLE BARTLETT, BONNIE YURVATI, | : | |
| MICHAEL SITKUS, JACK GRANT, GLENN | : | |
| GODSHALL, and WILLIAM STAHLER, | : | |
| *Plaintiffs*, | : | **NO. 5:13-cv-04331-CDJ** |
| | : | |
| vs. | : | |
| | : | |
| KUTZTOWN UNIVERSITY, PENNSYLVANIA | : | |
| STATE SYSTEM OF HIGHER EDUCATION | : | |
| EAST STROUDSBURG UNIVERSITY, and the | : | |
| following individuals in their personal and | : | **JURY TRIAL DEMANDED** |
| professional capacities: JAVIER CEVALLOS, | : | |
| CARLOS VARGAS ABURTO, GERALD | : | |
| SILBERMAN, SHARON PICUS, JOHN GREEN | : | |
| THERESA FRITSCHE, and, MARCIA G. WELSH | : | |
| *Defendants*. | : | |

## CERTIFICATE OF SERVICE

I, Deirdre Kamber Todd, hereby certify Plaintiffs' Second Amended Complaint has been filed electronically on October 26, 2013, and is available for viewing and downloading from the Court's Electronic Case Filing ("ECF") System. Defendants' counsel, *Office of the Attorney General*, is registered with the court's electronic email notice list for service, and therefore has been served in accordance with the Rules of Court.


Date: <u>October 26, 2013</u>          By: /s/  *Deirdre Kamber Todd*
                                            Deirdre Kamber Todd
                                            ID No. 92613
                                            THE KAMBER LAW GROUP, P.C.
                                            1275 Glenlivet Drive, Suite 100
                                            Allentown, PA 18106
                                            *Attorney for Plaintiffs*

1

## VERIFICATION

I, _BONNIE YURVATI_, hereby state and aver that I have read the foregoing **COMPLAINT**. The factual statements contained therein are true and correct to the best of my knowledge, information and belief. This statement is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if we make knowingly false statements, we may be subject to criminal penalties.

10/14/2013                          _Bonnie L Bailey Yurvati_

## <u>VERIFICATION</u>

I, _Glenn Godshall_, hereby state and aver that I have read the foregoing

**COMPLAINT**. The factual statements contained therein are true and correct to the best of my

knowledge, information and belief. This statement is made subject to the penalties of 18 Pa.

C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if we make

knowingly false statements, we may be subject to criminal penalties.

DATE: _10/15/13_

1

## VERIFICATION

I, _William J. Stahler_ hereby state and aver that I have read the foregoing

**COMPLAINT**. The factual statements contained therein are true and correct to the best of my

knowledge, information and belief. This statement is made subject to the penalties of 18 Pa.

C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if we make

knowingly false statements, we may be subject to criminal penalties.

DATE: _10/14/13_                        _W) stahl_

1

### VERIFICATION

I, _JACK A. GRANT_ hereby state and aver that I have read the foregoing

**COMPLAINT**. The factual statements contained therein are true and correct to the best of my

knowledge, information and belief. This statement is made subject to the penalties of 18 Pa. C.S.A.

§ 4904 relating to unsworn falsification to authorities, which provides that if we make knowingly

false statements, we may be subject to criminal penalties.

OCT. 15, 2013

## VERIFICATION

I, _Camille Bartlett_ hereby state and aver that I have read the foregoing **COMPLAINT**. The factual statements contained therein are true and correct to the best of my knowledge, information and belief. This statement is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if we make knowingly false statements, we may be subject to criminal penalties.

_Camille Bartlett_

## VERIFICATION

I, Michael Sitkus , hereby state and aver that I have read the foregoing COMPLAINT. The factual statements contained therein are true and correct to the best of my knowledge, information and belief. This statement is made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities, which provides that if we make knowingly false statements, we may be subject to criminal penalties.

Michael Sitkus