IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAMILLE BARTLETT, et al.                          :
                        PLAINTIFFS                :
        v.                                        :
                                                  :
KUTZTOWN UNIVERSITY, et al.                       :        NO. 13cv4331
                        DEFENDANTS                :

**ORDER**

     AND NOW, this      day of         , 2014, upon consideration of the Motion of

Kutztown University of Pennsylvania, the Pennsylvania State System of Higher Education and

East Stroudsburg University of Pennsylvania, Javier Cevallos, Carlos Vargas, Gerald Silberman,

Sharon Picus, John Green, Teresa Fritsche and Marcia G. Welsh to dismiss the second amended

complaint against them and alternatively to sever and change venue, it is hereby ORDERED that

the motion is GRANTED.  The second amended complaint is dismissed with prejudice, except for

the PHRA retaliation claim by Yurvati and Bartlett in Count X against Kutztown University which

is unripe or unexhausted and thus dismissed without prejudice to plaintiffs' raising that claim in

state court.

                                     BY THE COURT:


_____
     C. Darnell Jones, II, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAMILLE BARTLETT, et al.              :
                    Plaintiffs        :
        v.                            :
KUTZTOWN UNIVERSITY, et al.           :       NO. 13cv4331
                    Defendants        :

**MOTION OF DEFENDANTS TO DISMISS THE SECOND AMENDED
COMPLAINT AND TO SEVER AND CHANGE VENUE**

All defendants—Kutztown University, the Pennsylvania State System of Higher Education

(PASSHE) and East Stroudsburg University, Javier Cevallos, Carlos Vargas, Gerald Silberman,

Sharon Picus, John Green, Teresa Fritsche and Marcia G. Welsh—move to dismiss the second

amended complaint against them, pursuant to Fed.R.Civ.P. 12(b) (1) and (6), incorporate the

attached memorandum of law and exhibited EEOC charges referred to in the amended complaint.

Defendants' motion to sever and change venue for any remaining claims against ESU,

PASSHE, Fritsche and Welsh is pending, incorporated, and renewed.  Plaintiffs did not respond to

the motion to sever and change venue, and only referenced it in their motion for leave to file their

second amended complaint.   In support of their motions, defendants rely upon the attached

incorporated memorandum of law.

Wherefore, this Court should dismiss the second amended complaint as set forth in the

attached proposed order.

Respectfully submitted,

KATHLEEN G. KANE
Attorney General
/s/ Sue Ann Unger
_____

Sue Ann Unger
Senior Deputy Attorney General
Attorney I.D. No. 39009
Gregory R. Neuhauser
Chief Deputy Attorney General

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107
215-560-2127; fx: 215-560-1031

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAMILLE BARTLETT, et al.     :
     Plaintiffs     :
 v.            :
             :
KUTZTOWN UNIVERSITY, et al.  :  NO. 13cv4331
     Defendants    :

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT AND TO SEVER AND CHANGE VENUE**

**I.  PROCEDURAL HISTORY**

 Plaintiffs, two female and four male former employees of Kutztown University of
Pennsylvania (KU), request damages, declaratory and injunctive relief for alleged employment
discrimination and retaliation.  Defendants are KU, the Pennsylvania State System of Higher
Education (PASSHE), East Stroudsburg University of Pennsylvania (ESU), five KU individuals in
their individual and "professional" capacities: Provost and Vice President for Academic and
Student Affairs Carlos Vargas, President F. Javier Cevallos, Vice President for Administration and
Finance Gerald Silberman, Executive Director of Human Resources Sharon Picus, and Associate
Vice President for University Advancement John Green; and two ESU individuals in their
individual and "professional" capacities: Director for Human Resource Management Teresa
Fritsche and President Marcia G. Welsh.

 Defendants moved to dismiss, and alternatively to sever and change venue.   Plaintiffs then
filed an amended complaint and second amended complaint.  They did not formally oppose the
motion as to venue, and motion for leave to file the second amended complaint addressed venue
for the first time, in part by extending claims against ESU beyond the alleged facts.  The claims in
the second amended complaint are in fourteen counts:

I    ADEA age discrimination—all plaintiffs v. KU
II    ADEA retaliation (age discrimination) —all plaintiffs v. KU, PASSHE and ESU
III    Title VII gender discrimination—Bartlett and Yurvati v. KU
IV    Title VII gender retaliation—Bartlett and Yurvati v. KU
V    ADA disability discrimination—Stahler v. KU
VI    Discrimination under 42 U.S.C. § 1983 equal protection—all plaintiffs v. KU, ESU, and PASSHE regarding Yurvati's hearing and non-compliance with Civil Service law.
VII    Discrimination under 42 U.S.C. § 1983 equal protection—all plaintiffs v. all individuals in their professional capacities regarding Yurvati's hearing and non-compliance with Civil Service law.
VIII    Discrimination under 42 U.S.C. § 1983 equal protection—all plaintiffs v. all individuals in their individual  capacities regarding Yurvati's hearing and non-compliance with Civil Service law.
IX    PHRA age discrimination—all plaintiffs v. KU
X    PHRA disability discrimination—Stahler v. KU
XI    PHRA gender discrimination—Bartlett and Yurvati v. KU
XII    PHRA retaliation—all plaintiffs v. KU, PASSHE and ESU
XIII    PHRA aiding and abetting—all plaintiffs v. all individuals
XIV    Declaratory and injunctive relief—all plaintiffs v. all defendants

Even after amending their complaint twice, plaintiffs fail to state a claim upon which relief may be granted.  Defendants thus move to dismiss all fourteen counts with prejudice, in addition to other issues that can be inferred as implicitly raised in the complaint.  Alternatively, defendants move to sever and change venue for the claims against ESU and its two officials.

II.    **FACTS ALLEGED**

Plaintiffs are six former management employees—two female and four male—terminated from their KU positions between 2011 and 2012.  §I, § II ¶¶1-6, 45.[1]  All are over age 50. §I. They sue PASSHE and two of its universities, KU and ESU (located in Monroe County), as well as the five KU individuals, each sued in their personal and "professional" capacities-- Provost and Vice President for Academic and Student Affairs Carlos Vargas; President F. Javier Cevallos; Vice President for Administration and Finance Gerald Silberman; Executive Director of Human

---

[1] All citations, not otherwise labeled, are to plaintiffs' Second Amended Complaint.

Resources Sharon Picus; Associate Vice President for University Advancement John Green—and two ESU individuals in their personal and "professional" capacities-- Director for Human Resource Management Teresa Fritsche and President Marcia G. Welsh.  Plaintiffs claim various forms of discrimination and retaliation as delineated below.

Plaintiffs make a conclusory claim to have exhausted their administrative remedies.  III (Jurisdiction and Venue) ¶19.  In doing so, plaintiffs refer to and rely upon their EEOC filings. *Ibid*., ¶¶ 22, 52, 54,  57, 58, 69, 85, 94, 101, 108, 119.  True and correct copies of the EEOC charges, attached hereto as exhibits D1, D2, D3 and D4, show that plaintiffs Bartlett, Yurvati, Sitkus, Grant and Godshall brought a EEOC/PHRA charge against KU and PASSHE for age discrimination, with Bartlett and Yurvati also claiming gender discrimination.  Exh.  D1 (No. 530-2012-01021).  Stahler brought a separate charge against KU and PASSHE for age and disability discrimination.  Exh. D2 (No. 530-2013-00320).  Yurvati brought a charge, dated March 8, 2013, against KU and PASSHE for retaliation.  Exh. D3 (No. 530-2013-01762)[2].  And, Bartlett brought a charge, dated May 2, 2013, against KU, PASSHE and ESU for retaliation.  Exh. D4 (No. 530-2013-02479).   After amending their complaint twice, plaintiffs still do not assert in any administrative retaliation charge by any other plaintiff.

Between July 26, 2011 and April 25, 2012, KU terminated twelve employees—all over age 50—as part of a university-wide "furlough." ¶31.   Plaintiffs are six of those twelve.  ¶35.  KU's workforce reduction due to economic distress is subject to Pennsylvania's Civil Service law and the PASSHE termination "Merit Principle Policy."  ¶¶23, 26-27.  All twelve employees were advised that their furloughs were financially-motivated, unrelated to performance.  ¶34.  All were

---

[2] Plaintiffs make a conclusion of law in Paragraph 19 that they have met all conditions precedent; yet despite revising their averments twice do not aver that the EEOC issued a right to sue letter to Yurvati for her retaliation claim, and do not aver that any retaliation charges (D3 and D4) were dual filed with the PHRC.

replaced by significantly younger employees.  ¶36 (upon information and belief).  Plaintiffs

conclude that defendants had no non-discriminatory business reason for terminating plaintiffs or

failing to hire or rehire them.  ¶37.

