## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CAMILLE BARTLETT, BONNIE YURVATI, MICHAEL SITKUS, JACK GRANT, GLENN GODSHALL, and WILLIAM STAHLER, *Plaintiffs*, | : : : : : | **NO. 5:13-cv-04331-CDJ** |
| | : | |
| vs. | : : | |
| KUTZTOWN UNIVERSITY, PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION EAST STROUDSBURG UNIVERSITY, and the following individuals in their personal and professional capacities: JAVIER CEVALLOS, CARLOS VARGAS ABURTO, GERALD SILBERMAN, SHARON PICUS, JOHN GREEN THERESA FRITSCHE, and, MARCIA G. WELSH, *Defendants*. | : : : : : : : : : : | **JURY TRIAL DEMANDED** |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO SEVER AND CHANGE VENUE

## I.      INTRODUCTION

In their second Motion to Dismiss, Defendants offer a broad variety of arguments, claims and assertions, including several not even raised by Plaintiffs' Amended Complaint.   Despite its loquacious assertions, Defendants' Motion lacks support of the law and seeks to change the facts, and therefore must be dismissed.

## II.      FACTUAL BACKGROUND

Between July 26, 2011, and April 2012, Kutztown University ("Kutztown" or "the University") and the Pennsylvania State System of Higher Education ("PASSHE").  terminated twelve managerial employees.  (Compl[1].  ¶¶31, 35).  Defendants furloughed eleven employees on July 26, 2011; one employee, Dr. William Stahler, was laid-off soon thereafter. *Id.*   All of the employees that

---

[1] All references to "Compl." refer to Plaintiffs' Second Amended Complaint.

Defendants furloughed were over the age of fifty (50) and approaching benchmarks in retirement; none of the Plaintiffs were fully vested. (Compl. ¶32-33). Plaintiffs Camille Bartlett, Glenn Godshall, Jack Grant, Michael Sitkus, Dr. William Stahler, and Bonnie Yurvati were former employees all were furloughed. (Compl. ¶¶1-6). Two of these employees were Emeriti; all of these employees had positive reviews and work histories. (Compl. ¶37). All, or nearly all, of the job duties of these employees were given to younger employees under the age of forty. (Compl. ¶36). Plaintiffs filed complaints with the Equal Employment Opportunity Commission ("EEOC") based on age, as well as gender or disability, discrimination, as applicable for each plaintiff. (Compl. ¶¶51, 69, 78, 92, 101).

Defendants Kutztown and PASSHE have pointed to various economic hardships to justify their termination of these older employees. (Compl. ¶24). Kutztown produced an organizational powerpoint called the "Six Major Factors" identifying retirement costs as one of the most draining expenses of the university. *Id.* Likewise in a meeting for the Business Office on reducing costs, Ken Long, a then-member of Kutztown management, said "we need people to die to ease the retirement burden." *Id.* Despite these assertions of economic strife, however, at all relevant times, Kutztown has continued to hire and engage in various expensive projects, such as campus forestry projects, hiring new employees, and engaging consultants. (Compl. ¶¶24-25). As Yurvati was told by a member of Kutztown upper management, "we're not in a hiring freeze." *Id*.

In response to Plaintiffs' complaints of discrimination, in October 2011, PASSHE issued a workplace policy for Kutztown called, "Non-represented Employees Severance Program," ("Policy"). (Compl. ¶38). The Policy offered furloughed employees a severance in exchange for a full waiver of rights. *Id.* The Policy was backdated to become effective from July 2011 so that it would relate back to the employees terminated in July. *Id.* Upon information and belief, PASSHE and Kutztown enacted this policy to curtail legal actions arising against Kutztown (and possibly other universities) and to mislead employees into waiving their rights to sue before they learn they have claims of

discrimination. *Id.* This policy shows an ongoing policy and practice of discrimination by the Defendants. *Id.*

After filing their complaints with the EEOC, some plaintiffs experienced retaliation at the hands of the Defendants.  These acts included:  (1) employees were unable to be reemployed by Kutztown despite being qualified for the positions; (2) some applied for, but were unable to procure, employment with other PASSHE schools, specifically, East Stroudsburg University ("ESU"), despite being qualified for the positions; and (3) disinviting Emeriti employees from attending Emeriti events. (Compl.  ¶¶19, 28-30, 57-61, 84).

By further example, after filing her EEOC Charge, Plaintiff Bonnie Yurvati's Merit Principle Appeal was heard by PASSHE.   (Compl.  ¶¶52-58).  The Hearing was against Kutztown based on discrimination.  *Id.*  PASSHE and Kutztown were aware of the EEOC Charges filed against them before Yurvati's Merit Principle Appeal hearing was held on January 12, 2012. *Id.*   Defendant Kutztown failed to present a prima facie case to PASSHE.  *Id.*  At the hearing, according to the admissions of Defendants Picus, Silberman, Steward, and other KU management, each of the Directors or appropriate supervisors, e.g. Carole Wells[1] and John Green, made their own lists as to who was to be terminated; the list was then subject to the approval of a group of Defendants including Picus, Cevallos, and Vargas as the final decisionmakers. *Id*.   Management knew that the employees terminated on July 26, 2011 was over the age of 50. *Id.*   Management further testified that the discrimination laws apply to Kutztown and Human Resources was familiar with the disparate impact theory under the age discrimination acts but simply did not consider it.  *Id.* PASSHE conducted an unfair hearing over Yurvati's objections. *Id.*  The case was heard and decided by PASSHE, over objection that Kutztown's counsel was also PASSHE's counsel in Yurvati's EEOC Charge. (Compl.  ¶57).   PASSHE improperly found in favor of Kutztown, despite Plaintiffs' exceptions and objections.  (Compl.  ¶58).

With respect to the individuals named in this action, each defendant has been directly involved and implicated with the termination and/or failure to hire of at least one Plaintiff; they also have had prior notice of the events in this matter.

Defendant Javier Cevallos ("Cevallos") was the President of Kutztown at the relevant time. (Compl. ¶57).   He was involved with the decisions to terminate Plaintiffs as well as decisions not to rehire the Plaintiffs. (Compl. ¶¶29-30, 56).  At Plaintiff Yurvati's Merit Principle Appeal, Defendants for Kutztown testified that Cevallos was a final decision-maker in the termination of these employees. (Compl. ¶56).   Cevallos created pressure to retire to an employee who served as a witness for the Plaintiffs in the EEOC investigation.  (Compl. ¶46).  Cevallos gave the directive that Bartlett, as Emeriti, was not to be invited to Emeriti events because she had filed an EEOC complaint. (Compl. ¶84).

Defendant Carlos Vargas Aburto ("Vargas") is the Provost and Vice President for Academic and Student Affairs for Kutztown. (Compl. ¶10).   He was responsible as a decisionmaker for the decisions to terminate the Plaintiffs as well as decisions not to rehire the Plaintiffs. (Compl. ¶¶29-30, 56).  At Plaintiff Yurvati's Merit Principle Appeal, Defendants for Kutztown testified that Vargas was a decision-maker in the termination of these employees. (Compl. ¶56).   Vargas created pressure to retire to an employee who served as a witness for the Plaintiffs in the EEOC investigation.  (Compl. ¶46). Finally, Defendant Vargas was directly responsible for the discrimination against, and termination of, Plaintiff Dr. Stahler.  (Compl. ¶¶108-118).

Defendant Gerald Silberman ("Silberman") is the Vice President of Administration and Finance for Kutztown University (Compl. ¶12).   He was responsible for the decisions to terminate the Plaintiffs as well as decisions not to rehire the Plaintiffs. (Compl. ¶¶29-30, 56).  At Plaintiff Yurvati's Merit Principle Appeal, Defendants for Kutztown testified under oath testified that Silberman made his own list of who was to be terminated.  (Compl. ¶12).   Silberman terminated Camille Bartlett while she was on her honeymoon. (Compl. ¶72).   Silberman also retaliated against

Plaintiff Yurvati, when he told her not to bother applying for a position with Kutztown because she filed a complaint against Kutztown. (Compl. ¶61).

Defendant Sharon Picus ("Picus") is the Director of Human Resources for Kutztown. (Compl. ¶13).   She was responsible for the decisions to terminate the Plaintiffs as well as decisions not to rehire the Plaintiffs. (Compl. ¶¶29-30, 56).   Picus testified at Plaintiff Yurvati's Merit Principle Appeal that upper-management knew everyone terminated on July 26, 2011 was over the age of fifty (50) and that the federal and state non-discrimination laws apply to Kutztown. (Compl. ¶56).   Picus further testified she was familiar with the disparate impact theory under the age discrimination acts but simply did not consider it. *Id.*

Defendant Theresa Fritsche ("Fritsche") is the Director of Human Resources for ESU. (Compl. ¶15).   Fritsche conspired with the other Defendants to refuse to hire Plaintiff Bartlett at ESU. (Compl. ¶30).   Fritsche previously had worked in Human Resources at Kutztown and had maintained her friendships and contacts at Kutztown. (Compl. ¶82).   After Bartlett filed her EEOC Charge, she applied for two jobs at ESU. (Compl. ¶¶78-80).   She was qualified for both jobs. *Id.* Fritsche notified Plaintiff Bartlett that she was not qualified for the jobs and would not be hired. *Id.* Fritsche, along with the President of ESU, refused to consider hiring Bartlett because Bartlett had filed an EEOC charge against Kutztown and PASSHE. (Compl. ¶80).   ESU, including the individual defendants named herein, treated Bartlett less favorably than male employees and employees younger than forty, and then retaliated against her because she filed a charge with the EEOC. (Compl. ¶85).

Defendant Marcia G. Welsh ("Welsh") is the President of ESU. (Compl. ¶16).   Welsh was a decision-maker in this case. (Compl. ¶¶29-30).   Fritsche could only decide not hire Bartlett with Welsh's involvement; Welsh and Fritche conspired together to decide not to hire Bartlett. (Compl. ¶83).   ESU, including the individual defendants named herein, treated Bartlett less favorably than male employees and employees younger than forty, and then retaliated against her because she filed a charge with the EEOC. (Compl. ¶85).