In October 2011, KU and PASSHE issued a policy to offer furloughed employees, as of

July 2011, a severance package in exchange for a full waiver of rights. ¶38.  Plaintiffs do not

allege that any of them accepted the severance package or waived their rights; yet they conclude

that the policy show discrimination.  *Id*.  Plaintiffs further conclude that their not being hired,

rehired or recommended for rehiring is retaliation for their EEOC filings, but only Yurvati and

Bartlett raised retaliation before the EEOC.   ¶39, D3, D4.

Plaintiffs Yurvati (female) and Sitkus (male) were two senior systems analysts in the same

KU department when they were terminated on July 26, 2011.  ¶¶64-65.  The department had five

analysts and a supervisor.  Two men under age 35 were retained; while three of the six, including

Yurvati and Sitkus, were terminated.  ¶67.  The department expected its sixth older member (who

is not a plaintiff) to retire soon as he planned; he subsequently retired "under duress by Vargas

and/or Cevallos."  ¶46.  Yurvati and Sitkus were told that the furloughs were strictly financial in

nature, and they were not being terminated due to performance.  ¶¶47, 65, 34.

 KU and PASSHE advertised for Yurvati's position but would not consider her.  ¶50.

Yurvati filed EEOC and PHRC charges for age and gender discrimination; she also challenged her

Merit Principle hearing raising an alleged conflict of interest, non-sequestration of witnesses, and

PASSHE's and KU's awareness of her EEOC charge.  ¶¶51-58, D1.  She concludes that

PASSHE's affirmance of the decision not to reinstate her was retaliation.  Defendant Silberman

advised her not to apply for jobs with KU.  ¶61.  She still applied for a job for which she was

qualified, but was rejected.  ¶62.

4

In the motion to dismiss the prior amended complaint, defendants challenged plaintiffs' apparent conclusion that some defendants treated Yurvati less favorably than male employees and employees younger than forty, and then retaliated against her because she filed a charge with the EEOC.   Defendants pointed out the lack of clarity of the retaliation claims.  The second amended complaint makes those claims even less clear and does not identify the protected activity that allegedly caused any retaliation.

KU and PASSHE also advertised for Sitkus' position but did not consider him.  ¶68.  It is not alleged that he applied for any position, or that anyone was hired.  Plaintiffs conclude that KU and PASSHE, including "the individual defendants named herein" treated Sitkus less favorably in the same respect as for Yurvati, except that the alleged discrimination towards Sitkus is limited to age alone, not gender.   ¶69.   No allegation apart from the vague conclusory reference of "individual defendants named herein" connects Sitkus to any ESU individual defendant.

Bartlett (female) was a director within a KU department.  ¶71.  Silberman furloughed her while she was off campus; presumably in July, 2011.  ¶72; *see* ¶73.  Bartlett's job duties have been replaced by others, under age 40 (genders not averred).  ¶75.  That allegation reasonably implies that that Bartlett's position was eliminated, and her duties were dispersed.  The KU Council of Trustees honored her with Emeriti status, but she has not received invitations extended to other Emeriti; she concludes that is because of her EEOC charge.  ¶84.  She applied for an ESU position in August 2011, prior to her EEOC charge; Fritsche, informed Bartlett after the EEOC charge was filed, that she was not selected based on her qualifications.  ¶¶77-79.  Bartlett later applied for a second ESU position for which she qualified, but again did not receive it.  ¶81.  Plaintiffs conclude that ESU conspired with KU and PASSHE to violate Bartlett's rights in retaliation for her EEOC charge.  ¶¶81-82 (upon information and belief).  ESU's head of Human Resources Fritsche maintained friendships and contacts with her former KU colleagues; plaintiffs conclude that the

5

contact includes a conspiracy not to hire Bartlett.  ¶¶15, 82 (upon information and belief).  Bartlett filed a second EEOC charge alleging retaliation.  Exh. D4.  Plaintiffs conclude that all defendants treated Bartlett less favorably (similar to Yurvati).  ¶85.

Godshall (male) was Director of KU's Alumni Relations.  ¶87.  He was furloughed in July, 2011 and told that the furlough was financial in nature, not due to performance.  ¶¶ 88, 34.  He was replaced by two substantially younger individuals, while other younger employees in Alumni Relations received positions elsewhere within KU.  ¶¶89-90.  Like Bartlett, Godshall received Emeriti status but was not extended invitations that other Emeriti received; plaintiffs conclude that it was because of his EEOC charge.  ¶92.  Godshall does not allege that he claimed retaliation in an administrative proceeding. Plaintiffs conclude that KU and PASSHE, vaguely including "the individual defendants named herein," treated him less favorably in the same respect as for Sitkus. ¶¶94, 69.

Grant (male) was a manager in another KU department.  ¶96.  He too was terminated in July, 2011, and told that the furlough was financial in nature, not due to performance. ¶97.  He was replaced with a substantially younger employee.  ¶99.  Plaintiffs conclude that KU and PASSHE, including "the individual defendants named herein,"  treated him less favorably in the same respect as for Godshall and Sitkus.  ¶¶101, 94, 69.   No allegation apart from the vague conclusory reference of "individual defendants named herein" connects Grant to ESU or either ESU individual defendant.

Unlike other plaintiffs, Stahler was not terminated in July, 2011. ¶115.  He was KU's director of admissions, and chair of a team; he was successful.  ¶¶103-06.  Stahler worked despite lack of clearance after a heart attack.  ¶108.  In February 2011, Vargas tried to have him replaced but allowed him to remain as admissions director through fall 2011.  ¶116.  Meanwhile, a KU dean offered Stahler a job as associate dean, beginning in July 2011.  ¶114.  Stahler accepted,

relied upon the offer to reject an offer at a different college, and then learned that Vargas would let

him only serve as interim assistant dean temporarily.  ¶¶116-17.  In April 2012, Vargas told

Stahler that his temporary position ended and that a demotion position which Vargas had offered

to Stahler in 2011 would remain unfilled due to anticipated budgetary constraints.  *Id*.  Stahler

applied for positions for which he qualified at other PASSHE universities, but received no offers.

¶117.  In February 2012, a younger, female without a known disability became KU's director of

admissions.  ¶118.

> The allegations of the involvement of the KU individual defendants are summarized:

> Cevallos, Vargas, Picus, Green and Silberman, are decision makers and conspired to terminate and refuse to rehire the plaintiffs. Conclusory allegation- ¶29.
> Silberman told Yurvati not to apply at KU because she filed a Merit Principle appeal.  ¶62; Silberman furloughed Bartlett. ¶72.
> Green told Godshall of his furlough.  ¶88.
> Vargas forced Stahler to work in 2010, before he was cleared for work after a heart attack. ¶108.  Vargas offered Stahler a demotion in early 2011 but let him retain his position as director of admissions through fall 2011.  ¶¶109-110.  In May, 2011, Vargas allowed Stahler to take an interim but not permanent position under a dean.  ¶¶114.  In April 2012, Vargas informed Stahler that his interim position ended and terminated him. ¶¶116-117.  At the same time, Vargas told Stahler that the demotion position, previously offered, would not be filled due to budgetary constraints. *Id*.
> Cevallos, Vargas, Silberman, Picus and Green "knew, had reason to know, and/or personally participated in some of said actions described herein." –alleged upon belief. ¶148.

> All allegations of the involvement of the ESU individual defendants are summarized:

> Fritsche notified Bartlett that she was not hired for two ESU positions because she was not qualified.  ¶¶79-80.  Fritsche maintained prior KU contacts and conspired not to hire Bartlett.  ¶82.

> Fritsche and Welsh, the two ESU individuals, "knew, had reason to know, and/or personally participated in some of said actions described herein." –alleged upon belief.  ¶149.

> The single allegation involving individuals from both KU and ESU is the following

conclusory averment:

7

Cevallos, Vargas, Picus, Silberman, Fritsche and Welsh (all individuals but Green) conspired to refuse to hire/rehire Bartlett with KU or ESI.  Conclusory allegation- ¶30.

Nothing can show that Welsh was ESU president for the entire relevant time.[3]

The allegations about PASSHE are that it manages KU and ESU and operates fourteen colleges including KU and ESU.  §I and ¶ 9.   PASSHE has a Merit Principle Policy and a severance policy.   ¶¶26, 38.  PASSHE conspired with KU and ESU to terminate plaintiffs and discriminate and retaliate against them for various reasons (conclusions upon information and belief).  ¶¶28, 69, 81, 85, 94, 101, 119.  PASSHE refuses to let its constituent universities hire the plaintiffs (conclusion upon belief).  ¶39.  PASSHE terminated KU employees and advertised for KU employees.  ¶¶45, 50.  In Yurvati's PASSHE Merit Principle hearing under a hearing examiner, the attorney for KU also represented PASSHE.  ¶57. (PASSHE's authority is discussed in the argument section).