5

Plaintiffs Camille Bartlett and Bonnie Yurvati filed retaliation claims against the Defendants with the EEOC; Bartlett included ESU as part of her charge. (Compl. ¶57, 84). The EEOC eventually closed all of Plaintiffs' discrimination and retaliation claims and issued Right to Sue Letters. (Compl. ¶19). Plaintiffs filed their claims with this Court in a timely manner. *Id.*

## III. PROCEDURAL HISTORY

Plaintiffs filed a timely Complaint on July 24, 2013. Defendants filed a Motion to Dismiss and Sever on August 28, 2013. Plaintiffs filed an Amended Complaint on September 13, 2013. Defendants filed a Motion to Dismiss and Sever on September 26, 2013. Plaintiffs filed a Second Amended Complaint on October 16, 2013. Defendants filed a Motion to Strike Plaintiffs' Second Amended Complaint on October 17, 2013. The Court granted the Motion to Strike. Plaintiffs filed a Motion for Leave to File on October 28, 2013. Defendants filed a Response in Opposition to the Motion on December 12, 2013. This Court granted Plaintiffs' Motion for Leave to File and contemporaneously filed Plaintiffs' Second Amended Complaint on March 17, 2014. Defendants filed a Motion to Dismiss Plaintiffs' Second Amended Complaint on April 2, 2014, their third Motion to Dismiss to date.[2] Plaintiffs now file a Motion in Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, or, in the alternative, to Sever and Change Venue, and the instant Memorandum in Support thereof.

## IV. LEGAL STANDARDS

### A. Dismissal under Fed. R. Civ. P. 12(b)(1)

Pursuant to *Fed. R. Civ. P. 12(b)(1)*, when "considering a motion to dismiss for lack of subject matter jurisdiction, the person asserting jurisdiction bears the burden of showing that the case is

---

[2] Defendants assert that Plaintiffs have been tardy in addressing Defendants' motion for change of venue. (Defs' MTD pg. 8). This lacks merit. In filing their amended complaints, Plaintiffs' new complaint terminates Defendants' preceding motions to dismiss, sever, and change venue. Defendants' Motion to Change Venue, moreover, is only ripe for adjudication in the context of the Defendants' Motion to Dismiss, and Plaintiffs' obligation to respond arises in reply to Defendants' motion to dismiss. Therefore, Plaintiffs will address the issue of venue in the instant memorandum.

properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir.1993)*. A court may treat a *Rule 12(b)(1)* challenge as either a factual or facial attack to subject matter jurisdiction. *See Mortensen v. First Federal Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)*. Without supplemental information relating to subject matter jurisdiction, the Court should treat this motion as a facial attack, which requires that the Court accept all allegations set forth in the Complaint as true. *See Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)*; *see also Mortensen, 549 F.2d at 891*. The Court must "draw all reasonable inferences in the plaintiff's favor." *Lexington Ins. Co. v. Forrest, 263 F. Supp.2d 986, 996 (E.D. Pa. 2003)*.    According to the Third Circuit, "[a] claim may be dismissed under *Rule 12(b)(1)* only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Gould Electronics, 220 F.3d at 178* (quoting *Kehr Packages, Inc. v. Fidelcor, 926 F.2d 1406, 1409 (3d Cir. 1991))* (internal quotations omitted).

### B.     Dismissal under Fed. R. Civ. P. 12(b)(6)

*Fed. R. Civ. P. 12(b)(6)* provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.   A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States, 220 F.3d 169, 178 (3d Cir. 2000)*.  When considering a *Rule 12(b)(6)* motion, the Court's role is limited to determining whether a plaintiff is entitled to offer evidence in support of her claims. *See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)*. The pleading need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)* (*per curiam*) (*quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*.  A complaint must only set forth information from which each element of a claim maybe inferred. *Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)*.  "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations." *Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)*. In an employment discrimination action, specifically, a plaintiff is not required to plead every element of her *prima facie* case to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). A plaintiff need only allege material facts that, "in addition to inferences drawn from those [factual] allegations, provide a basis for recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.,* 154 F.3d 113, 124 (3d Cir. 1998). The Court need not assume the plaintiff can prove facts that were not alleged in the complaint. *See City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 263 & n.13 (3d Cir. 1998)*. Nor does the Court consider whether a plaintiff will ultimately prevail. *Id*.   Accordingly, "a court should not grant a motion to dismiss 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997).

## IV.   ARGUMENT

### A.   Defendants are Not Entitled to Eleventh Amendment Immunity with Respect to Any of the Claims in this Action

Defendants assert that the U.S. Constitution Amendment XI ("Eleventh Amendment"*)* bars Plaintiffs' claims against all parties in this action.  This claim *in toto* must fail.

Under the Eleventh Amendment, a state generally cannot be sued in federal court unless it has consented to such suits. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). The Supreme Court has extended this immunity to state agencies. *See, e.g., Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (2008).

The bar to suit found in the Eleventh Amendment is not absolute. *Port Auth. Trans-Hudson Corp. v. Feeney,* 495 U.S. at 304 (U.S. 1990).   Eleventh Amendment immunity is neither automatically nor indisputably granted to an entity claiming immunity. *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).   Entities claiming Eleventh

Amendment protections will be afforded such protection only if the entity meets the tests to be deemed a protected state actor and no exception applies. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. at 299-306 (U.S. 1990).   The United State Court of Appeals for the Third Circuit has identified three primary exceptions to Eleventh Amendment immunity. *Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Those exceptions are "(1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Id.* Defendants do not, and cannot, show that they are entitled to and/or have not waived, Eleventh Amendment immunity.

### 1.     Defendants Failed to Plead Entitlement to Eleventh Amendment Protection Under *Fitchik*

In order to be entitled to Eleventh Amendment immunity, a defendant first must show that it is entitled to such immunity.  To do so, it must meet the elements of a test to show it is a protected state actor. The Third Circuit, in *Fitchik v. NJ Transit*, developed the test to determine whether Eleventh Amendment immunity is available to a defendant.  The *Fitchik* Court laid out the following as the test for immunity:

1.     Whether the money that would pay the judgment would come from the state;

2.     The status of the agency under the law, including:

    a.     how the law treats the agency generally

    b.     whether the entity is separately incorporated,

    c.     whether the agency can sue or be sued in its own right,

    d.     whether it is immune from state taxation); and,

3.     The degree of autonomy that the agency has.

*Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989)(*adopted from Urbano v. Board of Managers of the New Jersey State Prison, 415 F.2d 247, 250-51 (3d Cir. 1969)*, cert. denied, 397 U.S. 948, 90 S. Ct. 967, 25 L. Ed. 2d 128 (1970), as modified by Garcia v. San Antonio Metro Transit,* 469 U.S. 528, 83, L.Ed.2d 1016, 105 S.Ct. 1005 (1985)).   Here,    Defendants failed to plead facts to show they are entitled to Eleventh Amendment protection.   Defendants make no attempt to show by *any* legal standard (much less the appropriate legal standard of Fitchik) that they are entitled to Eleventh Amendment protection.   Defendants completely omitted reference to the *Fitchik* test despite multiple opportunities to do so (including three Motions to Dismiss, reference by Plaintiffs in their Motion in Opposition to Defendants' Motion to Strike Plaintiffs' Second Amended Complaint, *and*  identification to the *Fitchik* test in other lawsuits against Kutztown, e.g., *Barlieb v. Kutztown, supra*).   Instead, Defendants' purported Eleventh Amendment protection is based on nothing more than bald legal conclusions and reference to a few cases that are inapposite to the case at bar.   Defendants' overt failure to plead the necessary elements of Eleventh Amendment protection must result in denial of all of the Defendants' claims to such protection, and Defendants' Motion, as based on Eleventh Amendment immunity for all claims and all defendants (organizational, individual, professional, and personal), must be denied.

Under *Fitchik,* in order to receive Eleventh Amendment protection, a defendant university must first must show whether the money that would pay the judgment would come from the state.

        **a)**      **Element One:  Whether the Money for Damages Comes from the State**

Defendants Kutztown and ESU do not and cannot show that the funds for a judgment would be provided from the Commonwealth of Pennsylvania.   First, while Kutztown and ESU receive some funding from the state government (as most private and public educational organizations do), this is only one source of funding for the Defendant universities.   These universities solicit financial support from multiple sources including alumni, bequests, tuition, student bookstores, campus dining, and

fundraisers.   PASSHE, too, is incorporated and acts as a private organization. The Defendants presumably also have liability insurance, as many employers do, thereby nullifying the issue of state monies. Therefore, Defendants have a substantial source of private funding, and therefore cannot show that any judgment against them would have to come from state monies.

As for the individually-named defendants, without protection for the universities, they have no separate Eleventh Amendment protection.  If professionally liable, their judgment may too come from any discretionary source.  If individually liable, moreover, they may be personally responsible for their harm, thereby removing any funding obligation of the state.

Finally, Defendants cannot claim the state-spending standard bars Plaintiffs' requested relief of injunction and declaratory relief. As these resolutions are non-monetary, they would not trigger a preclusion under this element.  Therefore, Defendants Kutztown and ESU do not and cannot meet this element of the test.

### b)      Element Two:  Status of the Law

Kutztown and ESU cannot satisfy the second element of the *Fitchik* test. Element two of the *Fitchik* test is composed of four sub-elements: (i) how the law treats the agency generally; (ii) whether the entity is incorporated; (iii) whether the agency can sue or be sued in its own right; and (iv) whether it is immune from state taxation.

### (1)      How the Law Treats the Defendants

Numerous Pennsylvania courts have found that the defendants are not entitled to Eleventh Amendment immunity in cases that are parallel to the case at bar.  "[E]ach state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances." *Kovats v. Rutgers,* 822 F.2d at 1312.

In *Hall v. Kutztown University*, an employee sued Kutzotwn for Title VII and §1983 claims; this Court again found that Kutztown was not entitled to Eleventh Amendment protections.  1998 U.S.