New averments which plaintiffs address in their motion for leave to file their second amended complaint are mainly conclusions of law such as ¶ 22-that entities are somehow persons as defined in Section 1983, and ¶24-that terminations were pretext for age discrimination.  Plaintiffs also provide tardy opposition to the motion for change of venue by averring that the majority of challenged acts occurred in the Eastern District where most parties live and work. ¶18.

## III.   ARGUMENT

### A.  Applicable Standards

To determine the sufficiency of a complaint, courts first note the elements a plaintiff must

---

[3] The Court may wish to take judicial notice of the fact that Welsh began her duties as president in July of 2012.  http://quantum.esu.edu/inauguration/bio/.  Thus Welsh could not possibly have been involved in assessing Bartlett's August 5, 2011 application.  *See* ¶ 77.

plead to state a claim.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. den'd*, 132 S.Ct. 1861 (2012).  Courts then identify "allegations that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.; see e.g. James v. City of Wilkes-Barre,* No. 11-3345, 700 F.3d 675 (3d Cir. 2012) (reversing a denial of a motion to dismiss where district court erroneously presumed the truth of a "legal conclusion artfully pleaded as a factual assertion.").  Finally, courts assume the veracity of well-pled factual allegations, and then determine whether they plausibly give rise to an entitlement to relief.  *Burtch*, 662 F.3d 212.

To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  662 F.3d. at 221.  Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting Fed.R.Civ.P. 8(a)(2)); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-559 (2007).  A complaint that does not "show" entitlement to relief must be dismissed.  *Id*.  The claim must thus have "facial plausibility."  *Argueta v. U.S. Immigration and Customs Enf.*, 643 F.3d 60, 72-73 (3d Cir. 2011).  "This 'plausibility' standard does not require probability, but it does demand more than a sheer possibility that the defendant acted unlawfully.  Therefore, a complaint pleading facts that are merely consistent with liability is insufficient."  *Id*.  "Moreover, "the factual detail in a complaint [must not be] so undeveloped that it does not provide a defendant [with] the type of notice of claim which is contemplated by Rule 8 [Fed.R.Civ.P. ]."  *Villegas v. Weinstein & Riley, P.S.*, 723 F.Supp.2d 755, 756 (M.D.Pa.2010) (citation omitted).

A Rule 12(b) (1) motion is the proper way to raise the issue of Eleventh Amendment immunity.  *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n. 2 (3d Cir.1996).  Eleventh Amendment issues should be disposed of at the motion-to-dismiss stage.  *See Betts v. New Castle*

9

*Youth Dev. Ctr.,* 621 F.3d 249 (3d Cir. 2010).  When the subject-matter jurisdiction challenge is

facial, courts apply the same standard as in a 12(b)(6) motion.  *See e.g.  Medici v. Pocono Mt. Sch.*

*Dist.*, No. 09-2344, 2010 WL 1006917, at *2 (M.D.Pa. Mar. 16, 2010) (citing *Pension Ben. Guar.*

*Corp. v. White Consol.*, 998 F.2d 1192, 1196-97 (3d Cir.1993), *cert. den'd*, 510 U.S.1042 (1994)).

Courts consider 12(b)(1) challenges before Rule 12(b)(6) challenges, because a dismissal for lack

of subject matter jurisdiction moots other defenses and objections.  *Tolan v. U.S.*, 176 F.R.D. 507,

509 (E.D. Pa. 1998) (citing cases).

When ruling upon a motion to dismiss, this Court, may consider the complaint "and the

documents on which the claims made therein were based." *In re Burlington Coat Factory Sec.*

*Litig.,* 114 F.3d 1410, 1424 (3d  Cir. 1997); s*ee In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d

357, 368 n. 9 (3d Cir. 1993) (properly considering a prospectus appended to a motion to dismiss

when it was challenged in the complaint but not appended); *Pension Benefit Guar. Corp.*, 998

F.2d at 1196 (court may consider an undisputedly authentic document exhibited to a motion to

dismiss if the plaintiff's claims are based on the document); *see also Pryor v. National Collegiate*

*Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("Documents that the defendant attaches to the

motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's

complaint and are central to the claim; as such, they may be considered by the court.").

### B.  The Eleventh Amendment Bars the Section 1983 Claims In Counts VI, VII and VIII Against KU, PASSHE and ESU, and Related Claims For Damages Against The Individual Defendants In Their Official Capacities.

The claim that the Eleventh Amendment bars a cause of action is a facial challenge to the

Court's jurisdiction.  *See e.g. M&M Stone Co., v. Pa. Dept. of Envtl. Protection*, No. 07cv4784,

2008 WL 4467176, at *13 (E.D. Pa. Sep. 29, 2008).  "The Eleventh Amendment deprives federal

courts of jurisdiction over lawsuits against nonconsenting states, state agencies, and state officials

acting in their official capacities." *Sixth Angel Shepherd Rescue Inc. v. v. West*, 790 F.Supp.2d

339, 350 (E.D.Pa. 2011), *aff'd* No. 11-2510, 477 Fed.Appx. 903 (3d Cir. Apr 23, 2012); *see Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1995).  "The Eleventh Amendment's bar extends to suits against departments or agencies of the state having no existence apart from the state." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir.1981) (citation omitted).  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 105-06 (1984), holds that, because of the Eleventh Amendment, federal courts do not have jurisdiction to order state agencies or officials to comply with state law.  Neither pendent (supplemental) jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.  *Pennhurst,* 465 U.S. at 121.  Sovereign immunity expressed in the Eleventh Amendment is a constitutional limit on federal judicial power. *Pennhurst,* at 98.

Exceptions to the jurisdictional bar include Congressional abrogation, state waiver, and official capacity suits against state officials for injunctive relief.  *Sixth Angel*, 790 F.Supp.2d at 352 (citing *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002).  No Congressional abrogation applies.  Section 1983, 42 U.S.C. § 1983, does not abrogate states' Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 345 (1979).  Indeed, the Commonwealth of Pennsylvania has expressly withheld its consent to be sued. *See Lavia v. Pennsylvania DOC,* 224 F.3d 190, 195 (3d Cir.2000); *see also* 42 Pa. Cons.Stat. §8521(b).

Similarly, if a claim pursuant 42 U.S.C. § 1986 is somehow inferred, that too is subject , to  Eleventh Amendment immunity.  *Boykin v. Bloomsburg Univ. of Pa.*, 893 F.Supp. 378 (M.D.Pa.1995) (42 U.S.C. §§ 1981, 1985, 1986).  Section 1986 claims must be predicated on a valid § 1985 claim.  *Bell v. City of Milwaukee*, 746 F.2d 1250, 1256 (7th Cir.1984).  Section 1985 claims are in turn subject to Eleventh Amendment immunity. *See Rogin v. Bensalem Twp*., 616 F.2d 680, 696 (3d Cir.1980); *Galvani v. Pennsylvania*, 329 Fed.Appx. 344 (3d Cir. May 11, 2009).  Therefore, any 1985 conspiracy or 1986 claim (if it is somehow implied) is also subject to Eleventh Amendment immunity.

11

State waiver is also inapplicable.  While a State may consent to a suit against it in federal court and thereby waive its immunity, Pennsylvania has specifically withheld consent.  42 Pa.C.S. §8521 (b).  *Fitzpatrick v. Pennsylvania Dept. of Transp*., 40 F.Supp.2d 631, 635 (E.D.Pa. 1999) (citing 42 Pa.C.S. § 8521(b)); *see Florida Dept. of Health v. Florida Nurs'g Home Assn*., 450 U.S. 147 (1981) (general waivers of sovereign immunity are insufficient); *Atascadero*, 473 U.S. at 241; *Betts*, 621 F.3d  at 254 n. 5; *Blake v. Papadakos*, 953 F.2d 69, 73 n. 5 (3d Cir. 1992) ("federal courts have no jurisdiction to review state officials' compliance with state law.").

Here, the defendants include a State agency-PASSHE, and two State universities. PASSHE is an agency of the Commonwealth government.  *Skehan v. State System of Higher Educ*., 815 F.2d 244 (3d Cir.1987); *East Stroudsburg Univ. v. Hubbard*, 591 A.2d 1181 (Pa. Commw. 1991).  ESU and KU are among the universities created by statute and are arms of the State.  24 Pa Stat Ann. § 20–2002–A; *e.g. O'Hara v. Indiana Univ. of Pa*., 171 F.Supp.2d 490 (W.D.Pa.2001).  Plaintiffs concede, as they must, that the defendant universities are PASSHE universities.  ¶¶7-8.