11

Dist. LEXIS 2418 (E.D. Pa. Feb. 23, 1998). In *Barlieb v. Kutztown University*, a §1983 action by a

Kutztown University employee, this Court found that Kutztown was capable of being held liable for

its constitutional violations.   2003 U.S. Dist. LEXIS 25178 (E.D.Pa. 2003).     In *Bernard v. E.*

*Stroudsburg University,* ESU declined to plead Eleventh Amendment immunity in a student sexual

harassment case. *Bernard v. ESU,* 2010 U.S. Dist. LEXIS 108531 (M.D. Pa. Oct. 12, 2010) and its

progenitor, F.*B. v. E. Stroudsburg Univ.,* 2009 U.S. Dist. LEXIS 57370 (M.D. Pa. July 7, 2009).  *See*

*also Miller v. Kutztown Univ*., 2013 U.S. Dist. LEXIS 173878 (E.D. Pa. Dec. 10, 2013)(Kutztown was

sued for sexual harassment by a student, no claim of Eleventh Amendment protection pled). In

*Gentner v. Cheyney University, PASSHE, et al,* 1996 U.S. Dist. LEXIS 13545, university employees

successfully sued PASSHE and Cheyney University due to racial harassment and unfair employment

practices under Section 1983 and Title VII; they were awarded not only damages but also attorneys'

fees. *Gentner v. Cheyney Univ., PASSHE, et al.,* 1999 U.S. Dist. LEXIS 16796 (E.D. Pa. Nov. 1,

1999).

As discussed *supra*, Defendants make caselaw references as their only basis for *Eleventh*

*Amendment* immunity.  Even if this were sufficient to meet the *Fitchik* test, which it does not, and

despite their efforts to lift quotes out of context, Defendants' cases are inapposite to the case at bar.

Defendants first cite to *Skehan v. Board of Trustees,* 815 F.2d 244; 1987 U.S. App. LEXIS 3547

(1987)*.* The *Skehan* case involves Bloomsburg University, not Kutztown or ESU.  *Id.* In *Kovats v.*

*Rutgers,* the case was brought against Rutgers University, not against the defendants at bar. 822 F.2d

1303; 1987 U.S. App. LEXIS 8283 (1987). The  *Kovats* case also required application of the *Fitchik*

test*,* which Defendants failed to apply here.   The case *Coulter v. East Stroudsburg University* is a

student case regarding discipline and illegal drugs; the student was seeking injunctive relief. The

Court, moreover, granted injunctive relief against the defendant employee of the university.  2010

U.S. Dist. LEXIS 43337 at *4, FN2, *10 (May 4, 2010).  In *Abernathy v. Indiana University,* the case

was brought, against, against a different entity, Indiana University, not the defendants at bar; it also is

a case filed by a student, not an employee. Finally, the *Abernathy* Court (Western District, not this Court) denied the defendants' motion to dismiss the plaintiff's §1983 action.   Finally, as the *coup de grace* in this list of cases, the Court in *Pearson v. UCBR* is completely unsupportive; it granted unemployment compensation benefits to a state university vice president, over the protest of the university. *689 A.2d 352, 357 (Pa.Cmwlth. 1997).*   As such, the law repeatedly has found that Defendants are not entitled to Eleventh Amendment protections.

### (2)      Whether The Entity Is Separately Incorporated

With respect to individual incorporation, the second sub-element, Kutztown, ESU, and PASSHE all privately incorporated themselves (and therefore act as private actors):[3]

- East Stroudsburg University Student Activity Association, Inc., was incorporated on April 13, 1976;

- Kutztown Alumni Association, Inc., was incorporated on February 13, 1979;

- Kutztown Foundation Inc. was incorporated on July 5, 1983;

- PASSHE privately incorporated itself on June 14, 1985;

- The East Stroudsburg University Foundation, Inc. was incorporated on December 1, 1986.

- Kutztown Student Services was incorporated on August 21, 1997.

- East Stroudsburg University Speech And Hearing Center was incorporated on May 11, 1998;

- The East Stroudsburg University Center For Research And Economic Development was incorporated on March 30, 1999;

- East Stroudsburg University Bookstore #8074 was incorporated on April 29, 2013;

Thus, Defendants have treated themselves as private entities in the Commonwealth of Pennsylvania and have functioned as a business, as discussed in Element 1, *supra*.  As such, none of the Defendants can meet this standard.

---

[3] *See* Exh. A.

### (3)     Being Sued Or Suing In Its Own Right

In evaluating whether Defendants can sue or be sued in its own right, the answer is (1) all defendants have been sued successfully beyond Eleventh Amendment immunity and (2) both ESU and PASSHE have initiated suits of their own.  Examples of defendants' lawsuits include, but are not limited to: *Hall v. Kutztown University,* 1998 U.S. Dist. LEXIS 2418 (E.D. Pa. Feb. 23, 1998); *Miller v. Kutztown Univ.*, 2013 U.S. Dist. LEXIS 173878 (E.D. Pa. Dec. 10, 2013);  *Barlieb v. Kutztown University*, 2003 U.S. Dist. LEXIS 25178 (E.D.Pa. 2003);  *Bernard v. ESU,* 2010 U.S. Dist. LEXIS 108531 (M.D. Pa. Oct. 12, 2010); *F.B. v. E. Stroudsburg Univ.,* 2009 U.S. Dist. LEXIS 57370 (M.D. Pa. July 7, 2009); *Gentner v. Cheyney University, PASSHE, et al,* 1996 U.S. Dist. LEXIS 13545 (Employees successfully sued Cheyney University and PASSHE regarding racial harassment and unfair employment practices under Section 1983 and Title VII.); *East Stroudsburg Univ. Found. v. Office of Open Records,* 2009 Pa. Commw. Unpub. LEXIS 867 (Pa. Commw. Ct. 2009)(ESU sued the Office of Open Records.); *Pa. State Sys. of Higher Educ. v. Pa. Labor Rels. Bd.,* 2012 Pa. Commw. Unpub. LEXIS 616 (Pa. Commw. Ct. 2012). (PASSHE sued the Labor Relations Board.); *State Sys. of Higher Educ. v. Ind. Area Sch. Dist.,* 2012 Pa. Commw. Unpub. LEXIS 249 (Pa. Commw. Ct. 2012)(PASSHE filed suit regarding a lease issued on real property it owned.)

### (4)     Whether the Entity Is Immune from State Taxation

With respect to taxation, given their various incorporations, it appears likely that the Defendants are not immune from state taxation.  To the extent that all of the Defendants had the opportunities to plead immunity, moreover, and failed to assert tax immunity, Defendants have waived their rights to Eleventh Amendment immunity.

      **c)**        **Element Three:  The Entity's Degree of Autonomy**

The third element of *Fitchik* concerns an entity's autonomy.  As for autonomy, these Defendants are generally autonomous entities: they have presidents, provosts, boards, and non-profit foundations.  They are corporations able to enter into contracts, bring lawsuits, advertise, own and manage property, buy insurance, structure the corporation's internal management, set price and tuition rates, terminate and hire employees, and/or collect monies from a variety of sources. Now, Defendants deny that PASSHE has the ability to be involved with hiring; this is belied by their advertising online for university positions.[4]  Therefore, they function as autonomous entities, not as alter-egos of the state.

Thus, after multiple bites at the apple, Defendants have made no effort to show actual entitlement to Eleventh Amendment immunity.  They did not cite to *Fitchik*.  They did not meet the *Fitchek* test.   They did not bother to assert any averments to support their bald assumption of entitlement.  By their standard, <u>anyone</u> who claimed entitlement should be granted immunity; hence, the necessity of pleading the *Fitchik* test.  As such, Defendants' claims of Eleventh Amendment immunity with respect to all defendants and their employees in their professional and personal capacities must be denied.

      **2.**        **Defendants Have Waived Their Rights to Eleventh Amendment Protection, and Therefore, Have Consented To Be Sued**

Even if somehow entitled to Eleventh Amendment protection, an entity can waive its right and/or consent to be sued and therefore lose its protections. As stated *supra*, entities claiming Eleventh Amendment protections will be afforded such protection only if (1) the entity meets the tests to be deemed a protected state actor; and (2) <u>the entity has neither waived its rights nor consented to be sued</u>.  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. at 299-306 (U.S. 1990)(underline

---

[4] *See* Exh. B

added).   It is Plaintiffs' position that Defendants are not entitled to Eleventh Amendment immunity, but even if immunity could apply, however, Defendants have already waived their rights to immunity, so they cannot now assert a claim to immunity.

Where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment.  *Gunter v. Atl. Coast Line R.R. Co.,* 200 U.S. 273, 284, 26 S. Ct. 252, 50 L. Ed. 477 (1906); *see also Clark v. Barnard,* 108 U.S. 436, 2 S.Ct. 878, 27 L. Ed. 780 (1883).

As discussed *supra*, Kutztown, ESU, and PASSHE all have been parties to actions where they have been sued and where they have sued others. Examples include, but are not limited to: *Hall v. Kutztown University,* 1998 U.S. Dist. LEXIS 2418 (E.D. Pa. Feb. 23, 1998); *Miller v. Kutztown Univ*., 2013 U.S. Dist. LEXIS 173878 (E.D. Pa. Dec. 10, 2013);  *Bernard v. ESU,* 2010 U.S. Dist. LEXIS 108531 (M.D. Pa. Oct. 12, 2010); *F.B. v. E. Stroudsburg Univ.,* 2009 U.S. Dist. LEXIS 57370 (M.D. Pa. July 7, 2009); *Gentner v. Cheyney University, PASSHE, et al,* 1996 U.S. Dist. LEXIS 13545; *East Stroudsburg Univ. Found. v. Office of Open Records,* 2009 Pa. Commw. Unpub. LEXIS 867 (Pa. Commw. Ct. 2009); *Pa. State Sys. of Higher Educ. v. Pa. Labor Rels. Bd.,* 2012 Pa. Commw. Unpub. LEXIS 616 (Pa. Commw. Ct. 2012); *State Sys. of Higher Educ. v. Ind. Area Sch. Dist.,* 2012 Pa. Commw. Unpub. LEXIS 249 (Pa. Commw. Ct. 2012).  Despite multiple opportunities to argue lack of waiver and consent, Defendants have refused to demonstrate a historical, and absolute, lack of consent.  Rather, Defendants assert bald legal conclusions without any factual support. Demonstrably, Defendants historically have permitted cases to move forward; they now must be estopped from arguing a lack of waiver.  As such, Defendants' Motion to Dismiss based on Eleventh Amendment, again, must fail.

Defendants arguments must also fail, as their own workplace policies show waiver.

Kutztown's anti-discrimination policy, titled "Kutztown University Policy DIV-008,"[5] provides:

Kutztown University is committed to creating an environment free of unlawful discrimination for all its employees and students. Accordingly, acts of discrimination based on an individual's gender, race, ethnicity, national origin, age, disability, religion, sexual orientation, gender identity or veteran status is prohibited.