The complaint identifies as defendants, five KU officials in their "professional" capacities, and two ESU officials in their "professional" capacities.  The individuals are also sued in their individual capacities.  The Eleventh Amendment argument applies, *inter alia*, to all Section 1983 and Section 1986 claims against KU, ESU, PASSHE, as well as all Sections 1983 and 1986 claims for damages against the individuals in their official, professional capacities.  When plaintiffs refer to professional capacity as distinct from individual capacity, it is apparent that professional capacity refers to official capacity.  *See e.g. Chapman v. New York State Div. for Youth*, 227 F.R.D. 175, 180 n. 6 (N.D.N.Y. 2005) ("We also note that in some instances, litigators use professional capacity to mean official capacity.  [As the university is] a state actor, we presume that Plaintiff, when referring to the [university] Individual Defendants in their professional

capacities, means official capacities."); *Montin v. Ramsey*, No. 4:08cv3082, 2008 WL 4559964 (D.Neb. Oct. 08, 2008) (interpreting professional capacities to mean official capacities); *Vigil v. Mistrata* , No. 06cv00216, 2006 WL 3307140 (D.Colo. Sep.18, 2006) (same).

*"*Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity" from damages. *Betts,* 621 F.3d at 254. The Eleventh Amendment thus protects the seven individual defendants in their official capacities from a federal suit for damages. *MCI Telecomm. Corp. v. Bell Atl.-Pa.,* 217 F.3d 491, 503-04 (3d Cir.2001); *see also Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974).

Accordingly, the Section 1983 claims against PASSHE, KU and ESU, as well as all Section 1983 claims for damages against the individual defendants in their official "professional" capacities are barred. (The same applies to Section 1986 claims to the extent they may be alleged.)

Plaintiffs reiterate misguided conclusions of law that KU, ESU and PASSHE are somehow not shielded by the Eleventh Amendment.  ¶¶20-22.   In anticipation of their argument based on their incorrect conclusions, defendants point out just a few examples of settled law:

> We have previously held Pennsylvania state colleges and the Pennsylvania State System of Higher Education [are] entitled to immunity. *Skehan v. State System of Higher Education*, 815 F.2d at 249; *Skehan v. Board of Trustees of Bloomsburg State College*, 538 F.2d 53, 62 (3d Cir.) (en banc), *cert. denied*, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).

*Kovats v. Rutgers, The State Univ.*, 822 F.2d 1303, 1312 (3d. Cir. 1987).

> The Court reiterates its prior holding that all monetary claims against IUP [Indiana University of Pennsylvania] and the other Defendants in their official capacities are barred by the Eleventh Amendment.  *See, e.g., Toth v. California Univ. of Pennsylvania*, 844 F.Supp.2d 611, 648 (W.D.Pa.2012) (collecting cases).

*Abernathy v. Indiana Univ. of Pa.*, 2:12-cv-1119, 2013 WL 3200519, 2 (W.D.Pa. Jun. 18, 2013).

> East Stroudsburg University is created by statute and is an arm of the state. 24 Pa Stat Ann. § 20–2002–A. Additionally, Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity. *See* 42 Pa. Cons.Stat. Ann. § 8521(b) (2004). As such, East Stroudsburg University may not be held liable under the civil rights statute and the § 1983 claim is barred by the Eleventh Amendment.

*Coulter v. East Stroudsburg Univ.*, No. 3:10cv0877 2010 WL 1780400 (M.D.Pa. May 4, 2010).

> Finally, we note that our conclusion is further reinforced by substantial authority recognizing that other state colleges and universities governed by SSHE, like Employer, are Commonwealth entities entitled to sovereign and Eleventh Amendment immunity. *See, e.g., Lewis v. Kelchner*, 658 F.Supp. 358 (M.D.Pa.1986); *Williams v. West Chester State College*, 29 Pa.Cmwlth. 240, 370 A.2d 774 (Pa.Cmwlth.1977); *Finkelstein v. Shippensburg State College*, 29 Pa.Cmwlth. 373, 370 A.2d 1259 (Pa.Cmwlth.1977). Although we recognize that many of these decisions labeled the various colleges and universities as "agencies" of the Commonwealth, we note that, for purposes of immunity, it was unimportant whether the entity was labeled an agency or an instrumentality. The result, in either case, was the same: the colleges or universities and their employees, respectively, were Commonwealth employers and employees entitled to immunity.

*Pearson v. Unemployment Comp. Bd. of Review*, 689 A.2d 352, 357 (Pa.Cmwlth. 1997).

Thus, the KU and its individuals acting in their official capacities, ESU and its individuals acting in their official capacities, and PASSHE retain their Eleventh Amendment immunity with respect to all plaintiffs' claims to which such immunity applies. The Eleventh Amendment thus bars the Section 1983 claims in Counts VI, VII and VIII against KU, PASSHE and ESU, and related claims for damages against the individual defendants in their official capacities.

The bar of the Eleventh Amendment to the ADEA counts, the ADA count, and the PHRA counts are next considered individually.

**C.  The Eleventh Amendment Bars the ADEA Counts—I and II.**

The Age Discrimination in Employment Act (ADEA) addresses discrimination by employers based upon age. 29 U.S.C. § 623(a)(1). The Act's definition of employer specifically includes "a State or political subdivision of a State and any agency ... of a State." 29 U.S.C. § 630(b)(2). The ADEA, however, does not abrogate the states' Eleventh Amendment immunity to suits by private individuals for damages. *Kimel v. Fl. Bd. of Regents*, 528 U.S. 62, 91 (2000); *see Hill v. Borough of Kutztown*, 455 F.3d 225, 247 n. 30 (3d Cir.2006) (explaining that Congress did not abrogate the states' sovereign immunity by passage of the ADEA).

14

Additionally, Pennsylvania has expressly withheld consent and has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S. § 8521(b) (2004).  Given that all the defendants in Counts I and II have not waived their Eleventh Amendment immunity, Counts I and II—the ADEA claims, are jurisdictionally barred and must be dismissed.

### D.  The Eleventh Amendment Bars the ADA Claim—Count V.

Count V is a claim that KU and PASSHE violated plaintiff Stahler's rights in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*  Stahler was an employee, and his claim must be under Title I of the ADA, 42 U.S.C. § 12112, as it concerns discrimination in employment.  *See Tennessee v. Lane*, 541 U.S. 509, 516 (2004).  An action brought under Title I of the ADA against a state agency is barred by the Eleventh Amendment.  *Board of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360, 363, 368, 374, (2001); *accord Lane*, 541 U.S. at 514 (stating Eleventh Amendment bars private action for state violation of ADA Title I).  In *Garrett*, the Supreme Court invalidated Congress' abrogation of the States' immunity to claims under Title I of the ADA.  *Id.* at 374. Thus, "Title I was not within Congress's Fourteenth Amendment power, and, therefore, [Congress] cannot abrogate state sovereign immunity" with respect to this Title. . . .  Further, "[t]he law is settled that [a plaintiff] may not recover in federal court under Title I of the ADA for ... discrimination claims against the State." *Flax v. Del. Div. of Family Servs.*, No. 03cv 922–GMS, 2008 WL 1758857, at *7 (D.Del. Apr. 16, 2008).

Accordingly, under the Eleventh Amendment, the KU and PASSHE are immune from suit for damages brought pursuant to Title 1 of the ADA.  *See Garrett*, 531 U.S. at 330; *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005). Furthermore, as previously explained, Pennsylvania has not waived its sovereign immunity.  *See* 42 Pa. C.S. § 8521(b).

While Stahler joins plaintiffs in other retaliation claims, it does not appear that he asserts a Title V retaliation claim under the ADA, 42 U.S.C. § 12203.  Defendants assume that he has not,

15

but nonetheless address the issue as a cautionary measure.  KU and PASSHE are immune should Stahler attempt to claim retaliation under Title V of the ADA.  Although the Supreme Court and the Third Circuit have not decided whether Title V is a valid abrogation of state sovereign immunity, multiple courts have held that the Eleventh Amendment bars Title V claims that are based upon Title I claims.  *E.g. Karam v. Delaware DSCYF*, No. 09cv904, 2010 WL 5343182, at *3 (D.Del. Dec. 15, 2010). Relevant case law makes clear that there is a "general principle that a Title V claim is barred if the underlying claim is barred by sovereign immunity." *Karam* at *4. Defendants are immune from suit in connection with a Title V claim because it can only be premised on the alleged violation of Title I. *See id*.

Multiple courts in this district have noted that claims under Title V of the ADA against a state are barred by the Eleventh Amendment.  *Magargal v. New Jersey*, No. 07–3531, 2013 WL 1792517, 3 (D.N.J. Apr. 26, 2013); *Brooks v. Delaware Dept. of Health & Social Serv.,* No. 10cv569, 2012 WL 1134481, 4 (D.Del. Mar. 30, 2012); *Hughes v. New Jersey*, No. 11–1442, 2012 WL 761997 (D.N.J. Mar, 7, 2012); *Foster v. N.J. Dept. of Transp*., No. 04–101(MLC), 2005 WL 3542462, at *5 n. 7 (D.N.J. Dec.27, 2005) (collecting cases), *aff'd on other grds*, 255 F. Appx. 670 (3d Cir.2007).; *see also Demski v. Monteith*, 255 F.3d 986, 988-89 (9th Cir.2001) (barring claim against state legislative committee raised under Title V of the ADA due to absence of legislative findings demonstrating pattern of retaliation by States); *Shabazz v. Texas Youth Comn.*, 300 F.Supp.2d 467, 472-73 (N.D.Tex. 2003) (barring ADA Title V claim based upon employment discrimination by state agency).  Thus Count V should be dismissed for lack of jurisdiction.