Discrimination as a result of belonging to a protected class may constitute a violation of Title VII of the U.S. Civil Rights Act of 1964, a violation of Title IX of the Education Amendments of 1972, a violation of the Pennsylvania Human Relations Act, other applicable federal and state laws/regulations, and/or university policy.

---

[5] *See* Exhibit C.

*Ibid.* Kutztown's policy clearly includes age, gender, and disability as protected classes under "applicable federal and state laws/regulations." ESU's policy,[6] which was last reviewed in 2011, states in relevant part:

**Policy Statement:**

East Stroudsburg University seeks to provide an academic and work environment that is free from discrimination and harassment against any person because of race, color, national origin, religion, sex, disability, age, sexual orientation, gender identity or veteran's status in accordance with applicable federal and state laws and regulations.

While the University is committed to the principles of free inquiry and free expression, discrimination and harassment identified in this policy is neither legally protected expression nor the proper exercise of academic freedom.

Discrimination and harassment are prohibited and subject to disciplinary action up to and including termination or expulsion from the University.

*Ibid.* This is further supported by the testimony of the Executive Director of Human Resources, who testified at Yurvati's Hearing that the federal and state anti-discrimination laws do, in fact, apply to Kutztown.[7]

ESU's policy likewise includes both disability and age as protected classes under "applicable federal and state laws/regulations." PASSHE, likewise, has "Policy 1983-11: *Equal Opportunity,*"[8] that provides:

The State System of Higher Education is committed to a policy of affirmative action. The State System assures an equal opportunity to all persons without regard to race, color, religion, creed, handicap, ancestry, national origin, age, or sex in accordance with state and federal laws, including Title VI of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and Section 504 of the Rehabilitation Act of 1973.

*Ibid.* PASSHE's policy, adopted in 1983 and never amended, not only prohibits discrimination based on disability (or handicap), it also references both state and federal law, including Section 504 of the

---

[6] *See* Exhibit C.
[7] *See* Exhibit C, N.T. 94, lines 17-18 (discussed further *infra).*
[8] *See* Exhibit D.

federal Rehabilitation Act of 1973 (the federal predecessor of the Americans with Disabilities Act, enacted in 1993).  As further clarification, PASSHE also offers the public its online Legislation and Caselaw Page, which lays out the various federal and state laws that apply to it, including the ADA, Title VII, and the ADEA.[9]

Thus the policies and website of Defendants Kutztown, ESU, and PASSHE confirm they protect employees against age, gender, and disability discrimination, and they are voluntarily subject to applicable federal and state anti-discrimination laws. Thus, it is disingenuous, as well as erroneous, of the Defendants to now claim that these laws do not apply.

As discussed *supra,* Defendants' presumption that they are covered under the Eleventh Amendment and rely solely on the issue of general abrogation of states' rights to argue that these laws cannot apply to them.[10] Defendants also err in asserting that there is a single blanket of immunity that covers all of the Commonwealth of Pennsylvania. Rather, as the variety of case holding demonstrate, and as the *Kovats* Court stated in the context of state colleges, "[E]ach state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances."  822 F.2d at 1312.

In light of (1) Defendants' failure to meet the *Fitchik* test for Eleventh Amendment entitlement and (2) Defendants' voluntary waiver as to applicability of all claims, including the ADEA, ADA and PHRA, Defendants' Motion to Dismiss regarding the ADEA, ADA, and PHRA must fail.[11]

---

[9]  *See* Exhibit D (also available at *http://www.passhe.edu/inside/legal/areas/Employment/law/Pages/default.aspx).*

[10]  With respect to the ADEA and ADA, Defendants correctly note that Congress drafted the laws to abrogate states' rights under the Eleventh Amendment, which the courts overturned.  The issue at bar, however, is not abrogation, but entitlement to immunity, in the first instance, and a lack of waiver.

[11]   As Defendants do not assert they are immune from Title VII, Plaintiffs will not provide discussion on the issue; however, the same principles would apply.

**B.     Plaintiffs Yurvati and Bartlett's *Prima Facie* Cases of Retaliation are Properly Averred and are Ripe for Adjudication**

Despite Defendants' assertions, Plaintiffs Yurvati and Bartlett have pled *prima facie* cases of retaliation under Title VII, ADEA, and PHRA; their claims, moreover, are ripe for adjudication.[12]

**1.     Plaintiffs Yurvati and Bartlett have Pled Prima Facie Cases of Retaliation under the ADEA, Title VII, and the PHRA**

Title VII's anti-retaliation provisions provide:

> It shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge . . . under this subchapter.

42 U.S.C. § 2000e-3(a). The ADEA and PHRA are interpreted *in pari materia* to Title VII.  To establish a *prima facie* case of retaliation under the law**,** a plaintiff must plead sufficient facts to show that: (1) she engaged in activity protected by law**;** (2) the employer took an adverse employment action against her; (3) there is a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila*., 461 F.3d 331, 340-41 (3d Cir. 2006).

Here, Yurvati and Bartlett satisfied the first prong:  they filed their EEOC Charges, dually filed with the PHRC, against Defendants on December 28, 2011. (Compl. 57, 67).[13]

With respect to the second prong, both Yurvati and Bartlett were subject to adverse actions by Kutztown and PASSHE.  42 U.S.C.S. § 2000e-3(a) is not limited to discriminatory actions that affected the terms and conditions of employment; the employee need only show that a reasonable employee would have found the challenged action materially adverse**.** *Burlington v. White,* 548 U.S. 53; 126 S. Ct. 2405; 165 L. Ed. 2d 345; 2006 U.S. LEXIS 4895.

---

[12] Defendants also argue that they were not on notice of these claims when the originally EEOC filing was made.  That is only logical; the retaliation must, and did, occur after the original EEOC charge arose.

[13] As Defendants know, all of Plaintiffs' original EEOC discrimination filings (with the exception of Stahler) were filed on the same day.

Defendants appear to argue that the timing of these events cannot show retaliation; this is inaccurate. With respect to Yurvati, examples of retaliation arose after Defendants became aware of the EEOC charge on December 28, 2011, include (1) Kutztown and PASSHE's violation of Yurvati's rights and due process violations in the Merit Principle Appeal (starting on January 12, 2012, but continuing) (Compl.¶52-58)[14]; (2) Silberman's comment to Yurvati telling her not to bother applying for employment with Kutztown because she had filed a charge of discrimination (Compl. ¶66); and (3) Kutztown and PASSHE's failure to be considered for a job that Yurvati was qualified to do, despite applicable law requiring them to return her to work on February 21, 2013 (Compl. ¶68).

With respect to Bartlett, examples of retaliation which arose after Defendants became aware of the EEOC charge (December 28, 2011) include (1) ESU refusing to hire Bartlett for two position for which she was highly qualified (the rejections occurred on March 19, 2012 and November 2012, respectively) (Compl. ¶¶85-87); and (2) although an Emeriti, Cevallos message to Bartlett that she was disinvited to Kutztown's Emeriti university functions because of her filing of her EEOC Charge. (Compl. ¶91). Taking Plaintiffs' averments as true, as they must be for this motion, these actions are adverse and are in direct response to the Plainitffs' filings.

The third prong of the retaliation test is that there is a causal connection between her participation in the protected activity and the adverse employment action. As stated *supra*, the complaint need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)* (per curiam) (quoting *Twombly, 550 U.S. at 555*).

Here, Plaintiffs assert both obvious and veiled facts to show the nexus between the participation in the protected activity and the adverse retaliatory acts by Defendants. Examples of

---

[14]  It is demonstrable that Kutztown and PASSHE were familiar with the EEOC Charge as counsel for Kutztown and PASSHE, was Kathleen McCormack.  Because she had already responded to the EEOC Charge, Yurvati's counsel objected to McCormack's representation in the Merit Appeal Hearing.  (Comp. ¶62).

overt acts of retaliation include: (1) Defendant Silberman telling Yurvati not to bother applying for reemployment with Kutztown <u>because</u> of her complaint, and (2) the President's office telling Bartlett that she was disinvited from Emerti events <u>because</u> she had filed an EEOC charge.  Less obvious but more damaging connections include the failure to be hired by ESU and/or the failure to rehire Plaintiffs by Kutztown, despite the facts that they were qualified for positions, were supposedly furloughed without cause, and should have been returned to employment as soon as a position opened up, pursuant to the Civil Service Laws. (Compl. ¶ 91).  The timing of the rejections of Yurvati and Bartlett further support the nexus.  Yurvati was told by Silberman not to apply; she applied regardless; and she was immediately rejected.  Bartlett's first application with ESU sat for months; yet, shortly after Bartlett identified ESU in her EEOC Intake Questionnaire and word reached ESU, Bartlett was rejected by ESU.[15]  The second time Bartlett applied for employment with ESU, moreover, she was immediately rejected.

Therefore, Plaintiff Yurvati and Bartlett have pled *prima facie* cases of retaliation and Defendants' Motion to Dismiss based on this argument must fail.

## 2.    Plaintiffs' Retaliation Claims are Ripe for Adjudication

Defendants also assert that Plaintiffs complaints are not ripe for adjudication; that assertion is without merit.  Defendants claim that the EEOC must investigate a claim for 180 days before dismissal; this too is in error.  Finally, Defendants claim that the EEOC must issue a Right to Sue letter before an ADEA action may be initiated in court; this is incorrect.

Yurvati filed a retaliation complaint on March 7, 2013.  Bartlett filed her retaliation claim on May 3, 2013.  By plain read of Exhibit F, the EEOC's Notice to Bartlett on her retaliation claim states: (1) the EEOC provides no formal Right to Sue in ADEA cases;  (2) no formal Right to Sue needed to

---

[15] *See* Exh. E.

institute a claim under the ADEA in court; and (3) cases do not require an investigation of 180 days. Specifically, the EEOC's Notice states:

> [I]t is the EEOC's position that such Notices are not required as a prerequisite for filing a lawsuit in U.S. District Court under the ADEA nor must the DOJ issue a Notice of Right to Sue for ADEA charges against public employers.  Therefore, neither this office nor the DOJ can issue you a Notice of Right to Sue under the ADEA.  Instead, a private ADEA lawsuit may be filed in Federal District Court any time from 60 days after a charge is filed with the EEOC until 90 days after receipt of notification that EEOC has terminated its processing of the charge.