### E.   The Eleventh Amendment Bars the PHRA Claims Against the Defendant Entities in Counts IX, X, XI, and XII  , and the PHRA Claim Against the Individual Defendants in Their Official Capacities in Count XIII in This Court.

The Eleventh Amendment bars the PHRA claims against KU, PASSHE and ESU in

federal court.  *See* 42 Pa.C.S. § 8521(b).  As previously explained, the Supreme Court has held

that before a State can be sued in federal court, the state must waive its immunity under the

Eleventh Amendment.  *See Atascadero*, 473 U.S. at 238.  Here, Pennsylvania retains its immunity.

The Commonwealth cannot be sued in its own courts without its consent, a principle that is

generally labeled "sovereign immunity"  Article I, § 11 of the Pennsylvania Constitution reads, in

relevant part, "[s]uits may be brought against the Commonwealth in such manner, in such courts

and in such cases as the Legislature may by law direct."  The Pennsylvania Supreme Court has

interpreted this language to mean that, "the Framers intended that the legislature have complete

control over suits brought against the Commonwealth." *Smith v. City of Phila.*, 516 A.2d 306, 309

(Pa. 1986), *app. dism'd*, 479 U.S. 1074 (1987).  The shield of sovereign immunity applies, first of

all, to the Commonwealth and its agencies.  42 Pa.C.S. §§ 8501, 8521-22; *see also* 1 Pa.C.S.A. §

2310.  Commonwealth officials and employees acting within the scope of their duties enjoy the

same immunity as the Commonwealth itself. *Moore v. Commonwealth*, 114 Pa.Cmwlth. 565, 38

A.2d 111, 115 (Pa. Commw. 1988), *app. dism'd,* 567 A.2d 1040 (Pa. 1990).

The Pennsylvania legislature has indeed waived its sovereign immunity from PHRA

claims brought in its own courts. *Mansfield State Coll. v. Kovich*, 407 A.2d 1387, 1388 (Pa.

Commw. 1979).  In doing so, however, the Commonwealth has <u>not</u> waived its Eleventh

Amendment immunity from PHRA claims brought in federal courts.  As the legislature has

emphasized, no waiver of immunity from suit in its own courts (sovereign immunity) "shall be

construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by

the Eleventh Amendment to the Constitution of the United States."  42 Pa.C.S. § 8521(b).

Accordingly, state agencies, like PASSHE, retain their Eleventh Amendment immunity

from PHRA claims brought in federal court. *See Mansfield State Coll.*, 407 A.2d at 1388 (It has

not, however, waived Eleventh Amendment immunity from suit in federal court under the PHRA);

17

*Irizarry v. Commonwealth*, No. 98cv6180, 1999 WL 269917, at *4 (E.D.Pa. Apr.19, 1999) ("[Pennsylvania] has not, however, waived Eleventh Amendment immunity from suit in federal court under the PHRA"); *Moore v. Pennsylvania. Dept. of Military & Veterans Aff.*, 216 F.Supp.2d 446, 454 (E.D.Pa. 2002) ("a plaintiff may never pursue a PHRA claim against Pennsylvania or its agencies in federal court"); *Bullock v. Pennsylvania  HRC,* No. 05cv0386, 2005 WL 2250826, at *3 (E.D.Pa. Sep. 14, 2005) ("although it is true that the Commonwealth has waived it is sovereign immunity for suits filed in state courts under the PHRA, the Commonwealth has specifically retained its Eleventh Amendment immunity for suits filed in federal court").  With Pennsylvania's immunity from PHRA actions brought in federal court remaining intact, the PHRA claim against the PASSHE, KU, ESU and the individual KU and ESU defendants in their "professional*" i.e.* official capacities, cannot proceed in this Court.

### F.  Plaintiffs Have Either Failed to Exhaust the Retaliation Claims or their Retaliation Claims Have Not Accrued.

Bartlett and Yurvati assert a retaliation claim under Title VII in Count IV against KU and PASSHE, and all plaintiffs allegedly assert a retaliation claim under the PHRA against KU, PASSHE and ESU.  Obviously, not all plaintiffs have even made any factual averments as to ESU retaliating against each individual plaintiff.  And that failure is maintained in the third iteration of the complaint.  Indeed, the only plaintiffs who have brought EEOC (and presumably at this motion-to-dismiss stage also PHRA) retaliation charges are Yurvati and Bartlett.  Exhs. D3, D4. Plaintiffs' legal conclusion that they have exhausted their administrative remedies cannot be considered.  All reasonably anticipated discrete acts must first be brought before an administrative agency; yet the vaguely alleged retaliation, first alleged in the court complaint as to all plaintiffs apart from Yurvati and Bartlett.  *E.g. Hayburn v. City of Phila*, No. 11cv6673, 2012 WL 3238344, 3-4 (E.D.Pa. Aug. 7, 2012).  In their initial group EEOC charge, Exh. D1, plaintiffs gave no

18

inkling of suspected retaliation.  In his separate EEOC charge, Exh. D2, Stahler does not allege retaliation.  Therefore plaintiffs other than Yurvati and Bartlett have failed to exhaust their administrative remedies concerning the alleged retaliation.

Yurvati's EEOC retaliation charge is dated March 8, 2013, while Bartlett's is dated May 2, 2013.  42 U.S.C. § 2000e-5(f)(1) requires that the EEOC have 180 days to investigate a charge, before a private right of action can arise.  *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 359, 361 (1977) (holding that a private right of action does not arise until 180 days after a charge has been filed); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). Only after 180 days, may a claimant request a right to sue letter, which the EEOC must issue promptly.  *See* 29 C.F.R. § 1601.28(a)(1).  For the two plaintiffs who even brought EEOC retaliation charges, maybe they received right to sue letters prematurely, but clearly their private rights of action on the retaliation claims have not yet accrued.   For the other plaintiffs, the failure to exhaust is apparent.  Thus, the retaliation claims must be dismissed without prejudice.

### G.  The PHRA Aiding And Abetting Claims in Count XIII Against the Individual Defendants in their Individual Capacities Cannot Proceed.

Paragraph 148 specifies that the five KU individual defendants—Cevallos, Vargas, Silberman, Picus and Green—knew or had reason to know and/or personally participated in discriminating and retaliation against all plaintiffs, while paragraph 149 specifies that the two ESU individual defendants—Fritsche and Welsh—knew or had reason to know and/or personally participated in discriminating and retaliation against Bartlett.

Unlike Title VII, the PHRA contemplates individual liability for the seven individual defendants for aiding and abetting employers' violations of the PHRA.  *See* 43 P.S. § 955(e).  The Third Circuit recognizes that an individual supervisor is a proper defendant under § 955(e) and

may be held liable for aiding and abetting discriminatory practices by employers. *See Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir.1996).

Significantly, direct incidents of discrimination are not covered by § 955(e). *Dici*, at 553. Here, Stahler appears to allege that Vargas personally discriminated against him because of his age and the perception of a disability due to Stahler's 2010 heart attack. In other words, Vargas allegedly directly subjected him to discrimination. Stahler's PHRA claims against him individually therefore cannot proceed under an aiding and abetting theory; and that is the only theory that allows a plaintiff to sue an individual defendant under the PHRA. *Mathews v. Hermann*, No. 07cv01318,2008 WL 1914781, 20  (E.D.Pa. Apr. 30, 2008) (individual liability under the PHRA only permitted under Section 955(e)). All the other PHRA claims against the individuals are flawed for additional reasons, addressed next.

Aiding and abetting employer discrimination under the PHRA can only exist if the employer is found to discriminate or retaliate. *Heneghan v. Northampton Comm. Coll.*, 801 F.Supp.2d 347 (E.D.Pa. 2011); *Milby v. Greater Phila. Health Action*, No. 06cv4556, 2008 WL 2278143, at *5 (E.D.Pa. Jun. 3, 2008); *Kaniuka v. Good Shepherd Home*, No. 05cv2917, 2006 WL 2380387, at *10  (E.D.Pa. Aug. 15, 2006); *see also Unangst v. Dual Temp Co.,* No. 10cv6811, 2012 WL 931130, at *10 (E.D.Pa. Mar. 19, 2012); *Eldeeb v. Allied Barton Sec. Servs. LLC*, No. 07cv669, 2008 WL 4083540, at *12 (E.D. Pa. Aug 29, 2008).  Equitably, if not formally, the employer thus is a necessary party to an aiding and abetting claim.  Here the employer is KU or ESU.  While the Eleventh Amendment bars the PHRA claims against PASSHE and two of its universities, KU and ESU, Eleventh Amendment jurisprudence militates in favor of dismissal of the aiding and abetting claims as well.