*Ibid.* [16]  The Notice indicates that plaintiffs must file an action within ninety days of <u>receipt of</u> <u>notice</u> <u>of closure</u>*;* it does not say "receipt of a Right to Sue letter" (also in consideration of whether a Right to Sue Letter even can be issued).  In this case, for example, the EEOC states that it <u>cannot</u> issue a Right to Sue Letter; however, by plain read, this communication constitutes receipt of notice of closure.

As pled in the Complaint and subsequent Amended Complaints, both Yurvati and Bartlett's claims were closed by the EEOC.[17]  Plaintiffs received emailed notice from EEOC Investigator Patricia Carrasco that she is closing Yurvati's claim on June 19, 2013, with emailed confirmation of closure from Investigator Carrasco on July 8, 2013. Plaintiffs received written notice of closure from the EEOC of Bartlett's claim on June 25, 2013.  Plaintiffs filed a timely Complaint on July 23, 2013.

- Plaintiff Yurvati:

  - Filed her charge on March 3, 2013;

  - The case was closed on June 19, 2013; and

  - The Complaint was filed July 23, 2013, which is:

    - 143 days after Yurvati's charge was filed with the EEOC, and

---

[16] *See* Exh. F.
[17] *See* Exh. F.

- 35 days after receipt of notification that EEOC has terminated its processing of the charge.

- Plaintiff Bartlett:

   o Filed her retaliation claim on May 3, 2013;

   o The case was closed on June 25, 2013;

   o The Complaint was filed July 23, 2013, which is:

      - 82 days after Bartlett's charge was filed with the EEOC, and

      - 29 days after receipt of notification that EEOC has terminated its processing of the charge.

Both claims were filed after "any time from 60 days after a charge is filed with the EEOC" and before "90 days after receipt of notification that EEOC has terminated its processing of the charge." *Ibid.*

Even if Plaintiffs' cases were closed "prematurely" (to quote Defendants) the effect is a nullity.  First, the right to investigate a claim allegedly for 180 days (not 90 days as provided in the EEOC's own letter) is a right that belongs to the EEOC, not to the Defendants.  It is not the Defendants, but the EEOC, who accrues the rights to enforce this timeframe.  Given that the EEOC willingly closed its files in late June/July 2013, Defendants do not have the right to assert or enforce the EEOC's procedures against the Plaintiffs.  Finally, to the extent that Defendants have been given a *de facto* opportunity to investigate and settle Plaintiffs' claims, they have had the opportunity to investigate these claims from March and May 2013, respectively, until the date of this Amended Complaint, which equals more than four hundred (400) days (far more than the one-hundred eighty (180) days) to investigate these claims.  (More discussion on timing, notice and opportunity to resolve claims is found *infra)* As such, Defendants' claims with respect to Yurvati and Bartlett's retaliation claims as unripe, untimely, or otherwise flawed must be dismissed.

**C.     Plaintiffs' PHRA Claims Must Stand**

Defendants put forward a variety of claims against the Plaintiffs' PHRA Claims asserted against individual Defendants in their Personal and Professional Capacities.

Defendants have conceded that the Commonwealth has consented to suit with respect to the PHRA; therefore, Plaintiffs will not discuss whether they may bring an action for violations under the PHRA.  Defendants' sole dispute is whether such an action may be brought before this Court.[18]

In *Morasco, supra,* the court specifically maintained aiding and abetting claims against Defendant individuals named, despite a successful Eleventh Amendment challenge under the PHRA against the employer.  *Morasco v. PennDOT, 1998 U.S. Dist. LEXIS at \*12.*

As discussed at length *supra*, Defendants have failed to evince any averments to support that they meet the tests for governmental entities entitled to Eleventh Amendment protection.  Moreover, as a matter of waiver, as discussed *supra*, pursuant to the policies of the Defendants, the Defendants have waived their right to Eleventh Amendment protections.  Therefore, Plaintiffs' PHRA claims must survive.

**1.     All Individual Defendants were Sufficiently Implicated in the Events of the Second Amended Complaint to Survive a 12(b)(6)**

Section 955(e) of the PHRA states that it is an unlawful discriminatory practice "[f]or any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce  the doing of any act declared by this section to be an unlawful discriminatory practice." 43 Pa. Cons. Stat. § 955(e) (emphasis added).  Like the federal anti-discrimination laws, the Pennsylvania Human Relations Act (PHRA), 42 Pa. Cons. Stat. Ann. § 955(a), establishes liability for employer organizations. The PHRA, however, goes further than the federal laws to establish accomplice liability

---

[18] Aside from the *Eleventh Amendment* issue, it properly appears that there should be no dispute that this Court has pendant jurisdiction over Plaintiffs' state claims, given Plaintiffs' federal claims.

for individual employees who aid and abet a § 955(a) violation by their employer. *43 Pa. Cons. Stat. Ann. § 955(e)*; s*ee Dici v. Pennsylvania,* 91 F.3d 542, 552 (3d Cir. 1996); *Santai v. Fred Beans Ford, Inc., et al.,* 2011 U.S. Dist. LEXIS 91128 (August 16, 2011).

A supervisor who fails to take action to prevent discrimination, even when it is his or her own conduct at issue, can be liable under *§ 955(e)*.  *See, e.g., Wasserman v. Potamkin Toyota, Inc., 1998 U.S. Dist. LEXIS 16769, 1998 WL 744090* (E.D. Pa. Oct. 22, 1998); *Kohn v. Lemmon Co., 1998 U.S. Dist. LEXIS 1737, 1998 WL 67540* (E.D. Pa. Feb. 19, 1998); *Frye v. Robinson Alarm Co., 1998 U.S. Dist. LEXIS 1331, 1998 WL 57519* (E.D. Pa. Feb. 11, 1998); *Glickstein v. Neshaminy School Dist., 1997 U.S. Dist. LEXIS 16317, 1997 WL 660636* (E.D. Pa. Oct. 22, 1997); *Wein v. Sun Co. Inc., 936 F. Supp. 282, 283-84 (E.D. Pa. 1996).*

Defendants also argue that the direct conduct of the individual defendants does not qualify as "aiding and abetting;" this is unsupportable.  As this Court stated in *Santai v. Fred Beans Ford, Inc.:*

> [T]he "aiding and abetting" provisions of the PHRA encompass the types of direct discriminatory acts by supervisors …. In our view, a supervisory employee can be found to share the intent and purpose of his or her employer and therefore can be found liable under §955(e) for direct acts of discrimination including the ultimate decision to terminate an employee for an unlawful reason. Numerous other courts in our district have reached the same conclusion. *See, e.g. Bernhard v. Brown & Brown of Lehigh Valley, Inc*., 720 F. Supp. 2d 694, 705-06 (E.D. Pa. 2008); *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C*., 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998); *Wien v. Sun Company Inc.*, Civ. A. No. 95-7646, 1997 U.S. Dist. LEXIS 19220 (E.D. Pa. Nov. 21, 1997); *Glickstein v. Neshaminy School District,* Civ. A. No. 96-6236,

1997 U.S. Dist. LEXIS 16317, *11-13 (E.D. Pa. Oct. 22, 1997). In *Santai,* defendants made a parallel argument to one that Defendants raise here: direct acts by employees should cannot be aiding and abetting.  This Court explicitly rejected the argument, as such exclusion can only apply to lateral, non-supervisory personnel. *Id.*

Each of the individual Defendants was specifically named and identified as playing discrete acts in Second Amended Complaint.  As a start, each of these individuals were cabinet members, as

well as supervisors or higher within the organization.[19]  They also were responsible for terminating or

failing to hire one or more of the Plaintiffs.  For example, Silberman was involved in terminations and

retaliation, in that he told Yurvati not to bother applying for employment following her filing an

EEOC Charge (Compl. ¶¶32, 33, 67, 68). Picus was involved in all of the terminations (by name or by

job title, Executive Director of Human Resources)(Compl. ¶¶32, 33, 81, 149).  Green terminated

Godshall. (Compl. ¶¶32, 95, 149).  Vargas directly and openly discriminated against Stahler for his

disability ( Compl. ¶¶32, 115-124).  Cevallos retaliated openly against Bartlett by excluding her from

Emeriti events).  Fritche refused to hire Bartlett multiple times in retaliation for Bartlett's filing a

claim. (Compl. ¶¶33, 87, 88, 90, 150).  Finally, Welsh conspired with Fritche not to hire Bartlett.

(Compl. ¶150).  All of these acts are deemed adverse, and objectively, are so.  As such, Plaintiffs have

pled sufficient facts by which the individual defendants may be held liable under an aiding and

abetting theory under the PHRA.

These Defendants are also undeniably supervisory above the Plaintiffs (and are not averred

otherwise) and therefore have committed "aiding and abetting."  Thus, this Court should reach the

same conclusion as it did in *Santai*:  the acts of these Defendant employees open them to liability for

aiding and abetting under the PHRA.

### 2.    Individual Defendants Received Prior Notice of the Plaintiffs' Claims, Regardless of Caption Inclusion, and, Therefore, Cannot be Dismissed

Defendants appear to argue these individual Defendants did not receive notice of their

involvement in these cases because they are not named in the EEOC filing.  Defendants further argue

that they did not receive a list of defendants involved in the case, pursuant to 43 P.S. §959.

Defendants first rely on *Hajzus v. Peters Twp. Sch. Dist.,* 2007 U.S. Dist. LEXIS 27166 (W.D.

Pa. Apr. 12, 2007) as their legal basis for a blanket dismissal under §959.  *Hajzus* does not establish

---

[19] See Exh. C.

such a blanket dismissal; moreover, *Hajzus* is inapposite to the case at bar.  The *Hajzus* Court faced the question as to whether Plaintiffs had dually filed a claim with the PHRC, and therefore had cognizable claims. Here, dual filing was performed by Plaintiffs and, therefore, is not at issue.