Moreover, the aiding and abetting charges should also be dismissed for failure to exhaust. The failure extends beyond the unripe or never-raised retaliation claims.  When filing an

administrative charge with the PHRC, Pennsylvania law requires plaintiffs to provide the names and addresses of respondents alleged to have committed the unlawful discriminatory practice.  43. P.S. § 959.  Noncompliance with the applicable procedures will generally bar a later claim.  *See, e.g., Hajzus v. Peters Twp. Sch. Dist.*, 2:06cv1401, 2007 WL 917082 (W.D.Pa. Mar. 23, 2007).

However, *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 887-88 (3d Cir. 1980), delineates four factors to determine whether a party not named in an EEOC charge can nonetheless be named as a party in a subsequent civil suit: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

The two purposes of requiring a party to be named in the administrative charge are: (1) to give that party notice of the allegations; and (2) to provide an opportunity for voluntary compliance to remedy the situation without resort to litigation.  *Id*. at 888.  The *Glus* Court cautioned that where full compliance with the administrative formalities can reasonably be expected, it will still be required.  *Id*.  The goal of informal conciliation must be balanced against the availability of access to the federal courts without undue procedural encumbrances "especially when demanding full and technical compliance would have no relation to the purposes for requiring those procedures in the first instance."  *Id*.

Courts have applied the *Glus* factors to conclude that plaintiffs have failed to exhaust. Recent examples this year alone include *Rice v. Kobialka*, No. 2:13cv347, 2013 WL 3466803

21

(W.D.Pa. Jul. 10, 2013); *Harman v. York City Sch. Dist.*, No. 1:12–cv–02033, 2013 WL 3242407

(M.D.Pa. Jun. 25, 2013); *Meyers v. California Univ. of Pa.*, No. 2:12cv1258, 2013 WL 795059

(W.D.Pa. Mar. 04, 2013); *Graudins v. Retro Fitness, LLC*, 921 F.Supp.2d 456 (E.D.Pa. 2013).

Here, plaintiffs have failed to exhaust their administrative remedies as to all the individual

defendants.  The group EEOC discrimination charge of the five plaintiffs contains only a fleeting

reference to Silberman (Exh. D1 ¶44) as the person who told Bartlett of her furlough, and a

fleeting reference to Green (Exh. D1 ¶51) as the person who told Godshall of his furlough.

Stahler's charge identifies Vargas (Exh. D2, 2nd ¶) as removing him from Director of Admissions

in 2010, not allowing him to become an associate dean in July 2011, allowing him to accept an

interim assistant dean position and then informing him in April 2012 that the interim position

would end and impliedly giving negative verbal recommendations when Stahler applied for jobs

elsewhere.  Other individual defendants' actions or inaction are not identified at all.  These

references hardly put any individual defendant on notice that they engaged in any allegedly

discriminatory conduct.  Indeed, Yurvati's EEOC retaliation charge makes not a single passing

reference to any individual defendant.  Exh. D3.

Admittedly, Bartlett's EEOC retaliation charge refers to Fritsche (but not to Welsh).

Bartlett avers that Fritsche notified Bartlett for each of two positions Bartlett applied for that she

was not selected based on her qualifications (D4 ¶¶17-18), that Fritsche maintains contact with a

former colleague in human resources at KU, and "therefore" Fritsche refused to hire Bartlett

because of Bartlett's EEOC charge against PASSHE and KU (D4 ¶21-22).

Nevertheless, the elements of the *Glus* test have not been satisfied for any of the

individuals.  Plaintiffs, who worked in KU management for years, obviously knew who had

authority to make decisions and who communicated the furlough or non-selection information to

them; so they could have named those people as respondents.  The interests in obtaining voluntary

conciliation of PASSHE, KU and ESU, as well as the multiple individual defendants, are not so similar that it was unnecessary to specifically include the individuals in the administrative process. The individuals were thus actually prejudiced due to their absence from the administrative process because they were deprived of the opportunity to informally resolve the claims that plaintiffs now assert.  Finally, no allegation is made that any individual defendant represented to any plaintiff that they should be contacted only through KU, PASSHE or ESU.  *See Meyers,* at *11-13.

Therefore, as in *Meyers,* 2013 WL 795059, the Court should conclude that plaintiffs have not exhausted their administrative remedies under the PHRA with respect to their claims against any of the individual defendants.  *See Rice v. Kobialka*, 2013 WL 3466803 (dismissing individual defendant in PHRA claim); *Harman,* 2013 WL 3242407, at *5  (M.D.Pa. Jun 25, 2013) (ruling failure to exhaust PHRA claim against individual defendant) (citing *Hajzus,* 2007 WL 917082, at *3 (W.D.Pa. Apr.12, 2007) (finding that the individually named defendants, not named in the plaintiff's administrative charge, would be prejudiced if plaintiff were permitted to raise claims against them in federal court because they had no prior notice of their potential liability).

The Court should therefore dismiss all the state law causes of action.

### H.  The Section 1983 Claims against PASSHE, KU and ESU Should Be Dismissed Pursuant to the *Will* Doctrine.

State agencies and state officials acting in their official capacities are not "persons" within the meaning of Section 1983.  *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989).  The *Will* holding, based upon statutory interpretation, is a proposition analytically distinct from the Eleventh Amendment.  *Ibid.; e.g. Jones v. New York State Div. of Military and Naval Aff.*, 166 F.3d 45, 49 (2d Cir.1999); *Komlosi v. New York State Office of Mental Retard. and Dev. Disab.*, 64 F.3d 810, 815 (2d Cir.1995); *ICR Grad. Sch. v. Honig,* 758 F.Supp. 1350 (S.D.Cal. 1991).

Thus, the *Will* doctrine bars all the Section 1983 claims against PASSHE, ESU and KU, *i.e.* the entirety of Count VI.

Similarly, KU's and ESU's  officials in their official capacities sued for damages are not "persons" under the *Will* doctrine, even within the meaning of Section 1986. *Walter J. Mintz, Inc. v. State of Pa.*, No. 99cv1823, 1999 WL 387037 (E.D.Pa. Jun. 4, 1999) (citing *Rode v. Dellarciprete*, 617 F.Supp. 721, 723 n. 2 (M.D.Pa.1985) (§ 1985); *Carmen v. San Francisco Unified Sch. Dist.,* 982 F.Supp. 1396, 1405 (N.D.Cal.1997) (§ 1985). Thus Will bars the claims for damages in Count VII.

## I.   The Section 1983 Counts Fail Due to Lack of Requisite Involvement, Lack of Clarity, and Redundancy.

To the extent that plaintiffs assert a claim against the defendants based on their supervisory role, that claim must be dismissed.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior."); *Rode v. Dellarciprete*, 845 F.2d at 1207 (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior).

A complaint must state facts sufficient to provide defendants with adequate notice of their offending conduct so that they may "respond to and/or defend the claim." *Pierce v. Montgomery Cy. Opportunity Bd.*, 884 F.Supp. 965, 971 (E.D.Pa.1995); *see* Fed.R.Civ.P. 8(a). The second amended complaint still fails to allege the involvement of multiple defendants apart from non-cognizable conclusory allegations, and alleges only incidental involvement of all but Vargas' involvement with Stahler.  Silberman terminated Bartlett and told Yurvati not to apply at KU because she filed a Merit Principle appeal.  Green told Godshall of his furlough.

24

Fritsche maintained contact with former KU colleagues and notified Bartlett that she was not hired for two ESU positions. Vargas, who receives the most attention, interacted only with Stahler. Vargas' only involvement within the two-year statute of limitations applicable to Section 1983 claims, was 1) to tell Stahler that a position offered to Stahler a year earlier, that Stahler knew as a demotion, would not be filled due to budgetary constraints, and 2) to terminate Stahler in April 2012, when the interim position ended. Nothing is alleged as to ESU President Welsh apart from a conclusion. Indeed, Welsh was not even president of ESU until after Bartlett's first application failed. *See* ¶77, fn. 4.

In this circuit, courts must accept "facts alleged on information and belief," as true. *Melo–Sonics Corp. v. Cropp*, 342 F.2d 856, 859 (3d Cir.1965). Thus factual allegations based upon information and belief can suffice to support a claim. Nonetheless, post *Iqbal* and *Twombly*, conclusory allegations cannot suffice to support a claim, whether or are not they are based upon information and belief. Once conclusory, speculative allegations are excluded, plaintiffs provide no facts from which it could be reasonably inferred that the individual defendants knew of any alleged discrimination or violation of equal protection. The allegations provide no basis to put the individual defendants on notice of the facts and circumstances giving rise to any claims against them. Plaintiffs have thus repeatedly failed to state a claim against the individual defendants.