Defendants further rely on *Glus v. G. C. Murphy Co*., as grounds to dismiss this claim.   629 F.2d 248 (3d Cir. Pa. 1980) *vacated on other grounds sub. nom., Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C Murphy Co.*, 451 U.S. 935, 101 S. Ct. 2013, 68 L. Ed. 2d 321 (1981)) as the standard in determining  whether a court has jurisdiction under Title VII as to unnamed defendants. *Glus v. G. C. Murphy Co.,* 629 F.2d 248, *5-6 (3d Cir. Pa. 1980).   The courts do not require the specificity cited by the Defendants, as there are exceptions to *Glus*.  In *Rice v. Kobialka,* the Court recognized the exception to *Glus*:

> [T]he United States Court of Appeals for the Third Circuit "recognizes an exception when the unnamed party received notice and when there is a shared commonality of interest with the named party." *Schafer*, 903 F.2d at 252 (citing *Glus*, 629 F.2d at 251). *See Owens v. Allegheny Valley Sch*., 869 F. Supp. 2d 653, 659 (W.D. Pa. 2012)  [*12] ("The appeals court has interpreted 'received notice' to mean that the unnamed party had actual notice knowledge of the EEOC complaint.") (*citing, inter alia, Goodman v. Lukens Steel Co*., 777 F.2d 113, 127-28 (3d Cir. 1985)); *see also Christaldi-Smith v. JDJ, Inc.*, 367 F. Supp. 2d 756, 764 (E.D. Pa. 2005) ("[T]o find that [the defendant] received notice, the Court must find that [it] actually knew that a charge with the EEOC had been filed.").

2013 U.S. Dist. LEXIS 95915, 11-12 (W.D. Pa. July 10, 2013). In *Miranda v. Deloitte*, moreover, the court found that where there is an identifiable "substantial identity" between a party identified within an EEOC charge and a defendant in the civil action, notice is deemed provided. *Miranda v. Deloitte*, 922 F. Supp. 2d 210; 2013 U.S. Dist. LEXIS 17629 (2013).  In *Miranda,* the defendants argued that they are immune from suit because plaintiff's EEOC charge did not contain all of their names.  The Court was unpersuaded and stated:

> Simply because all of the defendants were not listed on certain preliminary forms does not lead to the conclusion that the administrative charge was entirely devoid of their names. Indeed, in this case plaintiff Miranda named all of the defendants in her Narrative. Filed as part of the administrative charge, the Narrative is a written factual statement that should have alerted the employer and all parties named in it of the pending proceedings and investigation.

Accordingly, the Court finds that plaintiff Miranda properly exhausted her administrative remedies prior to filing suit in this federal forum.

*Id* at *29-30.

Defendants' arguments here suffer similarly.   Defendants received substantial personally identifiable information on each named defendant.    With respect to providing notice to these Defendants, under *Glus,* the Defendants knew or should have known they were personally implicated. Examples of notice include Yurvati's Merit Principle Appeal Hearing, Plaintiffs' EEOC intake questionnaires, Plaintiffs' EEOC charges, and Plaintiffs' responses to EEOC inquiries, all prior to these judicial filings.[20]

For example, when Yurvati originally filed her Merit Principle Appeal Hearing ("Hearing") (initiated prior to her filing of an EEOC charge), she filed on the basis of organizational discrimination exercised by Kutztown against Yurvati and the other employees furloughed on July 26, 2011.[21] At the hearing, Kutztown produced witnesses, including Defendants Silberman and Picus, as decision-makers to testify about Yuvati's termination and discrimination claims. *Ibid.* Kutztown's witnesses appeared and testified; they identifed Vargas and Cevallos as decision-makers.   Yurvati, in turn,

---

[20] *See* Exh. E.

[21] *See* Exh. C.  The Merit Appeal originally was filed before Yurvati filed her EEOC charge, although her hearing started after she filed her EEOC Charge.  Plaintiffs' Exhibit C further answers to a variety of issues raised in  Defendants' Motion to Dismiss.  All documents included herein were produced from Plaintiff Yurvati's Merit Appeal Hearing; pages are listed in order:

- Pages 1-3:  Defendants' Pre-Hearing Statement lists Defendants' witnesses who were prepared to testify at the hearing, including Defendants Vargas, Silberman, and Picus.
- Pages 4-5:  N.T. 1, Caption Sheet from the Notes of Testimony at the hearing and list of Defendant witnesses called to testify by Defendants.
- Page 6-7:  N.T. 6-7, Opening statement in the Hearing addressing the discriminatory furlough.
- Page 8:  N.T. 12, Silberman's testimony on the systematic process of the terminations/furloughs.
- Page 9-10: N.T. 26-27, Silberman's knowledge of the ages of the employees who were furloughed.
- Pages 11-14: N.T. 67-69, Steward testified he worked with Defendants Silberman and Vargas in Yurvati's termination.
- Page 15:  N.T. 94, Picus admitted Kutztown is subject to the federal and state nondiscrimination laws as well as the "disparate impact" doctrine under the ADEA.
- Page 16-17:  N.T. 97-98, Picus testified that the Severance Policy was backdated to include the Plaintiffs in exchange for a full release of Kutztown and PASSHE.

produced her own witnesses and documents to discuss systematic discrimination by Kutztown management. *Ibid.* Defendant Picus admitted under oath that the federal and state anti-discrimination laws do apply to Kutztown. *Ibid.* Therefore, Defendants Silberman, Picus, Vargas, and Cevallos all knew about the claim, the issues, and their involvements as decision-makers in the case at bar. *Ibid.*

Defendants' claims also must fail because Plaintiffs also identified these individual Defendants in their EEOC documents, questionnaires, and/or charges,[22] including, but not limited to:

- Silberman was referenced in Bartlett's EEOC Intake Questionnaire, Question 7, Yurvati's Retaliation Intake Questionnaire, supplement;

- Picus was named (by name or by job title, Executive Director of Human Resources) in Sitkus' EEOC Intake Questionnaire, Yurvati's EEOC Intake Questionnaire, Question 7, and in Bartlett's Questionnaire supplement;

- Green was named in Godshall's EEOC Intake Questionnaire, Questions 3, 5, 7;

- Vargas was named in Bartlett's EEOC Intake Questionnaire;

- Cevallos was named in Bartlett's EEOC Intake Questionnaire, and Stahler's Charge of Discrimination;

- Fritche was named Bartlett's EEOC Retaliation Complaint; Retaliation Intake Questionnaire, Questions 5, 7; Fritche also was on actual notice (or should have known) that an EEOC Charge was filed against ESU for, in part, her hiring decisions;

- Fritche and Welsh were on notice, via "ESU," was named in Bartlett's original EEOC Intake Questionnaire;

- Welsh was implicated in both Bartlett's original EEOC Intake Questionnaire and in her Retaliation Intake Questionnaire by way of reference to the hiring policies and practices at ESU;

---

[22] *See* Exh. E.

- As president of the university, Welsh also was on actual or constructive notice that an EEOC Charge was filed against ESU for its hiring practices.

Thus, these individual defendants have had actual notice of the claims as of the time of the EEOC investigations.  As for the individual defendants' addresses, moreover, all of the individual Defendants were employed by the Defendant universities at the relevant time; their addresses are deemed (and pled as) the same addresses as the defendant universities.  Defendants also had plenty of opportunity to request additional information if they had questions at any time; they failed to do so.

Defendants' arguments regarding notice to individual employees are without merit. Identifying references to Silberman as "fleeting" or "hardly put any individual on notice" are, again, simply a way of mischaracterizing facts.  (MTD, pg. 22).  Notice is like pregnancy: they either had it or they did not.  Here, the individual Defendants had notice through a variety of sources.

With respect to an opportunity to remedy the situation without litigation, Defendants likewise had plenty of time and opportunity and have never availed themselves of it.   Yurvati's claim for retaliation was filed in March 7, 2013; the Complaint was filed on July 24, 2013. Defendants had one hundred thirty-nine (139) days to take the opportunity to remedy the situation, which was more than enough time to reach out and try to fix the situation.  Bartlett's retaliation claim was filed on May 3, 2013, giving Defendants eighty-two (82) days to seek to remedy the situation.  In January 2012, Yurvati sought to remedy her claim with Defendants at her Hearing; Defendants rejected the attempt without a counteroffer.  Thereafter, Plaintiffs again reached out to try to remedy these claims, to no avail.   In response, Defendants proffered only their illegal policy, as referenced in Plaintiffs' complaint.[23] Thus, multiple opportunities to resolve have been extended by Plaintiffs to Defendants; Defendants have rejected these efforts.

---

[23] *See* Exhs. E and G.

Finally, Defendants also appear complain that more decision-makers were not sued in the process of this litigation. [24] If Defendants wish to join additional parties, they are free to seek to do so. However, Defendants' argument that dismissal is proper because Plaintiffs named direct supervisors, human resources, and principals of the universities as individual parties lacks merit.   If it is Defendants' position that they cannot be sued under the PHRA, moreover, their position that *more* individuals should be named is not logical.

Defendants' reliance on *Meyers v. California Univ. of Pa.* is also inapposite to the case at bar. Evaluation of *Glus* requires a fact-specific analysis.   2013 U.S. Dist. LEXIS 29828.   The Western District Court relied on the facts averred by Meyers, and the court found the plaintiff's assertions lacked specificity and nexus. Specifically, the court found "these references only note that all Employee Defendants planned 'to get rid of' Plaintiff after he would not allow them to violate the applicable search committee procedures." *Id. at *35.*   Here, Plaintiffs have averred highly specific facts which are close in time, are statistically significant, show pretext, demonstrate overt retaliation, and indicate an ongoing policy to avoid liability.  These averments include:

Averments showing discrimination nexus regarding intent and timing:  Kutztown announced its intent to reduce retirement costs (e.g. it presented an organizational powerpoint called the "Six Major Factors" identifying retirement costs as one of the most draining expenses of the university. In a meeting for the Business Office on reducing costs, Ken Long, a then-member of Kutztown management, said "we need people to die to ease the retirement burden.") (Compl. ¶24).  Immediately thereafter, Kutztown and PASSHE furloughed eleven employees (and thereafter added a twelfth, Dr. Stahler).   (Compl. ¶31).  ALL twelve employees who were furloughed by Kutztown and PASSHE had nothing in common except they ALL were over the age of fifty (50) and they ALL were close to benchmarks in retirement, but NONE were vested.   (Compl. ¶33). ZERO of these employees furloughed were under the age of fifty (50). (Compl. ¶32).  All of these employees had great reviews,

---

[24]  MTD pg. 22.

and, in some instances, were recognized as Emeriti. (Compl.¶37).  All, or nearly all, of Plaintiffs' jobs and job duties were assumed by substantially younger employees under the age of 40. (Compl. ¶36). All of the furloughs were organized and executed the same way; this was a planned university-wide action, and each supervisor played an identical role.  (Compl. ¶¶42-119).