*See e.g.U.S. Bank Nat'l Assoc. v. Parker,* No. 4:09cv1755 HEA, 2010 WL 2735661 at *3-4 (E.D.Mo. Jul. 9, 2010) (claims made "upon information and belief," with no further factual support, are too speculative to survive a motion to dismiss); *Giraud v. Board of Educ., Newburgh Enlarged City Sch. Dist.*, No. 12cv1842, 2013 WL 3776242, 4-5 (S.D.N.Y. Jul. 17, 2013); *Prince v. Madison Sq. Garden*, 427 F.Supp.2d 372, 385 (S.D.N.Y.2006)*; see also Williams v. Calderoni*, No. 11 Civ. 3020(CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1,

2012) (pleadings based upon information and belief which are speculative or conclusory assertions are insufficient);  *J.B. Hunt Transport, Inc. v. Liverpool Trucking Co.,* No. 11cv1751, 2013 WL 3208586, 3 (M.D.Pa. Jun. 24, 2013) (proposed amendment based on information and belief cannot survive motion to dismiss) (citing *Shenango Inc. v. Am. Coal Sales Co.*, No. 06cv149, 2007 WL 2310869, at *3 (W.D.Pa. Aug.9, 2007) (granting motion to dismiss where the complaint alleged elements of the cause of action "on information and belief" but did not specify any facts that would have led to this conclusion); *Madonna v. Francisco*, No. 13cv 807, 2014 WL 981568 (E.D.Pa. Mar.13, 2014) (describing allegations on information and belief  as merely conclusory recitations).    Plaintiffs' averments upon information and belief reinforce the conclusion that they are non-cognizable conclusory allegations.

To the extent that plaintiffs allude to a violation of their privileges and immunities, it does not appear that they are alleging any violation of the Privileges and Immunities Clause.  Indeed, no reference is made to the clause in U.S.C. Const. Art. 4, § 2, cl. 1, or to the privileges or immunities within the Fourteenth Amendment.  Rather, plaintiffs are apparently attempting to assert an equal protection claim, and following the language of *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir.1993) (explaining that a § 1983 claim challenges conduct that "deprive[s] a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.").  The allegations amount to vague conclusory redundant averments of violation of their right to equal protection based upon the discrimination claims, previously discussed.  They do not put defendants on notice of any violation beyond the equal protection claim.  Out of an excess of caution, defendants assert that any privileges or immunities claim should be noted as non-existent or dismissed.

### J.  The Title VII Gender Discrimination/Retaliation Claims—are Not Plausible.

Title VII prohibits only discrimination in the work place on the basis of race, color, religion, sex, or national origin.  42 U.S.C. § 2000e–2; *see, e.g., Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 466 n. 4 (1982) (noting that Title VII does not cover age discrimination claims).  With age discrimination excluded in Title VII claims, the only claims plaintiffs assert pursuant to Title VII are the claims by the two female plaintiffs—Bartlett and Yurvati—for gender discrimination and related retaliation.  Those claims are against KU and PASSHE.

While a complaint can assert alternative, even inconsistent legal theories of age and gender discrimination pursuant to Fed.R.Civ.P. 8(d), plaintiffs here assert inconsistent facts rather than just theories.  The inconsistent facts render implausible their discrimination/retaliation claims based on the gender of the two female plaintiffs.  For example, plaintiffs aver that three of the four male plaintiffs were treated just as the females were.  All the plaintiffs except for Stahler—thus three men and two women—were furloughed, received the same reason for the furlough, and the same or similar poor treatment when it came to clearing out their possessions on campus.  KU has not considered rehiring Yurvati and Sitkus—a man and woman from the same department who were treated the same.  ¶¶62, 68.  Indeed, Stahler alleges that he was replaced by a woman.  ¶118.  Bartlett (female) and Godshall (male) were both treated the same, and allegedly mistreated similarly regarding, for example their receipt of Emeriti status, but not receiving certain invitations.

"The touchstone of the pleading standard is plausibility."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  Allegations that are "merely consistent with a defendant's liability" or show the "mere possibility of misconduct" are not enough.  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  *Iqbal* specifically notes that a claim is not plausible where, after accepting the factual allegations as true, an "obvious alternative explanation" appears a "more likely" cause of

the complained behavior than that which plaintiff asks the court to infer.  Here, plaintiffs' age discrimination averments constitute an "obvious alternative explanation" which appears a "more likely" cause of the complained behavior.  556 U.S. at 681-82.  Plaintiffs make no allegations that go beyond the "mere possibility of" gender discrimination and retaliation for complaining about gender discrimination.  Indeed, they make allegations inconsistent with the facts needed to support those claim.  Therefore, Counts III and IV, and the related PHRA claims should be dismissed.

### K.  The Retaliation Claims Against ESU, Welsh and Fritsch Lack the Necessary Basis to State a Claim.

A basic tenant of any retaliation claim is that the alleged retaliator must know of whatever protected activity previously occurred in order to trigger the retaliation.  Otherwise stated, the act alleged as retaliation cannot have been caused by a prior protected activity unless the retaliator knew of the prior activity.  Nowhere in the twice amended complaint have plaintiffs averred that ESU, or the two ESU defendants Welsh and Fritsch were aware of the challenged employment actions that occurred at KU.  Fritsch's maintaining a relationship with her prior KU colleagues is a far cry from an allegation that Fritsch knew of the employment actions by KU against the plaintiffs.  The conclusory allegation in paragraph 85--that all defendants treated Bartlett less favorably than male employees and those younger than forty, and then retaliated against her because she filed a charge with the EEOC—cannot survive *Iqbal*.  Plaintiffs have twice amended their complaint and still fail to state a cognizable retaliation claim against ESU, Welsh or Fritsch.  Thus, in addition to the other reasons discussed in this brief, all claims against ESU, Welsh and Fritsche in Counts II, XI, XII, first XIII and second XIII should be dismissed.

### L.  The Claims Against PASSHE Cannot Proceed.

The power and duty to appoint employees at individual institutions is vested exclusively with each institution's president under PASSHE's enabling legislation.  Act 188 of 1982, 24 P.S. §

20-2001-A *et seq.*  More specifically, institution presidents are vested with the power and duty to appoint employees, both professional and non-instructional and fix the salaries and benefits of the same.  24 P.S. § 20-2010-A(1).  The PASSHE Board of Governors is vested with the power and duty to appoint only the chancellor and the presidents of the constituent institutions.  24 P.S. § 20-2006-A(a).  The chancellor is empowered with the ability to employ central office professional and staff employees appropriate for the efficient discharge of the chancellor's duties; *i.e.* not to employ people at institutions. 24 P.S. § 20-2005-A(6).  Based upon the above enabling legislation, PASSHE's alleged refusal to allow KU, ESU, and perhaps other institutions to hire plaintiffs is simply not plausible.  And, with PASSHE's authority, as limited by its enabling legislation, its alleged actions, to the extent that they are plausible, cannot possibly rise to the "but for" standard now applicable to plaintiffs' retaliation claims (discussed *supra*.).  To the extent that PASSHE is alleged to have been involved in any conspiracy, those allegations are way too vague and conclusory to meet the standards required to plead conspiracy.  For those reasons, in addition to all the reasons previously discussed, this Court should dismiss all claims against PASSHE.

**M. Claims for Punitive Damages Must Be Dismissed.**

Punitive damages are unavailable for violations of the PHRA claims.  *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745 (1998) (PHRA).  Neither are punitive damages recoverable from PASSHE, KU, ESU or their officials in their official capacities under § 1983.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Bolden v. Southeastern Pa. Transp. Auth.*, 953 F.2d 807, 830 (3d Cir.1991).  Therefore all the requests for punitive damages against the PASSHE, KU, ESU and their officials in their official capacities in all but the Title VII counts should be stricken or dismissed, as well as all requests for punitive damages against the individual defendants pursuant to the PHRA.

29

**N.  The Claim for Declaratory and Injunctive Relief Should Be Dismissed.**

With all the underlying claims subject to dismissal as argued, Count XIV for declaratory and injunctive relief should also be dismissed.  Indeed, plaintiffs lack standing to assert their claim for declaratory relief.  As the Third Circuit has explained, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct."  *Corliss v. O'Brien*,  No.  05–4799, 200 Fed.Appx. 80, 84 (3d Cir. Sep. 20, 2006) (citing *Gruntal & Co. v. Steinberg*, 837 F.Supp. 85, 89 (D.N.J.1993)).  "Nor is declaratory judgment meant simply to proclaim that one party is liable to another."  *Corliss, ibid.* (*citing Loveladies Harbor, Inc. v. U.S.*, 27 F.3d 1545, 1553-54 (Fed.Cir.1994).