Averments showing Defendants' claims of economic stress as pretext:  At each furlough, the Plaintiffs were told that their furloughs were predicated on economic losses and were *not* based on cause.  (Compl. ¶34).  At the same time, Kutztown was spending money on a variety of other endeavors, including forestry projects, hiring new employees, and consultants, and other peripheral expenditures. (Compl. ¶25).

Averments showing a clear nexus between discrimination and retaliation and a failure to be rehired:  At each furlough, each Plaintiff was told that his or her furlough were predicated on economic losses and were *not* for cause.  (Compl. ¶31).  When questioning the hiring of other employees, Yurvati was told "we're not in a hiring freeze."   (Compl. ¶25). Despite being terminated not-for-cause, having great reviews, and, in some instances, being recognized as Emeriti, these employees were not offered (or were rejected from) reemployment by Kutztown.  (Compl. ¶¶31, 37). Defendants' refusal to rehire Plaintiffs also violates their legal obligations under the Pennsylvania Civil Service Act, which requires the University to return furloughed employees to employment as soon as possible.  (Compl. ¶27).

Averments showing the nexus between ESU and a retaliatory failure to hire: The connection between Theresa Fritche and Kutztown exceeds a co-subordinate position through the PASSHE system. Fritche used to work at Kutztown and retained her friendships with the Human Resource Department at Kutztown.  (Compl. ¶82).  The timing of Bartlett's application for employment with ESU and rejection is also dispositive:  Bartlett applied for her first position in August 2011, before she filed her EEOC Charge.  Months passed, but immediately after she filed her EEOC Charge and word reached ESU, she was rejected for the job by ESU. (Compl. ¶¶77-81). Bartlett applied for another job

with ESU for which she was qualified in November 2012, which was after the EEOC Charge was filed; this time, immediately, she was immediately rejected.  *Id.*

Direct quotes showing a nexus of retaliation due to the filing of EEOC charges:  Silberman told Yurvati not to bother trying to apply for reemployment with Kutztown because she filed complaints against KU.  (Compl. ¶61).  When Yurvati applied for a position after Silberman made his comment, she was rejected, despite her excellent qualifications and the Civil Service requirements.  (Compl. ¶62).  Although an Emeriti, Bartlett has not been invited to Emeriti university functions.  Bartlett asked Cevallos why she was not invited to Emeriti events.  She was told by Cevallos' staffperson that Cevallos stopped all of her invites because she filed an EEOC Complaint.  (Compl. ¶84).

Averments showing Defendants' ongoing policy to avoid liability:  Months after the furlough, in October 2011, PASSHE enacted a policy to offer severance to terminated employees in exchange for a full waiver of their rights.  (Compl. ¶38).  PASSHE and Kutztown immediately backdated the policy to include the furloughed employees from July 2011, with the intent to cause Plaintiffs to waive their rights prior to realizing that they had a claim of discrimination. *Id.*[25] PASSHE's policy is still in effect.

As such, the nexus between the adverse acts and the discrimination and/or retaliation is properly and clearly averred in Plaintiffs' complaint, and a jury could find reasonable nexus between these events and illegal action by the Defendants.  Therefore, Plaintiffs' averments establish a *prima facie* case of discrimination and retaliation. As such, Defendants' assertion that Plaintiffs' PHRA claims must be dismissed is without basis, and Defendants' motion to dismiss thereunder must be denied.

---

[25] *See also* Exh. C.

### 3. Plaintiffs' Aiding and Abetting Claims Have an Underlying PHRA Claim against the Employers, and, Therefore, Survive Dismissal

Defendants claim that Plaintiffs' claims for aiding and abetting cannot stand without an underlying claim against the employer because they are entitled to Eleventh Amendment immunity. First and foremost, Defendants are not entitled to Eleventh Amendment immunity as discussed *supra*. However, even if the Eleventh Amendment argument were to survive, Defendants' claim of dismissal as to "aiding and abetting" must fail.

Defendants argue that the aiding and abetting claim, here, cannot be premised on an absent underlying PHRC complaint. This is a mischaracterization; Defendants concede that there *is* a PHRA complaint, even in light of the Eleventh Amendment, but, they claim, it must be brought in a state court. Therefore, there *is* an underlying PHRC complaint, and, therefore, there is no basis to dismiss the aiding and abetting claim. Thus, this claim is not subject to dismissal.

### D. Plaintiffs' Section 1983 Actions against the Defendants Should Prevail

Defendants assert that Plaintiffs' Section 1983 claims for violations of *Fourteenth Amendment* due process and protection rights must be dismissed under the *Will* Doctrine. This assertion must be struck. Section 1983 provides that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured, . . .

42 U.S.C. §1983. "To establish liability under 42 U.S.C. §1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005) (citing Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998)).* It is well-settled that private actors may be regarded as acting under color of state law pursuant to Section 1983.

*See, e.g., Donnell v. Corr. Health Servs., Inc., 405 F. App'x 617, 622 n.5 (3d Cir. 2010)*. Actions "under color of law" are considered the equivalent of "state action" under the *Fourteenth Amendment*. *Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005)*.  42 U.S.C.S. §1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties. Where a suit is brought against a public officer in his official capacity, the suit is treated as if the suit were brought against the governmental entity of which he is an officer. *Brandon v. Holt*, 469 U.S. 464, 471-72, 83 L. Ed. 2d 878, 105 S. Ct. 873 (1985).  State agencies and state officials acting in their official capacities are not "persons" within the meaning of Section 1983. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71 (1989).

Here, PASSHE, Kutztown and ESU are only shielded from Sections 1983 under *Will* once they establish they are legally state actors under the *Eleventh Amendment* by showing they have met the tests thereunder.  They have not and cannot; therefore, the *Will* Doctrine is inapplicable to the case at bar.  Without such organizational protection, moreover, the employees of Kutztown and ESU, in their official capacity, can derive no benefit under *Will*.  As Defendants do not dispute that employees may be held liable under Section 1983 in their individual capacities, we will not extend the length of this brief further for discussion.

###     E.      Plaintiffs' Section 1983 was Pled with Requisite Involvement, Clarity, and Redundancy

Defendants demand that Plaintiffs' Section 1983 claims against the individual employees should be struck because these claims allegedly are predicated on *respondeat superior* liability. Defendants' argument is inaccurate as Plaintiffs' averments show direct liability, and thus, Defendants' motion based thereon must fail.

*Respondeat superior* is a legal doctrine that holds an employer or principal legally responsible for the wrongful acts of an employee or agent, if such acts occur within the scope of the employment

or agency.  *Wex Legal Dictionary.*   For the purposes of Section 1983 claims, *"*a[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing."  *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).   A defendant's personal involvement in a constitutional violation may be established via allegations of "personal direction," "actual knowledge and acquiescence," or "direct discrimination." *Id; see also Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990).   A valid claim under Section 1983 must adequately plead three elements: (1) defendants acted under color of law; (2) defendants violated plaintiff's federal constitutional or statutory rights and (3) that violation caused injury to plaintiff.  *Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005).*

Here, Defendants do not dispute whether they acted under color of state law or whether injury to the Plaintiffs.   Defendants dispute only whether Plaintiffs have sufficiently pled intentional actions by the individual Defendants, defined specifically as: "personal direction," "actual knowledge and acquiescence," or "direct discrimination."   As discussed repeatedly *supra*, Plaintiffs have averred individual and direct involvement by each of these actors:

- Silberman terminated Bartlett, testified against Yurvati at her Hearing, and took direct action against Yurvati by seeking to prevent her reapplication for employment;

- Green took direct action against Godshall by firing him;

- Picus was directly involved with the July 26, 2011, furlough.

- Vargas took direct and repeated action against Stahler, including demotion, termination and failure to rehire; he also was one of the primary decision-makers in the July 26, 2011, furlough; and

- Cevallos took direct action as one of the primary decision-makers; he also took direct retaliatory action against Bartlett with respect to her Emeriti status;

- Fritche acted directly against Bartlett by refusing to hire Bartlett twice, although Bartlett was fully qualified for multiple positions; and

- Welsh conspired and directed Fritche to reject Bartlett's application for employment.

Defendants argue that these averments are vague or conclusory; this must fail. Plaintiffs' averments refer to concrete, specific events and include specific references to the individual Defendants.

### F.      Bartlett and Yurvati Have Plead a *Prima Facie* Title VII Claims

Defendants next argue that Plaintiffs Bartlett and Yurvati have failed to plead *prima facie* Title VII claims. This position is without merit and must be dismissed.

The U.S. Supreme Court has held that a plaintiff in an employment discrimination action is not required to plead every element of her prima facie case to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). A plaintiff need only allege material facts that, "in addition to inferences drawn from those [factual] allegations, provide a basis for recovery." *Menkowitz v. Pottstown Mem'l Med. Ctr.,* 154 F.3d 113, 124 (3d Cir. 1998). Accordingly, "a court should not grant a motion to dismiss 'unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir. 1997). The defendant bears the burden to demonstrate that the complaint fails to state a claim. *Gould Electronics Inc. v. U.S.,* 220 F.3d 169, 178 (3d Cir. 2000).

Title VII was enacted to prohibit employers from discriminating against employees with respect to compensation, terms, conditions, or privileges of employment. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). "In a 'sex-plus' discrimination case, the Title VII plaintiff does not allege that an employer discriminated against a protected class as a whole, but rather that the employer disparately treated a subclass within the protected class." *Arnett v. Aspin,* 846 F. Supp. 1234, 1238 (E.D.Pa.1994). The sex-plus theory was

38

first recognized by the Supreme Court in *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 27 L. Ed. 2d 613, 91 S. Ct. 496 (1971).   Because [ ] an amendment to Title VII which would have added the word "solely" to modify "sex" was defeated on the floor of the House of Representatives, 110 Cong. Rec. 2728 (1964), courts have found that the inclusion of "sex plus" discrimination within the proscription of Title VII has "legitimate legislative underpinning." *Arnet,* 846 F. Supp. at *12; *see also Jefferies v. Harris Cty. Community Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980). To state a claim for discrimination under Title VII and the PHRA, including those under a sex plus claim, a plaintiff must show that: (1) she was a member of the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action despite being qualified; and (4) the employer filled the position with an individual with qualifications similar to the plaintiff who was not a member of the protected class. *Scheidemantle v. Slippery Rock Univ.,* 470 F.3d 535, 539 (3d Cir. 2006).