Rather, the purpose of the Declaratory Judgment Act is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued."  *Algrant v. Evergreen Val. Nurseries Ltd. P'ship*, 126 F.3d 178, 189 (3d Cir. 1997)(citing, *inter alia, Travelers Ins. v. Davis*, 490 F.2d 536, 543 (3d Cir.1974).  Simply stated, the Act allows "prospective defendants to sue to establish their nonliability." *Algrant,* (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959)).

Here, of course, plaintiffs are not "prospective defendants" seeking an adjudication establishing their non-liability.  Events occurring in the past cannot be the source of a declaratory judgment because they gave rise to no actual case or controversy.  *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983).  The standing requirement "as articulated in *Lyons* has also been applied in the ADA context." *Douris v. Bucks Cty Office of the Dist. Attorney,* 2004 WL 1529169, at *5 (E.D.Pa. July 6, 2004) (citing cases).

Plaintiffs here have not identified any definable future harm that would entitle them to a declaratory judgment in this case. Under *Lyons,* therefore, they lack standing to pursue a claim for

declaratory relief.  *See e.g., Gonzalez v. Pennsylvania,* No. 06cv5471, 2007 WL 1655465, at *4 (E.D.Pa. Jun. 7, 2007).

### O.  Severance and Change of Venue Are Appropriate; Plaintiffs Have Not Opposed the Motion.

A moving party seeking to transfer a case, pursuant to 28 U.S.C. § 1404(a), bears the burden of establishing that: (1) venue is proper in the transferee forum; (2) transfer is more convenient for the parties and witnesses; and (3) transfer would be in the interest of justice. *Lehr v. Stryker Corp.*, No. 09cv2989, 2010 WL 3069633, at *3 (E.D.Pa. Aug.4, 2010).  While a strong presumption supports plaintiffs' choice of forum, a court has "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir.1995); *see also Hollander v. Hospira, Inc.*, No. 10cv235, 2010 WL 4751669, at *3 (E.D.Pa. Nov.22, 2010) (granting transfer because it best served justice); *Inaganti v. Columbia Props. Hbg, LLC*, No. 10cv 1651, 2010 WL 2471671, at *2 (E.D.Pa. Jun. 15, 2010) (recognizing that § 1404(a) transfer analysis is flexible and must be determined on the unique facts of each case).  Defendants bear the burden to show that "all relevant things considered, the case would be better off transferred to another district."  *In re U.S.*, 273 F.3d 380, 388 (3d Cir. 2001) (quotations and citation omitted).

While some claims against ESU, Fritsche and Welsh may, at first blush, appear to be common to all plaintiffs, no facts alleged regarding ESU relate to anyone other than Bartlett.  The only alleged involvement having anything remotely to do with ESU, Fritsche and Welsh relates to Bartlett's claims of retaliation upon her unsuccessful applications for two jobs.  The retaliation allegations hinge on the alleged conspiracy which in turn is based on nothing related to President Welsh apart from her authority to make decisions.  That retaliation and possibly implied

31

conspiracy claim against Fritsche and ESU is thus based only on Fritsche's vaguely alleged contacts with her former KU colleagues.

Indeed, Bartlett extends her claim to PASSHE which is located in Harrisburg, in the Middle District of Pennsylvania. ESU is located in Monroe County, in the Middle District of Pennsylvania, and its two officials—President Welsh and Human Resource Management Director Fritsche, as well as PASSHE, prefer the Middle District of Pennsylvania where the claim or claims by Bartlett against them arose, all relevant witnesses and documents are located. For all individual defendants in their official capacities, only the Middle District of Pennsylvania has proper venue. *See Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979)) ("for purposes of venue a state official's residence is located at the state capitol, even where branch offices of the state official's department are maintained in other parts of the state."); *Cottman Transmission Sys., Inc. v. Mario*, 36 F.3d 291 (3d Cir. 1994).

While plaintiffs' filing in the Eastern District of Pennsylvania showed their initial preference, Bartlett, the only plaintiff with any claim related to ESU and its officials, has shown by applying at ESU which is located in the Middle District, that the Middle District is not inconvenient. Thus, plaintiffs have not formally opposed the pending motion to sever which is now renewed.

Bartlett's retaliation/ conspiracy claims regarding her unsuccessful applications to work at ESU differ significantly from the issues related to the furloughs that occurred at KU. Depending on the disposition of the motion to dismiss, there may be no claim left against ESU, Fritsche or Welsh, and no related claim against PASSHE. Should any such claim remain, the issues could only regard Bartlett and would be distinct from the KU furlough-related claims. The witnesses and documents would all be different; and no prejudice would occur either to the five of six

32

plaintiffs who make no claim against ESU, Fritsche and Welsh, nor to Bartlett—the one plaintiff who makes the retaliation claims based upon the alleged conspiracy with ESU.

The public interest is that depositions and trial, should they be needed, would be more expeditious and less expensive.  For example, witness appearances would disrupt ESU functioning less than if witnesses did not have to travel far.  Moreover the local interest is to decide local controversies locally.  Bartlett's application to work at ESU suggests that the Middle District is not inconvenient for her.

Fed.R.Civ.P. 42(b) allows the court broad power to sever the claims against ESU and its two defendant officials, Fritsche and Welsh (as well as any related claim against PASSHE), if any claims against them survive the motion to dismiss.  *See Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 105 (3d Cir.1992); *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir.1976).  In exercising this discretion, the court weighs the competing interests of the parties and attempts to maintain an even balance. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936).  Thus courts balance considerations including the convenience of the parties, the avoidance of prejudice to either party, and "promotion of the expeditious resolution of the litigation." *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D.Pa. 2000) (internal quotation omitted).  Defendants bear the burden of demonstrating that bifurcation is appropriate.  *Reading Tube Corp. v. Emp'r Ins. of Wausau*, 944 F.Supp. 398, 404 (E.D.Pa.1996).

While the Court has discretion to sever Bartlett's claims and transfer them, here, where plaintiffs fail to state a claim upon which relief may be granted, the interests of justice suggest that the action should be dismissed, not transferred. Nonetheless, for all the above reasons, this Court should sever Bartlett's claims, if any remain, against ESU, Fritsche and Welsh and transfer them to the Middle District of Pennsylvania (Scranton).

**IV.    CONCLUSION**

Now that plaintiffs have amended their complaint twice and still fail to state a claim upon which relief may be granted, this Court should dismiss the entire complaint with prejudice.  If claims remain, nonetheless, related to ESU, as well as Fritsche, Welsh and PASSHE, those claims should be severed and transferred to the Middle District of Pennsylvania.

Respectfully submitted,

KATHLEEN G. KANE
Attorney General

/s/ Sue Ann Unger
_____

Sue Ann Unger
Senior Deputy Attorney General
Attorney I.D. No. 39009

Gregory R. Neuhauser
Chief Deputy Attorney General

Office of Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107
Phone: (215) 560-2127
Fax:    (215) 560-1031

## CERTIFICATE OF SERVICE

I, Sue Ann Unger, hereby certify that the defendants' motion to dismiss the second amended complaint in part has been filed electronically on April 1, 2014, and is available for viewing and downloading from the Court's Electronic Case Filing System. Plaintiffs' below counsel is on the court's electronic email notice list and has thus been served.

Deirdre Kamber Todd
No. 92613
The Kamber Law Group, PC
1275 Glenlivet Drive, Suite 100
Allentown, PA 18106

                                        By:   /s/ Sue Ann Unger
                                              Sue Ann Unger
  Office of Attorney General                  Senior Deputy Attorney General
  21 S. 12th Street, 3rd Floor                Attorney I.D. No. 39009
  Philadelphia, PA  19107
  Telephone:  (215) 560-2127
         Fax:  (215) 560-1031

## CERTIFICATE OF SERVICE

I, Sue Ann Unger, hereby certify that the defendants' motion to dismiss the second amended complaint, corrected to include all pages has been filed electronically on April 2, 2014, and is available for viewing and downloading from the Court's Electronic Case Filing System. Plaintiffs' below counsel is on the court's electronic email notice list and has thus been served.

Deirdre Kamber Todd
No. 92613
The Kamber Law Group, PC
1275 Glenlivet Drive, Suite 100
Allentown, PA 18106

<table>
<tr><td></td><td>By:</td><td>/s/ Sue Ann Unger</td></tr>
<tr><td></td><td></td><td>Sue Ann Unger</td></tr>
</table>

Office of Attorney General                    Senior Deputy Attorney General
21 S. 12th Street, 3rd Floor                  Attorney I.D. No. 39009
Philadelphia, PA  19107
Telephone:  (215) 560-2127
        Fax:  (215) 560-1031