In the case at bar, Plaintiffs Bartlett and Yurvati have pled *prima facie* cases of sex plus discrimination.[26] Here, gender alone did not motivated the action; these cases were motivated by both age and gender.

Both Yurvati and Bartlett are female, and therefore satisfy the first element.  Both Yurvati and Bartlett were qualified to do their jobs, the second element. Both Yurvati and Bartlett were furloughed despite their qualifications as well as not rehired, and therefore fulfilled the third element.  Finally, as to the replacement of these two Plaintiffs, Yurvati's job duties were given to Joe Mumbauer and Tony Rehrig (both male and under forty years old). (Compl. ¶36).   Bartlett's job duties were given to Matthew Delaney and Amanda Kerns (one male, but both under forty years old). *Id.*   As such, Plaintiffs' Title VII claims are plausible, meet a p*rima facie* case under the law, and a jury could reasonably conclude that gender discrimination did occur.  Pre-discovery, it is premature to dismiss

---

[26]   Only Yurvati and Bartlett are pleading sex discrimination, therefore, Plaintiffs will not answer to Defendants' arguments regarding the other Plaintiffs.

this cause of action.   Therefore, Defendants' motion to dismiss Plaintiffs' Title VII claims must be denied.

### G.    Plaintiffs' Retaliation Claims Against ESU, Welsh, and Fritche Do Not Lack Basis to State a Claim

In addition to their other objections based on Bartlett's retaliation complaint, Defendants further argue that Plaintiff Bartlett's retaliation claim against ESU and its employees must fail because they had to be aware of the underlying EEOC Charge in order to retaliate.   Plaintiffs agree. It is Plaintiffs' position that ESU, in fact, did know of the EEOC Charge filed against PASSHE and Kutztown.  First, ESU was identified by Bartlett in her original EEOC Intake Questionnaire; Bartlett took issue with ESU's hiring practices and the delay in her job application.[27] Second, Fritche and Kutztown remain closely linked.  As discussed and averred, Fritche used to work for Kutztown and the connections between the two have remained constant.  Third, it defies credibility to assert that ESU, Fritche, or Welsh did *not* contact Kutztown or PASSHE for a recommendation or to discuss their inclusion in the Bartlett EEOC Claim.  Defendants also argue that Welsh did not become the president of ESU until after Bartlett's first application; this is both irrelevant and a factual argument, and therefore, again, creates an issue of fact.  As such, a jury could easily conclude that ESU not only knew about their inclusion in the original charge, and that Welsh and Fritche did retaliate for Bartlett's claim as pled.

### H.    The Claims Against PASSHE Must Proceed

Defendants introduce a slew of legislative to argue that PASSHE cannot be involved with hiring.  First, Defendants' citations do not define who, what, how, and when they become involved with the hiring and employment of individual employees at the individual universities.   To the contrary, PASSHE has a page dedicated to the hiring of employees at the various universities,

---

[27] *See* Exh.E.

including Kutztown and ESU, called its Careers Opportunity Page. *See e.g.* http://www.passhe.edu/inside/employment/Pages/Employment.aspx.[28]   Whether or not PASSHE is directly responsible for the hiring of individual employees is also irrelevant.  If PASSHE advised the universities, formally or informally, not to hire Bartlett or Yurvati, such acts are also adverse. Defendants' assertions, moreover, fail to address the other acts of discrimination and retaliation alleged against PASSHE, such as the passing of a severance policy designed to deprive the plaintiffs of their rights of employment or the improper refusal to reinstate an employee.[29]

## I.      Claims for Punitive Damages are Appropriate and Must Not be Dismissed

Defendants next argue that punitive damages are not available to the Plaintiffs.  Defendants argue that no punitive damages can be permitted under Section 1983 because of the Eleventh Amendment.  Defendants also argue that punitive damages are unavailable under the PHRA; Plaintiffs agree.  Defendants then concede that Title VII punitive damages are available; they also do not dispute the issue of punitive damages as available under the ADA and ADEA.  Compensatory and punitive damages are allowed under the ADA.  42 U.S.C. § 1981a(a)(2).  Liquidated damages are available under the ADEA.  *Morasco, supra.*   As stated *supra*, Defendants are not entitled to Eleventh Amendment protections, and therefore Section 1983 punitive damages are available to Plaintitifs.  As such, all claims for punitive damages must remain available, except under the PHRA.

## J.      Plaintiffs' Claims for Declaratory and Injunctive Relief Are Appropriate

Defendants assert that the harm caused to the Plaintiffs occurred only in the past and therefore are not appropriate for claims of declaratory or injunctive relief.  This is yet another factual mischaracterization by the Defendants.

---

[28] *See* Exh. B.
[29] As such, it appears Defendants concede these acts fall within the powers of PASSHE. *See* Exh. G.

Defendants argue that under *Corliss v. O'Brien,* 2006 WL 2686644, *3 (3d Cir. 2006) and *City of Los Angeles v. Lyons,* 461 U.S. 95 (1983), Plaintiffs are be entitled to injunctive and declaratory relief for past acts.  Plaintiffs agree.  Defendants apparently perceive that the termination ended the discrimination suffered by these former employees; this could not be further from the truth.  The discrimination continues.   Although terminated without cause, these plaintiffs, as unemployed individuals, cannot seem to get a job with Kutztown, PASSHE, or other PASSHE universities. It also appears they cannot get a positive recommendation from Kutztown (an item sought from Kutztown as part of resolution), through no fault of their own.  Thus, the harm to Plaintiffs continues to accrue with every application for employment they attempt to make.

Plaintiffs are not the only ones at danger, moreover; the policy on severance is still in force and it continues to threaten the ability of Kutztown and other PASSHE employees to exercise their rights without illegal influence.  As such, Plaintiffs appropriately are seeking equitable redress for future acts through declaratory and injunctive relief. Therefore, Defendants' claims that the equitable relief is premised on past acts and that Plaintiffs lack standing is incorrect.  As such, Defendants argument must be denied.

### K.     Defendants Claims for Change of Venue and Severance are Inappropriate and Must be Denied

Defendants dispute jurisdiction and venue in this case.  They argue that because PASSHE is in Harrisburg and East Stroudsburg University is located in East Stroudsburg, venue in this case is improper.   With Plaintiffs' other additional averments, Plaintiffs supplemented their amended complaint by stating:

18.     […] The majority of the acts occurred within the jurisdiction of the Eastern District, and most of the parties work or live therein.

Defendants assert this "insufficiently" addressed the issue of venue and their Motion to Sever; Plaintiffs disagree. As pled in every complaint, the residences of all but one Plaintiff[30] and the location of six out of ten Defendants (eleven parties of the sixteen named) are within the venue of this Court, and all, or nearly all, the acts took place within the jurisdiction and venue of this Court. Thus, venue is properly vested.

Defendants also suggest that the case be severed. To the extent that expeditious resolution of this case is a top priority, dividing up the litigation in different courts not only runs a risk of inconsistency and redundancy, but also will delay resolution of the case.

Defendants also claim their motion to sever and change venue has not been opposed. This is meritless. Defendants cannot segregate their motions on venue and severance from their Motion to Dismiss: if this Court finds that Plaintiffs' federal claims are not subject to dismissal, then our federal courts have jurisdiction over the original claims and pendant jurisdiction over the state claims. Moreover, as Plaintiffs repeatedly have filed amended complaints in the instant Court in response to Defendants' Motion to Dismiss, Sever, and Change Venue, Plaintiffs' amended filings (1) terminate Defendants' Motion; and (2) vest jurisdiction before this Honorable Court and therefore oppose Defendants' Motion.

As Plaintiffs have demonstrated reasons why Defendants are not entitled to Eleventh Amendment immunity and/or have waived their rights to be sued, as well as argued substantive bases to maintain Plaintiffs' federal causes of action in this jurisdiction, this Court should deny Defendants' Motion to Sever and Change Venue.

---

[30] Plaintiff Grant moved completely outside Pennsylvania following start of this case; he resides in Florida. Thus, jurisdiction anywhere within Pennsylvania, for him, is a moot issue.

## V.      CONCLUSION

WHEREFORE, for the reasons provided above, Defendants' Motion to Dismiss, Sever, and Change Venue all should be denied with prejudice, and Plaintiffs' Motion in Opposition should be GRANTED.

Respectfully Submitted,

Date:  April 18, 2014                      By:   _____

Deirdre Kamber Todd
ID No. 92613
THE KAMBER LAW GROUP, P.C.
1275 Glenlivet Drive, Suite 100
Allentown, PA 18106
(484)  224-3059
dkambertodd@kamberlawgroup.com
*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAMILLE BARTLETT, BONNIE YURVATI,    :
MICHAEL SITKUS, JACK GRANT, GLENN    :
GODSHALL, and WILLIAM STAHLER,    :
        *Plaintiffs*,    :   **NO. 5:13-cv-04331-CDJ**
    :
    vs.    :
    :
KUTZTOWN UNIVERSITY, PENNSYLVANIA :
STATE SYSTEM OF HIGHER EDUCATION   :
EAST STROUDSBURG UNIVERSITY, and the  :
following individuals in their personal and   :   **JURY TRIAL DEMANDED**
professional capacities: JAVIER CEVALLOS, :
CARLOS VARGAS ABURTO, GERALD    :
SILBERMAN, SHARON PICUS, JOHN GREEN :
THERESA FRITSCHE, and, MARCIA G. WELSH :
        *Defendants*.    :

### <u>CERTIFICATE OF SERVICE</u>

I, Deirdre Kamber Todd, hereby certify that plaintiffs' Motion in Opposition to Defendants'

Motion to Dismiss, Sever and/or Change Venue has been filed electronically on April 18,

2014, and is available for viewing and downloading from the Court's Electronic Case

Filing ("ECF") System. Defendants' counsel, *Office of the Attorney  General*, is registered with

the court's electronic email notice list for service, and therefore has been  served in accordance

with the Rules of Court.


Date:  <u>April 18, 2014</u>      By:   _____

                      Deirdre Kamber Todd  ID No. 92613
                      THE KAMBER LAW GROUP, P.C.
                      1275 Glenlivet Drive, Suite 100
                      Allentown, PA 18106
                      *Attorney for Plaintiffs*