## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CAMILLE BARTLETT; BONNIE YURVATI;  :
MICHAEL SITKUS; JACK GRANT; GLENN
GODSHALL; and WILLIAM STAHLER
          Plaintiffs,           :

       v.

                       :

KUTZTOWN UNIVERSITY;
EAST  STROUDSBURG UNIVERSITY;       CIVIL ACTION
JAVIER CEVALLOS, in his personal and    :    NO. 13-4331
professional capacities; CARLOS VARGAS
ABURTO, in his personal and professional
capacities; GERALD SILBERMAN, in his    :
personal and professional capacities; SHARON
PICUS, in her personal and professional
capacities; JOHN GREEN, in his personal and  :
professional capacities; THERESA FRITSCHE,
in her personal and professional capacities;
MARCIA G WELSH, in her personal and    :
professional capacities; and PENNSYLVANIA
STATE SYSTEM OF HIGHER EDUCATION
          Defendants.        :

## MEMORANDUM

Jones, II    J.                          February 23, 2015

### I.    Introduction

Currently pending before this Court is Defendants Kutztown University ("KU"),

Pennsylvania State System of Higher Education ("PASSHE"), East Stroudsburg University

("ESU"), Javier Cevallos, Carlos Vargas, Gerald Silberman, Sharon Picus, John Green, Theresa

Fritsche, and Marcia Welsh's Motion to Dismiss, or alternatively, for Severance and Change of

Venue. Said Motion seeks dismissal of various counts of Plaintiffs' Second Amended Complaint

alleging age, gender and disability discrimination, retaliation, violations of equal protection, and aiding and abetting discrimination.  After consideration of Defendants' Motion and Plaintiffs' Response thereto, said Motion shall be granted in part and denied in part.

## II.     Background

Plaintiffs were vested employees of Kutztown University.  This case arises as the result of their termination from employment, which Plaintiffs claim was motivated by discrimination based on age, gender and disability, and was in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* (Counts I-II), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (Counts III-IV), Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* (Count V), and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.* (Counts IX-XIII).  Plaintiffs further allege retaliation under federal and state law (Counts II, IV, XII) and claim they were discriminatorily denied due process rights, in violation of 42 U.S.C. § 1983 (Counts VI-VIII).

Plaintiffs consist of four males and two females: Camille Bartlett ("Bartlett"), Glenn Godshall ("Godshall"), Jack Grant ("Grant"), Michael Sitkus ("Sitkus"), Bonnie Yurvati ("Yurvati"), and Dr. William Stahler ("Stahler").  All Plaintiffs were over the age of fifty at the time of their termination from employment.  (Second Am. Compl. ¶ 32.)  With the exception of Stahler, who was fired on April 25, 2012, Plaintiffs' employment was terminated on or about July 26, 2011.  (Second Am. Compl.  ¶¶ 47, 65, 72, 88, 97, 117.)  KU informed Plaintiffs that their terminations were financially motivated and unrelated to their performance.  (Second Am. Compl. ¶¶ 34, 47, 65, 72, 88, 97, 117.)  While KU maintains that it has experienced ongoing economic distress (Second Am. Compl. ¶ 23), Plaintiffs allege Defendants "have used the pretext

of an economic shortfall to actively terminate older (and a subset of older female) employees close to benchmarks in their retirements."  (Second Am. Compl. ¶ 24.)

Plaintiff Yurvati, a female and former Senior Systems Analyst ("Analyst"), contends KU discriminated against her based on age and gender by terminating her employment and reassigning her job duties to two males, both under the age of thirty-five (35).  (Second Am. Compl. ¶¶ 45, 49.)  On December 28, 2011, Yurvati filed a charge with the Equal Employment Opportunity Commission ("EEOC") against KU and PASSHE, alleging age and gender discrimination.  (Defs.' Mot. Mem. Ex. D1.)  Yurvati also appealed her layoff by filing a "Merit Principle Appeal" with PASSHE. (Pls.' Opp'n Mem. Ex. C.) PASSHE conducted a hearing regarding the Merit Principle Appeal on January 12, 2012.  (Second Am. Compl. ¶¶ 52-54.) Yurvati claims she was denied due process at this hearing because PASSHE: (1) refused to sequester witnesses; (2) admitted evidence that was "incomplete"; (3) refused to admit evidence of job postings listed by KU following Yurvati's termination; (4) refused to allow a witness to testify concerning the alleged discrimination at KU; and (5) ignored Yurvati's exceptions to their decision, which allegedly included errors and misstatements. (Second Am. Compl. ¶¶ 57-58.) Yurvati further claims the above events occurred in retaliation for filing an EEOC charge. (Second Am. Compl. ¶ 57.)  Following the PASSHE hearing, Yurvati spoke with Defendant Gerald Silberman ("Silberman"), Vice President of Administration and Finance for KU, who allegedly told Yurvati not to apply for reemployment with KU because she had filed complaints against the university.  (Second Am. Compl. ¶ 61.)  Nonetheless, Yurvati applied for a position with KU on January 18, 2013.  (Second Am. Compl. ¶ 62.)  On February 21, 2013, Yurvati's application was rejected. (*Id.*)

Plaintiff Sitkus, a 52 year-old male and former Analyst in the same department as Yurvati, alleges the following facts in support of his age discrimination and retaliation claims:

> (a) Sitkus was one of six employees employed in the department, (b) Sitkus was one of three employees over the age of 50 who were terminated; (c) both employees under the age of 35 were retained; and (d) the only remaining Analyst over the age of 50 had already fully vested in retirement and had already announced his intent to retire.

(Second Am. Compl. ¶ 67.)

Sitkus alleges KU treated him less favorably than employees younger than forty and retaliated against him for filing an EEOC charge by refusing to consider him for rehire. (Second Am. Compl. ¶ 69.)

Plaintiff Bartlett is a female who was over the age of fifty at the time she was terminated from her position as Director of Administrative Services and Dining Services for KU in July 2011.  (Second Am. Compl. ¶¶ 70-71.)  The job duties of Plaintiff Bartlett have since been assumed by individuals under the age of forty.  (Second Am. Compl. ¶ 75.)  On December 15, 2011, Bartlett was granted Emeriti status by the KU Council of Trustees for her exceptional service.  (Second Am. Compl. ¶ 76.)  Bartlett alleges that following her termination, she applied for a position for which she was qualified at ESU.  (Second Am. Compl. ¶ 77.)  Several months later, Bartlett filed an EEOC charge against KU alleging age and gender discrimination.  (Defs.' Mot. Ex. D1.)  On March 19, 2012, Defendant Theresa Fritsche ("Fritsche"), Director of Human Resources at ESU, notified Bartlett that she was not selected for the ESU position.  (Second Am. Compl. ¶ 79.) Bartlett further claims that in November, 2012, she again applied for a position at ESU for which she was qualified, and was again rejected.  (Second Am. Compl. ¶ 80.)  As such, Bartlett alleges ESU conspired with KU and PASSHE to not hire her in retaliation for filing an EEOC charge.  (Second Am. Compl. ¶ 81.) In support of this claim, Bartlett alleges Fritsche

maintained friendships and contacts with KU (where Fritsche used to work in Human Resources) and conspired with KU to not hire Bartlett.  (Second Am. Compl. ¶ 82.)  Lastly, Bartlett alleges that an employee of Defendant Carlos Vargas ("Vargas"), Provost and Vice President of Academic and Student Affairs at KU, told her the reason she had not been invited to Emeriti university functions was because she filed an EEOC charge.  (Second Am. Compl. ¶ 84.)

Plaintiff Godshall, a male and former Director of Alumni Relations at KU, was terminated from his employment on July 26, 2011 and was replaced by two substantially younger individuals.  (Second Am. Compl. ¶ 89.)  On September 22, 2011, Godshall was granted Emeriti status by the KU Board of Trustees for his service to KU.  (Second Am. Compl. ¶ 91.) Godshall filed an EEOC charge against KU on December 28, 2011 and claims that since filing his EEOC charge, KU has withheld some Emeriti-related "invitations and benefits" in retaliation. (Second Am. Compl. ¶ 92.) Therefore, Godshall alleges KU and PASSHE treated him less favorably than employees under the age of forty and retaliated against him for filing a discrimination charge.  (Second Am. Compl. ¶ 94.)

Plaintiff Grant, a 65 year-old male and former Internal Operations and Data Manager, alleges he was similarly replaced by a substantially younger employee.  (Second Am. Compl. ¶¶ 95, 99.)  Along with Plaintiffs Yurvati, Bartlett, Sitkus, and Godshall, Grant filed an EEOC charge on December 28, 2011.  (Defs.' Mot. Ex. D1.)  Grant claims he was treated less favorably than employees under the age of forty and retaliated against for filing his EEOC charge.  (Second Am. Compl. ¶ 101.)

Plaintiff Stahler, a 65 year-old male and former Director of Admissions at KU, was terminated in April, 2012. (Second Am. Compl. ¶ 117.)  Two years prior, in April 2010, Stahler suffered a heart attack.  (Second Am. Compl. ¶ 107.)  Approximately one month later, Defendant

Vargas directed Stahler to: return to work without medical clearance; perform a presentation; and, visit a high school in Philadelphia. (Second Am. Compl. ¶ 108.)  Despite his medical condition and not being cleared to return to work, Stahler complied with Vargas' directives.  (*Id.*)  In February 2011, Vargas notified Stahler that he would be replaced as Director of Admissions as soon as Vargas could find a desirable candidate. (Second Am. Compl. ¶ 109.) Vargas did offer Stahler a demotion to a position that did not yet exist and informed him that if he elected to decline the offer, he would be out of work in three weeks.  (Second Am. Compl. ¶ 109.)  However, KU was unable to find a replacement that month and ultimately offered to allow Stahler to remain in his position until Fall 2011.  (Second Am. Compl. ¶ 110.)  Two months later, Stahler was offered a position as Associate Dean of KU's College of Visual and Performing Arts.  (Second Am. Compl. ¶ 111.)  Soon after, Stahler was offered another position as Director of Admissions at a different college, which he rejected on account of the Associate Dean offer.  (Second Am. Compl. ¶ 113.)  In July, 2011, Stahler assumed the position of Interim Dean.  (Second Am. Compl. ¶ 115.)  On April 25, 2012, Vargas terminated Stahler and denied him a demotion, citing financial constraints.  (Second Am. Compl. ¶¶ 116-117.)  Following his termination, Stahler was replaced by a younger female.  (Second Am. Compl. ¶ 118.)  Stahler applied for positions for which he qualified at four other PASSHE schools but was not selected for any of them. (Second Am. Compl. ¶ 117.)  Stahler claims Defendants treated him less favorably than non-disabled employees and employees younger than forty, and retaliated against him because he filed an EEOC charge.  (Second Am. Compl. ¶ 119.)

Defendants bring the instant Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  Defendants alternatively move

to transfer a portion of this action pursuant to 28 U.S.C. § 1404(a), arguing that venue in the Middle District of Pennsylvania is appropriate. (Defs.' Mot. Mem. 31-33.)

### III.    Standards of Review

#### A.    Rule 12(b)(1)

Rule 12(b)(1) permits courts to dismiss claims for want of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  The Third Circuit has recognized that "'the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction.'" *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Thus, Rule 12(b)(1) serves as the proper means by which to challenge the propriety of federal jurisdiction by reason of the Eleventh Amendment. *Id.*

A challenge to subject matter jurisdiction under Rule 12(b)(1) may take two forms: a facial attack or a factual challenge.   *U.S. ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Gould Elecs., Inc. v. U.S.*, 220 F.3d 169, 178 (3d Cir. 2000)). A Rule 12(b)(1) motion asserting sovereign immunity under the Eleventh Amendment is "properly treated as a facial challenge." *Sixth Angel Shepherd Rescue Inc. v. West*, 790 F. Supp. 2d 339, 349 (E.D. Pa. 2011). When considering a facial challenge, the court "must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan. Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Moreover, the court "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould*, 220 F.3d at 176 (internal citations omitted).

### B. Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id. accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).[1]

## IV.   Discussion

### A. Eleventh Amendment and Sovereign Immunity

Pursuant to the Eleventh Amendment of the United States Constitution, a "state [is] . . . immune from liability for damages in a suit brought in federal court by one of its own citizens."

---

[1] This Court notes that Plaintiffs' Second Amended Complaint does not contain the exhibits to which they refer. Plaintiffs do in fact attach said exhibits to their Opposition to Defendants' Motion to Dismiss. Defendants similarly attach several of these administrative documents to their Motion. Because the exhibits provided by both sides are matters of public record and/or are "undisputedly authentic documents" upon which Plaintiffs' claims are based, this Court may consider same in its 12(b)(6) analysis. *Hildebrand v. Allegheny County*, 757 F.3d 99, 112 n.2 (3d Cir. Pa. 2014) (citations omitted), *pet'n cert.* No. 14-363 (Sept. 25, 2014).

*Dellmuth v. Muth*, 491 U.S. 223, 229 n.2 (1989). However, there are two exceptions to this

immunity. *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002). First, Congress may

abrogate a state's sovereign immunity "when it both unequivocally intends to do so and 'act[s]

pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531

U.S. 356, 363 (2001) (internal quotation omitted). Second, a state may waive its sovereign

immunity by consenting to suit. *Koslow*, 302 F.3d at 168 (citation omitted). Sovereign immunity

has been extended to cover state "agents" and "instrumentalities." *United States EEOC v. Court

of Common Pleas*, Civ. No. 14-899, 2014 U.S. Dist. LEXIS 146552, at *9 (W.D. Pa. Oct. 15,

2014) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). The state university

system, PASSHE, is one of these instrumentalities entitled to state sovereign immunity. *Skehan

v. State Sys. of Higher Educ.*, 815 F.2d 244, 249 (3d Cir. 1987); *see also* 24 P.S. 20-2002-A(a)

("[PASSHE] is . . . a public corporation and government instrumentality."). KU, by statute, is a

member institution of PASSHE. 24 P.S. § 20-2002-A(a)(8). The Third Circuit and district courts

within the Circuit have consistently held that PASSHE and its member universities are entitled to

sovereign immunity under the Eleventh Amendment.[2]

---

[2] *See Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 400 (M.D. Pa. 2013) (concluding
PASSHE member Bloomsburg University and its employees acting in their official capacities
were immune by reason of the Eleventh Amendment from federal claims brought against them);
*Coulter v. East Stroudsburg Univ.*, Civ. No. 10-877, 2010 U.S. Dist. LEXIS 43337, at *3 (M.D.
Pa. May 4, 2010) (finding Eleventh Amendment precluded civil rights liability and therefore
barred  Plaintiff's Section 1983 claim against East Stroudsburg University); *McKinnie v. Conley*,
Civ. No. 04-932, 2006 U.S. Dist. LEXIS 73934, at *7 (E.D. Pa. Oct. 6, 2006) (barring federal
claim against Cheyney University because "Cheyney is a part of [PASSHE], and as such, the
Commonwealth of Pennsylvania 'is the real, substantial party at interest.'") (internal citations
omitted); *O'Hara v. Ind. Univ. of Pa.*, 171 F. Supp. 2d 490, 495-96 (W.D. Pa. 2001) (holding it
is "well-settled" that PASSHE state universities are immune from suit under the Eleventh
Amendment) (citing *Skehan*, 815 F.2d 244)); *Seybert v. West Chester Univ.*, 83 F. Supp. 2d 547,
553 (E.D. Pa. 2000) (concluding that West Chester University is entitled to immunity solely due
to the fact that it is a "member institution" of PASSHE under 24 P.S. § 20-2002-A(a)(14));
*Layser v. Morrison*, 935 F. Supp. 562, 566 (E.D. Pa. 1995) (holding that West Chester

Plaintiffs' argument against sovereign immunity relies heavily on *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir. 1989). Specifically, Plaintiffs claim Defendants were required to apply the *Fitchik* factors to prove KU is entitled to sovereign immunity.[3] Plaintiffs further rely on cases in which KU was previously a defendant.[4]  (Pls.' Opp'n Mem. 11-

---

University enjoys Eleventh Amendment immunity because PASSHE enjoys the same and West Chester is a PASSHE entity); *Lach v. Robb*, 679 F. Supp. 508, 513 (W.D. Pa. 1988) (concluding "[i]t follows that the constituent parts of [PASSHE], the state universities, also share eleventh amendment immunity" after noting that PASSHE is immune from suit); *Lewis v. Kelchner*, 658 F. Supp. 358, 360 (M.D. Pa. 1986) ("Based upon *Skehan*, there is no question that a suit against a state college is prohibited by the Eleventh Amendment.").

[3] The *Fitchik* factors are as follows:

> (1) Whether the money that would pay the judgment would come from the state (this includes three of the *Urbano* factors—whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);
>
> (2) The status of the agency under state law (this includes four factors—how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and
>
> (3) What degree of autonomy the agency has.

*Fitchik*, 873 F.2d at 659.

[4] For example, Plaintiffs draw from *Barlieb v. Kutztown Univ.*, No. 03-4126, 2003 U.S. Dist. LEXIS 25178 (E.D. Pa. Dec. 1, 2003). In *Barlieb*, the court denied KU's 12(b)(1) motion to dismiss based on Eleventh Amendment grounds because Defendants failed to provide the court with ample case law demonstrating that KU was immune to suit. *Id.* Unlike *Barlieb*, here, Defendants have provided substantial support illustrating KU's immunity as a PASSHE school. (Defs.' Mot. Mem. 10-14.)  A recent decision out of this District confirmed same.  *Goff v. Kutztown Univ.*, Civ. No. 14-3415, 2014 U.S. Dist. LEXIS 150476, at *9-10 (E.D. Pa. Oct. 22, 2014).  To the extent Plaintiff has cited to other cases in which KU was a defendant, Eleventh Amendment immunity was not at issue; Plaintiffs' argument that immunity has been waived in this case by reason of said Defendants' participation in the instant proceedings is without merit. *See Borrell,* 955 F. Supp. 2d at 400 (finding immunity was not waived where "Defendants appeared only to defend this action, and they raised sovereign immunity at the earliest stages of this litigation.").

19.)  Additionally, Plaintiffs emphasize that "each state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances."  *Kovats v. Rutgers*, 822 F.2d 1303, 1312 (3d Cir. 1987).

Contrary to Plaintiffs' assertions, this Court recognizes that most district courts have not applied the *Fitchik* test in determining that PASSHE schools are entitled to sovereign immunity. *See, e.g., McKinnie*, 2006 U.S. Dist. LEXIS 73934, at *7; *O'Hara*, 171 F. Supp. 2d at 495-96; *Seybert*, 83 F. Supp. 2d at 553; *Layser*, 935 F. Supp. at 566; *Lach*, 679 F. Supp. at 513; *Lewis*, 658 F. Supp. at 360. This is likely because courts throughout the Third Circuit have already established that PASSHE and its fourteen universities enjoy sovereign immunity. *Id.* This also comports with Plaintiffs' assertion that each state university must be considered within its own particular context. *Kovats*, 822 F.2d at 1312. Specifically, the courts have long since evaluated a state university's potential sovereign immunity in the context of that university's connection, or lack thereof, to PASSHE. *E.g., O'Hara*, 171 F. Supp. 2d at 497 ("*Skehan* was by no means the first or last Third Circuit and Pennsylvania case to conclude that [PASSHE] *and its fourteen component universities* . . . enjoy immunity under the Eleventh Amendment.") (emphasis added); *Lach*, 679 F. Supp. at 513 ("It follows that [because PASSHE is a state agency immune from suit under the Eleventh Amendment] the constituent parts of [PASSHE], the state universities, also share eleventh amendment immunity."); *Seybert*, 83 F. Supp. 2d at 553 (granting West Chester University's motion to dismiss on sovereign immunity grounds solely because West Chester is a PASSHE university and therefore enjoys sovereign immunity). The *Kovats* court described this distinction between PASSHE and non-PASSHE universities.[5] The *O'Hara* court similarly

---

[5]  "We have previously held Pennsylvania state colleges and [PASSHE] entitled to immunity. On the other hand, district courts in this circuit have held that the University of Delaware, Temple University, the University of Pittsburgh and Penn State University, although affiliated

illustrated this distinction. 171 F. Supp. 2d at 499 n.8 (describing the Third Circuit's practice of distinguishing between PASSHE-related schools and non-PASSHE schools—such as Temple, Penn State University, and Pittsburgh—in its evaluation of a public university's sovereign immunity).

Thus, like other PASSHE-member universities, KU is an arm of the state by way of its affiliation with PASSHE and is therefore entitled to Eleventh Amendment sovereign immunity. ESU has similarly been held to be an "arm of the state" and also entitled to Eleventh Amendment sovereign immunity. *Mattison v. E. Stroudsburg Univ.*, Civ. No. 12-2557, 2013 U.S. Dist. LEXIS 52579, at *8 (M.D. Pa. April 12, 2013) (recognizing that ESU is "generally subject to immunity from suit under the Eleventh Amendment."); *Coulter v. E. Stroudsburg Univ.*, Civ. No. 10-0877, 2010 U.S. Dist. LEXIS 43866, at *3 (M.D. Pa. May 4, 2010) ("[ESU] is . . . an arm of the state" and therefore entitled to sovereign immunity).[6] Accordingly, this Court shall analyze each of Plaintiffs' claims in light of Eleventh Amendment restrictions.

### 1.      Age Discrimination and Retaliation under the ADEA

The ADEA remedies discrimination based on age. 29 U.S.C. § 623(a)(1). Specifically, the ADEA includes in its definition of employer "any agency or instrumentality of a State." 29 U.S.C. § 630(b)(2). However, the ADEA does not abrogate states' or state instrumentalities' sovereign immunity against suits brought by individuals for damages. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91 (2000) (holding Congress did not abrogate states' sovereign immunity to damages suits brought by private individuals under the ADEA); *Shahin v. Delaware*, 424 F.

---

with their states in varying degrees, are not alter egos of those states and therefore do not share the states' Eleventh Amendment immunity." *Kovats*, 822 F.2d at 1312 (internal citations omitted).

[6] As with KU, Pennsylvania law has recognized, by statute, that ESU is an arm of the state through its affiliation with PASSHE. *See* 24 P.S. § 20-2002-A(a)(5).

App'x 90, 92 (3d Cir. 2011) ("The Supreme Court has held . . . that the ADEA does not abrogate the states' Eleventh Amendment immunity to suits by private individuals for damages.") (citing *Kimel*, 528 U.S. at 91; *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 n.30 (3d Cir. 2006) (same) (citing *Kimel*, 528 U.S. at 91)). Moreover, Pennsylvania has specifically withheld its consent to suit in federal court. 42 Pa. Cons. Stat. § 8521(b).

As contained within Counts I and II of their Second Amended Complaint, all Plaintiffs have brought age discrimination/retaliation claims against Defendants PASSHE, KU and ESU pursuant to the ADEA. However, for the reasons just discussed, these defendants all enjoy sovereign immunity under the Eleventh Amendment and have not waived that protection. Accordingly, all ADEA claims against KU, ESU, and PASSHE shall be dismissed. *See Obotetukudo v. Clarion Univ.*, Civ. No. 13-0639, 2014 U.S. Dist. LEXIS 107927, at *2, 33 (W.D. Pa. Aug. 6, 2014) (noting that the Eleventh Amendment would bar an employee's ADEA claim against Clarion University – a PASSHE entity).[7]

### 2.   Gender Discrimination and Retaliation under Title VII

#### a.   Exhaustion of Administrative Remedies.

As a preliminary matter, Defendant KU argues Plaintiffs have not exhausted their administrative remedies with regard to their Title VII retaliation claims because they have not waited 180 days after filing their EEOC charge to file the instant civil action. (Defs.' Mot. Mem. 19) (citing *Occidental Life Ins. Co. v. E.E.O.C.*, 432 U.S. 355, 359, 361 (1977); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001)). To that end, they

---

[7]  Plaintiffs' age discrimination claims under the PHRA (Count IX) are similarly barred. *Moore v. Pa. Dep't of Military & Veteran Affairs*, 216 F. Supp. 2d 446, 454 (E.D. Pa. 2002) ("[A] plaintiff may never pursue a PHRA claim against Pennsylvania or its agencies in federal court.") (internal citation omitted).

claim "[f]or the two plaintiffs who even brought EEOC retaliation charges, maybe they received right to sue letters prematurely, but clearly their private rights of action on the retaliation claims have not yet accrued."  (Defs' Mot. Mem. 19.)  Defendants' request for dismissal on this basis is flawed.

The 180-day period Defendant KU relies on simply serves to provide the EEOC with sufficient time to investigate a charge. *Occidental*, 432 U.S. at 359. However, where the EEOC has issued a right-to-sue letter early, as it did here with regard to Bartlett's retaliation claim (Pls.' Opp'n Mem. Ex. F), a plaintiff may proceed in district court. *Burgh*, 251 F.3d at 470. ("The on-set of the 90-day period [when a plaintiff may file suit in district court] is generally considered to be the date on which the complainant receives the right-to-sue letter."); *Seybert*, 83 F. Supp. 2d at 551 (expressly holding that plaintiffs may bring suit in district court as soon as the EEOC issues a right to sue letter even when the letter is received prior to expiration of the 180-day period). Accordingly, it was not necessary for Bartlett to wait the full 180 days before filing suit.

Despite the foregoing, Plaintiffs' conclusory allegation that "[a]ll conditions precedent to the institution of this action regarding the EEOC and PHRC have been fulfilled; Plaintiffs' original Complaint was filed within 90 days of issuance of all Claimants' EEOC's Right to Sue letters" does not suffice for purposes of demonstrating exhaustion. (Second Am. Compl. ¶ 19.) With specific regard to Plaintiffs Bartlett and Yurvati, receipt of a Right to Sue Letter is a prerequisite for bringing a Title VII discrimination claim in federal court. *See Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 413 (3d Cir. 2010) ("A plaintiff bringing an employment discrimination claim under Title VII must comply with the procedural requirements set forth in 42 U.S.C. § 2000e-5. Before filing a lawsuit, a plaintiff must exhaust her administrative remedies

by filing a timely discrimination charge with the EEOC.  The EEOC will then investigate the charge, and the plaintiff must wait until the EEOC issues a right-to-sue letter before she can initiate a private action.") (internal citation omitted); *Burgh,* 251 F.3d at 469 ("The receipt of the right-to-sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in court under Title VII … A complainant may not bring a Title VII suit without having first received a right-to-sue letter.") (citing *Anjelino v. New York Times Co*., 200 F.3d 73, 87-93 (3d Cir. 1999)); *see also Rodridguez v. Ready Pac Produce,* Civ. No. 13-4634, 2014 U.S. Dist. LEXIS 64139, at *26 (D.N.J. May 9, 2014) ("The requirement that administrative remedies be exhausted *applies to both retaliation and discrimination claims under Title VII*.") (emphasis added).

Although Bartlett has submitted a copy of her Right to Sue Letter for her retaliation claim, no such Letter has been provided regarding her discrimination claim.[8]  As to Yurvati, there appears to be no Letter regarding either her discrimination or retaliation claim.  Instead, she relies upon an e-mail dated July 8, 2013 from EEOC Investigator Patricia Carrasco, who – in response to a communication from Plaintiffs' counsel - notified said counsel as follows: "I have processed and submitted the charge to be issued a NRTS. I cannot guarantee you when the Commission will actually issue the NRTS, that is not in my control."  (Pls.' Opp'n Mem. Ex. F.) Apparently based upon Ms. Carrasco's representation, Yurvati commenced suit on July 24, 2013. Although Defendants' do not elaborate on this in their Motion, they do note that Plaintiffs do not

---

[8] Bartlett's Right to Sue Letter pertains to EEOC Charge No. 530-2013-02479, which is the retaliation Charge she filed with the EEOC.  (ECF No. 25-5 at 2.)  Bartlett's discrimination Charge was assigned EEOC Charge No. 530-2012-01018 (ECF No. 22-4 at n.1) and no Right to Sue Letter has been provided to this Court by said Plaintiff for that claim.

aver that the EEOC issued a right to sue letter to Yurvati for her retaliation claim[.]"  (Defs.'
Mot. Mem. 3 n.2.)  This is correct.[9]

   This Court recognizes that Plaintiffs have had prior opportunities to amend their
Complaint and each time, failed to attach this pertinent documentation as exhibits thereto.  This
Court also notes that Plaintiffs have not requested leave to amend as an alternative to dismissal.
However, the court cannot definitively conclude at this point that Plaintiff Yurvati has failed to
exhaust her administrative remedies with regard to her Title VII discrimination and retaliation
claims, or that Bartlett failed to do so with regard to her discrimination claim.  *See Phillips v.
Sheraton Soc'y Hill*, 163 F. App'x 93, 95 (3d Cir. Pa. 2005) ("We cannot assume . . . that no
right-to-sue letter exists or that [plaintiff] failed to exhaust his administrative remedies merely
because he failed to attach a right-to-sue letter. This kind of omission can be corrected by
amendment and, therefore, permitting [plaintiff] an opportunity to amend his Complaint would
not be futile.").[10]  For this, and the reasons that follow, said Plaintiffs shall be afforded an
opportunity – as more clearly defined below - to cure the procedural deficiencies of their Title
VII claims.

### i.      Gender Discrimination

   Defendant KU also seeks dismissal of Count III of the Complaint on the basis of
Plaintiffs Bartlett and Yurvati's alleged failure to state a plausible claim of gender
discrimination.  (Defs.' Mot. Mem. 26-28.)  Under Title VII, it is unlawful for an employer "to

---

[9]   Although the e-mail sent by Yurvati's counsel to Ms. Carrasco on June 19, 2013 contains a
subject line entitled "Dismissal of Retaliation Charges – Response Needed[,]"  Ms. Carrasco's
subsequent response cannot suffice as the Right to Sue Letter required for either the
discrimination or retaliation claim.
[10]   Because this Court has not been provided with an opportunity to examine any potential Right
to Sue Letters regarding Bartlett and Yurvati's Title VII discrimination claims, it can make no
finding at this juncture regarding the timeliness of same.

discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e(2)(a). To establish a *prima facie* case of gender discrimination under Title VII absent any direct evidence, a female Plaintiff must plead sufficient facts to demonstrate that: "(1) [she] belongs to a protected class; (2) [she] was qualified for the position; (3) [she] was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). "As an alternative to the original fourth prong of the prima facie case, a plaintiff may show that similarly situated individuals outside the plaintiff's class were treated more favorably." *Grassmyer v. Shred-It USA, Inc.*, 392 F. App'x 18, 27 (3d Cir. 2010) (citing *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 939-40 (3d Cir. 1997)); *see also Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998) (same). To be similarly situated, "the Plaintiff [and any comparators] must . . . be similar in 'all relevant respects.'" *Opsatnik v. Norfolk Southern Corp.*, 335 F. App'x 220, 222-23 (3d Cir. 2009); *see also Cubbage v. Bloomberg, L.P.*, Civ. No. 05-2989, 2010 U.S. Dist. LEXIS 90765, at *69 (E.D. Pa. Aug. 31, 2010) ("To be considered 'similarly situated,' the comparator . . . 'must have dealt with the same supervisor, have been subject to the same standards of employment, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'") (internal citation omitted). The "central focus" in establishing a gender discrimination claim "is always whether the employee is treating 'some people less favorably than others because of their . . . sex . . .'" *Sarullo*, 352 F.3d at 798 (internal citations omitted); *see also Artz v. Cont'l Cas. Co.*, 720

F. Supp. 2d 706, 714 (E.D. Pa. 2010) (such an inference is raised if a plaintiff can show "that the defendant treated [a female plaintiff] differently than a male co-worker based on her gender.") [11]

Bartlett and Yurvati satisfy the first three elements because they have sufficiently alleged they belong to a protected class, both were qualified for their positions, and that KU took an adverse employment action against both women by terminating their employment. *See, e.g., Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999) (recognizing that being fired clearly constitutes an "adverse" employment action). Thus, this Court must assess whether said Plaintiffs have pled sufficient facts to raise an inference that they were terminated because of their gender.

Yurvati has pled facts sufficient to raise an inference of gender discrimination. Yurvati alleges she was the only female in her department prior to being fired. (Second Am. Compl. ¶¶ 44, 49.) Moreover, KU retained three male analysts in Yurvati's department. (Second Am. Compl. ¶¶ 45-46.) Yurvati alleges her job duties were assigned to at least two – possibly even

---

[11]   This Court notes that the *McDonnell Douglas* burden-shifting standard does not apply to Plaintiffs at this stage of the proceedings.  Therefore, for purposes of the instant 12(b)(6) analysis, they need not establish by a preponderance of evidence that Defendants' purported reason for terminating Plaintiffs' employment (namely, financial concerns) was a pretext for discriminatory conduct.  *See Hibbard v. Penn-Trafford Sch. Dist.,* Civ. No. 13-622, 2014 U.S. Dist. LEXIS 20237, at *16 n.7 (W.D. Pa. Feb. 19, 2014) (in discussing the burden-shifting *McDonnell Douglas* standard, the court recognized that "[b]ecause a Rule 12(b)(6) motion to dismiss merely tests the legal sufficiency of the complaint, it is necessary only to determine whether plaintiff's complaint sets forth a prima facie case of . . . discrimination . . . as evidentiary burdens are inapposite at the pleadings stage.") (citations omitted); *Massi v. City of Philadelphia*, Civ. No. 12-1309, 2013 U.S. Dist. LEXIS 41071, at *15-16 (E.D. Pa. Mar. 25, 2013) ("[T]he *McDonnell Douglas* standard is an evidentiary standard, not a pleading standard.'  Nonetheless, a plaintiff bringing a Title VII claim 'has the burden of pleading sufficient factual matter that permits the reasonable inference that [she] was [discriminated] against because of her race [or] sex.'") (citations omitted).  In that same vein, "[a] complaint in an employment discrimination lawsuit need not contain specific facts establishing a prima facie case of discrimination. Instead, a plaintiff merely must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Lapaglia v. Borough of Baldwin*, Civ. No. 12-1576, 2013 U.S. Dist. LEXIS 69423, at *8-9 (W.D. Pa. May 16, 2013) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (internal quotation and citations omitted).

three - male analysts following her termination. (Second Am. Compl. ¶¶ 36, 49); *see Scheidemantle v. Slippery Rock Univ.*, 470 F.3d 535, 542 n.6 (3d Cir. 2006) (emphasizing that "assignment [of job duties] - though short of hiring - constitutes more favorable treatment, as it is an effective filling of the position."). Thus, Yurvati has identified at least two individuals outside of her protected class  -  men - who were treated more favorably.  For purposes of the instant inquiry, these men may be deemed "similarly situated" to Yurvati because they were both analysts and working in the same department. *Cubbage*, 2010 U.S. Dist. LEXIS 90765, at \*69 (indicating that being "subject to the same standards of employment" and having "dealt with the same supervisor" are both factors supporting a finding that two employees are similarly-situated). Thus, Yurvati has pled facts sufficient to raise a plausible inference of discrimination. *Dalickas v. Summit Ridge Biosystems, Inc.*, Civ. No. 11-358, 2011 U.S. Dist. LEXIS 111451, at \*11 (M.D. Pa. Sept. 29, 2011) ("[T]he court must only determine at this stage whether [Plaintiff] has plead 'enough facts to raise a reasonable expectation that discovery will reveal evidence' that the circumstances of the adverse action imply discrimination.") (citations omitted).

Unlike Yurvati, Bartlett provides this Court with insufficient facts to infer her employment was terminated because of her gender.  Instead, Bartlett makes a conclusory statement that KU "treated [her] less favorably than male employees. . . ." (Second Am. Compl. ¶ 85.) Although Bartlett identified that she had been replaced, she fails to state the genders of her replacements. (Second Am. Compl. ¶ 75.)  Therefore, Bartlett's Title VII gender discrimination claim shall be dismissed for failure to state a claim. *Iqbal*, 556 U.S. at 663 ("[T]hreadbare

recitals of a cause of action's elements, supported by mere conclusory statements" will not satisfy pleading requirements) (citing *Twombly*, 550 U.S. at 555).[12]

Because Bartlett could potentially cure the procedural and substantive defects discussed above, dismissal of her Title VII discrimination claim shall be without prejudice and she shall be afforded leave to amend. With regard to Yurvati, although she has sufficiently pled facts to infer she was discriminated against on the basis of gender, her claim is also procedurally deficient for failure to provide the court with a Right to Sue Letter. As such, said claim shall be dismissed without prejudice and with leave to amend.

### ii. Retaliation

In Count IV of Plaintiffs' Second Amended Complaint, Bartlett and Yurvati allege gender retaliation under Title VII. KU seeks dismissal of Count IV on grounds that said Plaintiffs' retaliation claims have not accrued and are not plausible. (Defs.' Mot. Mem. 18, 26-

---

[12] Because the analysis for adjudicating gender discrimination claims under the PHRA is identical to that of a Title VII inquiry, this Court need not address Plaintiffs' PHRA claim for gender discrimination (Count XI) separately. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 455 n.6 (3d Cir. 2006) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)). However, because individual plaintiffs may not pursue PHRA claims in federal court against state entities entitled to sovereign immunity, Count XI must be dismissed. *Moore*, 216 F. Supp. 2d at 454 ("[A] plaintiff may never pursue a PHRA claim against Pennsylvania or its agencies in federal court.") (internal citation omitted); *see also Burda v. Pa. Dep't of Corr.,* Civ. No. 11-500, 2013 U.S. Dist. LEXIS 20207, at *41 (M.D. Pa. Jan. 4, 2013) (dismissing age and gender discrimination claims brought under the PHRA because the defendant was an "arm of the state" and therefore immune to same in accordance with the Eleventh Amendment); *Williams v. Pa. State Police Bureau of Liquor Control Enforcement*, 108 F. Supp. 2d 460, 465 (E.D. Pa. 2000) (finding it "quite explicit" that Pennsylvania's waiver of state sovereign immunity in state court does not waive the state's immunity in federal court under the PHRA); *Fitzwater v. First Judicial Dist*., Civ. No. 99-3274, 2000 U.S. Dist. LEXIS 4931, at *6 (E.D. Pa. Apr. 11, 2000) (finding that a plaintiff's gender discrimination claim against a state entity was barred by sovereign immunity "because the Commonwealth of Pennsylvania cannot be sued in federal court under state law.").

28.)[13]  Inasmuch as this Court has addressed the accrual issue above, it shall proceed directly to a plausibility assessment of these claims.

Under Title VII, it is unlawful for employers to discriminate against "any individual . . . because he has opposed any . . . unlawful employment practice" or because that individual has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must plead facts demonstrating: (1) s/he engaged in protected activity under Title VII; (2) the employer took an adverse employment action against him or her; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006).  With specific regard to retaliation in the form of a failure to hire/re-hire, "the plaintiff must also show: 4) that [s/he] applied for an available job; and 5) that [s/he] was qualified for that position."  *Janowski v. Sage Client 441*, LLC, Civ. No. 12-986, 2013 U.S. Dist. LEXIS 1141, at *9 (W.D. Pa. Jan. 4, 2013) (quoting *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.D.C. 2003)).

Considering the facts in a light most favorable to Plaintiffs, Yurvati has sufficiently pled a *prima facie* case of retaliation. First, Yurvati engaged in protected activity under Title VII by reason of the fact that she filed a discrimination complaint against KU.  *Blakney v. City of Phila.*, 559 F. App'x 183, 185-86 (3d Cir. 2014) (reiterating that bringing a discrimination complaint constitutes "protected activity" under Title VII). Second, Yurvati alleges KU refused to rehire

---

[13]  Although the Second Amended Complaint summarily concludes that Plaintiffs Sitkus, Godshall, Grant and Stahler were all retaliated against after they filed a Charge with the EEOC, the Complaint only includes said individuals in two retaliation Counts (II and XII) and none of these particular parties demonstrated that they exhausted their administrative remedies.  (Second Am. Compl. ¶¶ 69, 94, 101, 119)  However, because this Court has determined that Count II and XII must be dismissed on the basis of immunity, any attempt to cure these defects via amendment would be futile.

her (Second Am. Compl.¶ 62), a fact from which an adverse employment action may be inferred. *Blakney*, 559 F. App'x at 186.  Third, Yurvati has pled facts sufficient to demonstrate a causal connection between her EEOC charge and KU's refusal to rehire her. Specifically, Yurvati alleges Silberman "told her not to bother trying to apply for reemployment with KU *because she filed complaints against KU*." (Second Am. Compl.¶ 61) (emphasis added). Thus, Yurvati has pled sufficient facts to imply causation.  *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000) (clarifying that although "timing" is usually the determinative factor in proving causation in a retaliation claim "our case law clearly has allowed a plaintiff to substantiate [causation] . . . through other types of circumstantial evidence."). With regard to Yurvati's claim that KU retaliated by not re-hiring her for her old position or hire her for another position, she alleges "KU and PASSHE . . . actively advertised to hire for Yurvati's position, but refused to consider Yurvati" and that she "applied for a position with KU called 'Fiscal Assistant' in the Accounts Payable office: Yurvati was qualified for the position as to all 'minimum qualifications' and 'preferred qualifications.'"  (Second Am. Compl. ¶¶ 50, 62.)  Accepting these facts as true for purposes of the instant Motion, Yurvati has pled a plausible retaliation claim against KU.

Unlike Yurvati, Bartlett has not pled a plausible retaliation claim against KU. Bartlett satisfies the first prong since she engaged in protected activity, like Yurvati, by filing an EEOC charge against KU. However, Bartlett cannot satisfy the remaining elements. First, Bartlett's only allegation that KU took an adverse employment action is that *ESU* decided to not hire her. (Second Am. Compl. ¶¶ 77-81) (emphasis added). [14]  However, Plaintiffs' Second Amended

---

[14] Bartlett – former Director of Administrative Services and Dining Services at KU - did apply for two different positions at ESU: Temporary Enrollment Services Manager and Chief of Staff.

Complaint contains allegations by Bartlett of Title VII gender retaliation *only against KU*; not ESU. (Second Am. Compl. ¶¶ 126-27.) The only factual nexus between ESU's decision not to hire Bartlett and the named defendant, KU, is that ESU's Director of Human Resources, Theresa Fritsche, once worked for KU. (Second Am. Compl. ¶ 82.)  Plaintiff's averment that "ESU has conspired with KU and PASSHE to violate her rights because she had filed an EEOC charge against PASSHE and KU" (Second Am. Compl. ¶ 81) is not only a conclusion of law but is too attenuated to support any plausible inference of retaliation under Title VII.

Additionally, Bartlett alleges that KU stopped inviting her to certain university functions because of the EEOC charge. (Second Am. Compl. ¶ 84.) Even assuming this is true, KU's refusal to invite Bartlett to their functions does not constitute an adverse employment action. *See Moore*, 461 F.3d at 346 ("In evaluating whether actions are materially adverse, we must remain mindful that 'it is important to separate significant from trivial harms.'") (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). An employer's decision not to invite a former employee to their social functions cannot reasonably be construed as materially adverse.

In light of the above, Defendants' Motion to Dismiss shall be granted without prejudice as to Yurvati's Title VII retaliation claim and said Plaintiff shall be afforded an opportunity to cure the procedural defect that exists.  With regard to Bartlett's allegations of Title VII retaliation, despite the fact she has exhausted her administrative remedies on this claim, her Complaint fails to state a claim upon which relief can be granted.  Moreover, this Court finds

---

She was told by Defendant Fritsche (Director of Human Resources at ESU) that she was not qualified for either position.  (Second Am. Compl. ¶¶ 77, 79, 80.)

that in light of the facts presented, any further attempt by Bartlett to amend this claim would be futile.[15]

### 3.   Stahler's ADA Claim

Stahler alleges that KU "discriminatorily and systematically demoted and terminated [him] in violation of the [ADA]." (Second Am. Compl. ¶ 129.) Defendants move to dismiss pursuant to rule 12(b)(1), arguing the Eleventh Amendment bars suits against states pursuant to Title I of the ADA. (Defs.' Mot. Mem. 15.) This Court agrees.

Title I of the ADA prohibits disability discrimination in the realm of employment. *Tennessee v. Lane*, 541 U.S. 509, 516 (2004). The Eleventh Amendment bars actions brought against state agencies under Title I of the ADA. *Garrett*, 532 U.S. at 360 (holding suits in federal court brought by state employees under Title I of the ADA are barred by the Eleventh Amendment); *Patterson v. Pa. Office of Inspector Gen.*, 243 F. App'x 695, 696 (3d Cir. Pa. 2007) ("[A] suit under Title I of the Americans with Disabilities Act [is] barred by the Eleventh Amendment."); *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 193 (3d Cir. 2000) ("[W]e hold that the ADA is not a valid exercise of Congress' § 5 power and accordingly does not abrogate the States' Eleventh Amendment immunity from suit."). Stahler's ADA claim alleges

---

[15] Like Plaintiffs' PHRA discrimination claims, this Court need not consider Plaintiffs' PHRA retaliation claims (Count XII) independently. *Blakney*, 2014 U.S. App. LEXIS 5132, at *5 n.4 ("Because the analysis for adjudicating a retaliation claim under the PHRA is identical to a Title VII inquiry, we need not address [plaintiff's] PHRA claim separately."). However, as with Plaintiffs' other PHRA claims against KU, ESU, and PASSHE, the PHRA retaliation claims are barred by the Eleventh Amendment, and therefore must be dismissed. *See Moore*, 216 F. Supp. 2d at 454; *Williams*, 108 F. Supp. 2d at 465; *see also Zhaojin David Ke v. Edinboro Univ. of Pa.*, Civ. No. 08-268, 2012 U.S. Dist. LEXIS 114962, at *4 (W.D. Pa. Aug. 15, 2012) (dismissing PHRA claims against a PASSHE University "and the individual defendants in their official capacities . . . on the ground that they were barred by the Eleventh Amendment to the United States Constitution."), *aff'd*, 518 F. App'x 104 (3d Cir. 2013) (per curiam), *cert. denied,* 134 S. Ct. 707, 187 L. Ed. 2d 569 (U.S. 2013).

discrimination by his past employer, KU (Second Am. Compl.¶ 129) and therefore falls under Title I. *See Lane*, 541 U.S. at 516.

Inasmuch as KU is entitled to sovereign immunity under the Eleventh Amendment, Stahler's ADA claim against KU shall be dismissed. *See, e.g., Lach v. Robb*, 679 F. Supp. 508, 513 (W.D. Pa. 1988) ("[I]t follows that the constituent parts of [PASSHE], the state universities, also share eleventh amendment immunity.").[16]

### 4.    Equal Protection and Due Process under Section 1983

All Plaintiffs bring claims against KU, ESU, PASSHE, and all individual Defendants in their professional and individual capacities under 42 U.S.C. § 1983. (Second Am. Compl. ¶¶ 130-138.) Specifically, Plaintiffs contend Defendants "discriminated against [them] in violation of the Equal Protection Clause[,]" particularly "with respect to the due process denied Yurvati through her hearing with PASSHE." (Second Am. Compl. ¶¶ 131, 134, 137.) Again relying upon the Eleventh Amendment, Defendants move to dismiss these claims. (Defs.' Mot. Mem. 10.) Alternatively, Defendants argue that Counts VI and VII should be dismissed because neither KU, ESU, PASSHE, nor any of the Defendants in their official capacities are "persons" within the meaning of 42 U.S.C. § 1983. (Defs.' Mot. Mem. 23-24.) Lastly, Defendants contend that Section 1983 claims set forth in Count VIII of the Complaint must be dismissed because they are "non-cognizable conclusory allegations." (Defs.' Mot. Mem. 26.)

---

[16] Plaintiff Stahler's disability claim under the PHRA (Count X) is likewise barred by the Eleventh Amendment. *Moore*, 216 F. Supp. 2d at 454; *Burda v. Pa. Dep't of Corr.*, Civ. No. 11-0500, 2013 U.S. Dist. LEXIS 20207, at *41 (M.D. Pa. Jan. 4, 2013) ("It is well-settled that the Eleventh Amendment bars suits against states and state agencies alleging claims brought under the PHRA.") (citing *Patterson v. Pennsylvania Office of Inspector General*, 243 F. App'x 695, 696 (3d Cir.2007)), *aff'd,* 545 F. App'x 181 (3d Cir. 2013).

### a.     KU, ESU, PASSHE and Defendants in their Official Capacities

As with the ADEA and ADA, Congress did not abrogate state sovereign immunity by enacting 42 U.S.C. § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Similarly, Pennsylvania has not waived its immunity under Section 1983. 42 Pa. Cons. Stat. § 8521. Accordingly, there is a general rule that state agencies enjoy sovereign immunity regarding claims brought under 42 U.S.C. § 1983. *O'Hara*, 171 F. Supp. 2d at 498.   However, the Supreme Court of the United States has articulated an exception to certain state agencies' immunity under Section 1983. *See Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (holding local governments and municipalities may be sued under Section 1983 when the alleged violation "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). With specific regard to PASSHE and its member institutions, the Third Circuit has held that "because [PASSHE] and its component universities are [arms] of the state, not of any municipality or local government, the 'custom, policy and practice' exception of *Monnell* is inapplicable." *O'Hara*, 171 F. Supp. 2d at 499; *see also Povish v. Pa. Dep't of Corrs.*, Civ. No. 13-0197, 2014 U.S. Dist. LEXIS 42578, at *10 (E.D. Pa. Mar. 28, 2014) ("The effect of *Monell* is to allow suit against municipalities, not the states themselves or agencies thereof."); *Seybert*, 83 F. Supp. 2d at 553 (dismissing Section 1983 claims brought against PASSHE university pursuant to Eleventh Amendment sovereign immunity); *Boykin v. Bloomsburg Univ. of Pa.*, 893 F. Supp. 378, 394 (M.D. Pa. 1995) ("[A] suit against [Pennsylvania] or one of its agencies [under section 1983], such as Bloomsburg University, is proscribed by the Eleventh Amendment."). Accordingly, Count VI of Plaintiffs' Second Amended Complaint shall be dismissed, as said claim is barred by the Eleventh Amendment.

Count VII of Plaintiffs' Second Amended Complaint - alleging discrimination against all named individuals in their "professional" capacities – is similarly flawed and cannot be sustained.  Defendants in their "professional" or official capacities enjoy the same immunity as institutional arms of the state. *See, e.g., Seybert*, 83 F. Supp. 2d at 553, n.13 ("[A]s arms of the state, West Chester University and [the university official] acting in his official capacity are not 'persons' under § 1983.") (citing *Will,* 491 U.S. at 71)); *see also Opoku v. Educ. Comm'n for Foreign Med. Graduates,* 574 F. App'x 197, 201 (3d Cir. 2014) (finding that because state commission was deemed immune from Section 1983 liability, so too were its employees who faced 1983 claims brought against them in their official capacities).  Accordingly, Count VII shall be dismissed.

### b.  All Individual Defendants in their Individual Capacities.

In Count VIII, Plaintiffs aver that all individual defendants violated Section 1983 "in their individual capacities." (Second Am. Compl. ¶19.) The Third Circuit has held that individual government defendants "in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Individual liability may be pled in two forms. *Sheils v. Bucks Cnty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 127 n.5 (3d Cir. 2010)). The first form requires a plaintiff to aver with sufficient factual support that the individual defendant(s) established and maintained a discriminatory policy, practice, or custom with "deliberate indifference to the consequences." *A.M. ex rel. J.M.K. v.*

*Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). The second form requires plaintiffs to plead plausible facts suggesting the individual defendants participated in violating the plaintiff's rights, directed others to violate them, or, had knowledge of and acquiesced to the violations. *Santiago*, 629 F.3d at 129 n.5.

Applying this standard to the averments set forth in Plaintiffs' Complaint, Plaintiffs have presented plausible claims under Section 1983 against all individual defendants except Welsh, ESU's president.  Plaintiffs' only relevant averment regarding Welsh is a conclusory statement that Defendants' violations "only occurred with the active involvement and consent o[f] Maria Welsh." (Second Am. Compl. ¶ 83.) [17]  This Court cannot draw any plausible inference that Welsh knew her subordinates were violating Plaintiffs' rights or directed them to do so. Moreover, Plaintiffs cannot sufficiently implicate Welsh based solely on her supervisory status. *Evancho*, 423 F.3d at 354 (affirming district court's dismissal when the complaint "merely hypothesiz[ed] that [a supervisory official" may have been involved because such a "conclusion . . . is not a reasonable inference to be drawn from the facts alleged."); *Sheils*, 921 F. Supp. 2d at 417 ("It is well-settled that supervisory liability cannot be predicated solely on a *respondeat superior* theory."). Thus, Count VIII shall be dismissed to the extent that it implicates Welsh.

As for all other individual defendants, Plaintiffs plead sufficient facts to survive the instant motion to dismiss:

- Vargas, Cevallos, Silberman, Picus, Green, and Fritsche were all "final decision makers" regarding who would be terminated (Second Am. Compl. ¶¶ 29, 55-56);

- Vargas and Picus knew that every person fired was over the age of fifty (Second Am. Compl. ¶ 56);

[17]  Welsh apparently did not begin her duties as President of ESU until July 2012.  (Defs.' Mot. Mem. 8 n.3.)

- Picus testified that she was aware of "the disparate impact theory under the age discrimination acts but simply did not consider it" (*Id.*);

- Vargas insisted Stahler work despite not being cleared following a heart attack, demoted Stahler, appointed Stahler as Assistant Dean, and eventually fired Stahler (Second Am. Compl. ¶¶ 107-110, 112, 114-117);

- Silberman testified at Yurvati's PASSHE hearing that KU supervisors, including Defendant Green, "made their own lists as to who was to be terminated" (Second Am. Compl. ¶ 56);

- Picus testified at Yurvati's hearing that KU supervisors made lists of those who should be fired and Cevallos reviewed these lists of suggested terminations (*Id.*);

- Silberman specifically told Yurvati to not "bother trying to apply for reemployment with KU because she filed complaints against KU" (Second Am. Compl. ¶ 61);

- Prior to becoming the Director of Human Resources at ESU where she rejected Bartlett's application for two separate positions Bartlett was purportedly qualified for, Fritsche worked in the Human Resources Department at KU and through her contacts at KU, was aware Bartlett had filed an EEOC charge against PASSHE and KU (Second Am. Compl. ¶¶ 79-80, 82); and

- Both Silberman and Green were the individuals whom actually terminated several Plaintiffs (Second Am. Compl. ¶¶ 72, 88.)

At the very least, an inference can be made that each individual defendant had knowledge of, or acquiesced in, the potential violation of Plaintiffs' rights. *Santiago*, 629 F.3d at 129. Accordingly, the Motion to Dismiss Defendants in their "individual capacities" shall be denied except as it applies to Defendant Welsh.

### 5. Aiding and Abetting under the PHRA

Unlike Title VII, the PHRA provides for individual liability in cases where a person aids and abets discriminatory acts. Under the PHRA, it is unlawful for "any person . . . to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice." 43 P.S. § 955(e).  As a preliminary matter, this Court rejects

29

Defendants' argument that because PASSHE, KU and ESU are entitled to Eleventh Amendment immunity and they represent the "employers" in this case, a PHRA aiding and abetting claim cannot survive. (Defs.' Mot. Mem. 20.) This is simply not accurate. *See Snyder v. Pennsylvania*, Civ. No. 09-1814, 2010 U.S. Dist. LEXIS 114311, at *21-22 (M.D. Pa. Oct. 27, 2010) (recognizing that "the PHRA contemplates individual liability for aiding and abetting employers' violations of the PHRA" and concluding that Eleventh Amendment immunity for an employer does not extend to individual defendants when it comes to potential liability for aiding and abetting under the PHRA).

Turning now to the procedural validity of Plaintiffs' aiding and abetting claim, it is well-settled that claimants must exhaust all administrative remedies prior to filing suit under the PHRA. *E.g., Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). As a requirement of exhaustion on an aiding and abetting claim, a plaintiff must specifically name all persons alleged to have committed acts of discrimination in his or her administrative complaint. 43 Pa. Cons. Stat. § 959. However, "[t]he Third Circuit has recognized [an] exception to the exhaustion requirement 'when the unnamed party received notice and when there is a shared commonality of interest with the named party.'" *Kunwar v. Simco*, 135 F. Supp. 2d 649, 653 (E.D. Pa. 2001) (quoting *Schafer v. Board of Public Educ.*, 903 F.2d 243, 252 (3d Cir. 1990)); *see also Hildebrand v. Allegheny Cnty.*, 757 F.3d at 113 (holding that if timely, an EEOC Intake Questionnaire may constitute a proper charge of discrimination); *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 398-99 (E.D. Pa. 2002) ("A plaintiff's claims are preserved as long as she names the defendants in the body of the EEOC administrative complaint . . . It is not necessary that the defendants be named in the caption as a respondent."); *Carter v. Phila. Stock Exch.*, Civ. No. 99-2455, 1999 U.S. Dist. LEXIS 13660, at *11-13 (E.D. Pa. Aug. 25,

1999) (holding that Plaintiff satisfied notice by listing named defendants in an Intake

Questionnaire).

        In this case, Stahler included Vargas' name in his EEOC charge, thereby satisfying the

PHRA's notice requirement (Pls.' Opp'n Mem. Ex. E at 26; ECF No. 25-4 at 26); *see also Smith*

*v. Ctr. for Organ Recovery & Educ.,* Civ. No. 13-428, 2013 U.S. Dist. LEXIS 112394, at *13

(W.D. Pa. Aug. 9, 2013) (concluding that there need not be a "formal reference to an aiding and

abetting claim" in the EEOC Complaint in order for there to be a valid aiding and abetting claim

under the PHRA – the "allegations of fact [need only be] substantially present in the EEOC

Complaint."). Moreover, the allegations set forth at Paragraphs 101-119 of Plaintiffs' Second

Amended Complaint constitute a plausible claim by Stahler of aiding and abetting under the

PHRA.  Accordingly, Defendants' Motion to Dismiss same shall be denied.[18]

        Defendants further argue the aiding and abetting claims against the remaining defendants

should be dismissed because Plaintiffs failed to provide those individual defendants' names in

---

[18]   To the extent Defendants argue that the PHRA aiding and abetting claim brought by Stahler
against Vargas should be dismissed because the pleadings suggest a direct incident of
discrimination (Defs.' Mot. Mem. 20), said argument is without merit. A plaintiff may bring an
aiding and abetting claim under the PHRA against a supervisory employee, such as Vargas, for
direct discrimination. *See Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren
P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998) ("[A]n individual supervisory employee can be
held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for his
own direct acts of discrimination or for his failure to take action to prevent further discrimination
by an employee under supervision") (citing *Dici v. Pa.*, 91 F.3d 542, 552-53 (3d Cir. 1996)); *see
also Nelson v. Allan's Waste Water Serv., Inc.,* Civ. No. 12-1309, 2014 U.S. Dist. LEXIS 2839,
at *5 (W.D. Pa. Jan. 10, 2014) (recognizing that "PHRA 'aiding and abetting' claims [are not
foreclosed] against supervisory employees for '[their] own direct acts of discrimination or for
[their] failure to take action to prevent further discrimination by an employee under
supervision.'") (quoting *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*,
20 F. Supp. 2d 885, 887 (E.D. Pa. 1998)); *Comstock v. Borough of Berwick*, Civ. No. 12-1136,
2013 U.S. Dist. LEXIS 133551, at *8 (M.D. Pa. Sept. 18, 2013) ("'[A]n individual supervisory
employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to
§ 955(e) for his own direct acts of discrimination or for his failure to take action to prevent
further discrimination by an employee under supervision.'") (quoting *Slater v. Susquehanna
County*, 613 F. Supp. 2d 653, 670 (M.D. Pa. March 30, 2009)).

their administrative charges or complaints. (Defs.' Mot. Mem. 20-21.) For the following reasons, Defendants' Motion to Dismiss the aiding and abetting claims shall be granted as to Defendant Welsh and denied as Defendants Picus, Silberman, Vargas, Green, Cevallos, and Fritsche.

Plaintiffs never named Welsh in any of their administrative complaints, charges, or intake questionnaires. (Defs.' Mot. Exs. D1, D2, D3, D4; Pls.' Opp'n Ex. E; ECF No. 25-4 at 2-8, 23-26.) Thus, Welsh did not receive adequate notice that claims would be brought against her individually. *Schafer*, 903 F.2d at 252; *see also Hills v. Borough of Colwyn*, 978 F. Supp. 2d 469, 481 (E.D. Pa. 2013) (dismissing PHRA claims against individual defendants when plaintiff's EEOC charges never alleged any of the individual defendants aided or abetted the named defendant); *DuPont v. Slippery Rock Univ. of Pa.*, Civ. No. 11-1435, 2012 U.S. Dist. LEXIS 3531, at *11 (E.D. Pa. Jan. 11, 2012) (dismissing PHRA claim against university officials when the "Complaint only mention[ed] the fact that Plaintiff was being discriminated against by [the university] and its officials, not by those officials in their individual capacities."). Accordingly, the aiding and abetting claims against Defendant Welsh shall be dismissed.

Defendants Picus, Silberman, Vargas, Green, Cevallos, and Fritsche were all individually named in Plaintiffs' various administrative charges and complaints. (Pls.' Opp'n Mem. Ex. E.) Despite Defendants' contention that only "fleeting references" were made to Defendants Silberman and Green, said parties were adequately put on notice and as such, Plaintiffs shall have the opportunity to further litigate their claim against these parties. Accordingly, Defendants' Motion to Dismiss Plaintiffs' PHRA aiding and abetting claim shall be denied as to all individual defendants except Welsh.

32

6.    **Declaratory and Injunctive Relief**[19]

In their Second Amended Complaint, Plaintiffs ask this Court to declare "that Defendants' conduct deprived Plaintiffs of their rights under the constitutions and laws of the United States and the Commonwealth of Pennsylvania."  (Second Am. Compl. ¶ 151.) Defendants move to dismiss this claim, arguing Plaintiffs lack standing to assert same, since they are seeking a declaration of - and injunctive relief for – a past harm. (Defs.' Mot. Mem. 30.) This Court agrees.

The Third Circuit has specified that a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (citing *Grunthal & Co., Inc. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993)). Here, Plaintiffs ask for exactly that.  Their Complaint alleges that Defendants' conduct "violated" and "deprived" them of their rights.  (Second Am. Compl. ¶ 151.)[20]  In their Opposition to the instant Motion, Plaintiffs argue that they have continued to suffer discrimination. (Pls.' Opp'n Mem. 42.) However, arguments made in response to a motion do not constitute properly-pled facts and may

---

[19]   Although Count XIV of Plaintiffs' Second Amended Complaint is labeled "Declaratory and Injunctive Relief" and is being lodged against *all* Defendants, said Count is devoid of any reference to an injunction.  In any event, "Absent a state's consent, the eleventh amendment bars a civil rights suit in federal court that names the state as a defendant, *even a claim seeking injunctive relief.*" *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (emphasis added) (citing *Alabama v. Pugh*, 438 U.S. 781,781-82 (1978)).

[20]   In the "Remedies Requested" portion of Plaintiffs' Second Amended Complaint, Plaintiffs indicate that they want this Court to direct Defendants "to cease its [sic] discriminatory and retaliatory failure to hire/rehire and to place a statement publicly in each Plaintiff's personnel file stating *Defendants terminated and failed to rehire each Plaintiff solely for discriminatory reasons* . . ." (Second Am. Compl. § VI) (emphasis added).  When read in context, this language makes it even more apparent that Plaintiffs seek declaratory and injunctive relief for no other reason than to adjudicate the past conduct of Defendants.  *See Brown v. Fauver,* 819 F.2d 395, 400 (3d Cir. 1987) ("While a § 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief[.]'") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)).

not be considered as such by the court.  *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("'It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'") (internal quotation omitted).  Plaintiffs' allegation that they were discriminated against and harassed, and that they "fear" these alleged wrongs will continue against others (Second Am. Compl. ¶ 151), constitutes nothing more than a conclusion of law and speculative conjecture.  Accordingly, Count XIV of Plaintiff's Second Amended Complaint shall be dismissed.

### B.      Claims for Punitive Damages under the PHRA

Defendants next move to dismiss or strike Plaintiffs' requests for punitive damages under the PHRA. Because the Third Circuit and the Commonwealth of Pennsylvania have in fact held that punitive damages are unavailable under the PHRA, Defendants' Motion shall be granted and Plaintiffs' demand for punitive damages shall be stricken. *See Snyder v. Bazargani,* 241 F. App'x 20, 23 (3d Cir. 2007) ("We are mindful of the fact that punitive damages are not available under the PHRA."); *Hoy v. Angelone*, 720 A.2d 745, 751 (1998) (assessing legislative intent behind the PHRA and determining punitive damages are not available under same).

### C.      Motion to Transfer Venue

#### 1. Legal Standard

In the concluding pages of Defendants' Motion to Dismiss, they ask this Court to sever and transfer venue of any remaining claims by Bartlett related to ESU, Fritsche, Welsh and PASSHE, to the Middle District of Pennsylvania.  (Defs.' Mot. Mem. 31-33.)  In support of their request, Defendants assert Plaintiffs have not opposed said request.  This is not so.  (Pls.' Opp'n Mem. 42-43.)

Section 1404(a) of Title 28 provides as follows:

> § 1404. Change of venue
>
>> (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

"Section 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Lafferty v. Gito St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007). In exercising this discretion, courts must keep in mind the following:

> "The burden of establishing the need for transfer ... rests with the movant." *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Courts consider a variety of factors in determining the proper forum, and "[w]hile there is no definitive formula or list of the factors to consider ... courts have considered many variants of the private and public interests protected by the language of § 1404(a)." *Id.* Still, "[w]hether to transfer a case is generally committed to the discretion of the district courts." *In re United States,* 273 F.3d 380, 387 (3d Cir.1995). Of course, "a plaintiff's choice of proper forum is a paramount consideration in any determination of a transfer request, and that choice ... 'should not be lightly disturbed.' " *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970) (quoting *Ungrund v. Cunningham Brothers, Inc.,* 300 F. Supp. 270, 272 (S.D.Ill.1969)). Thus, " 'a transfer should not be liberally granted.' " *Id.* (quoting *Handlos v. Litton Industries, Inc.,* 304 F. Supp. 347, 352 (E.D.Wis.1969)). As such, " 'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.' " *Id.* (quoting *Owatonna Manufacturing Company v. Melroe Company,* 301 F. Supp. 1296, 1307 (D.Minn.1969)).

*Wilkinson v. Progressive Ins. Co.,* Civ. No. 10-1760, 2011 U.S. Dist. LEXIS 14063, at *3 (M.D. Pa. Feb. 14, 2011). *See also Reassure Am. Life Ins. Co. v. Midwest Res., Ltd.,* 721 F.Supp.2d 346, 352 (E.D. Pa.2010) ("The defendant bears the burden of proving that venue is proper in the transferee district and that convenience and justice would be served by transferring the action to another district. '[U]nless the balance of convenience of the parties is strongly in favor of

defendant, the plaintiff's choice of forum should prevail.'") (internal citation omitted); *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP,* No. Civ. No. 08-4786, 2009 U.S. Dist. LEXIS 75257, at *9 (E.D. Pa. Aug. 24, 2009) ("There is nothing ... in the language or policy of § 1404(a) to justify its use by defendants to defeat the advantages accruing to plaintiffs who have chosen a forum which, although it was inconvenient, was a proper venue." (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 633–34 (1964)).

The private and public factors to be considered by the court in assessing a request to transfer venue on the basis of convenience, include:

> [T]he plaintiff's forum preferences; Defendant's preferences; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial conditions; the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and the location of books and records ... [e]nforceability of judgment; practical considerations that could make the trial easy, expeditious or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home, the public policies of the fora, and the familiarity of trial judges with the state law for diversity cases.

*Aamco Transmission Inc. v. Johnson,* 641 F.Supp.2d 464, 466 (E.D.Pa.2009) (citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)). *See also Falu–Rodriguez v. Democracia USA, Inc.,* Civ. No. 10–3811, 2011 U.S. Dist. LEXIS 833, at *4–5 (E.D. Pa. Jan. 4, 2011) (highlighting the need to assess "the convenience of the parties as indicated by their relative physical and financial condition," as well as "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).").

### 2. Request for Transfer

Defendants assert the following facts in support of their Motion to Transfer Venue: (1) PASSHE is located in Harrisburg, which is in the Middle District; (2) ESU is located in Monroe County, which is in the Middle District; (3) Defendants Welsh and Fritsche prefer the Middle District; (4) all relevant witnesses are located in the Middle District; and (5) by applying to work at ESU, Plaintiff Bartlett demonstrated that the Middle District is not inconvenient for her. (Defs.' Mot. Mem. 32-33.)

In light of this Court's rulings regarding Defendants' PASSHE, ESU and Welsh, said Defendants' arguments for transfer are rendered moot.  As to the remaining Defendants' request, this Court must stay mindful of the deference due to Plaintiffs' choice of forum while still considering both the public and private factors.  *See Kielczynski v. Consol. Rail Corp.*, 837 F. Supp. 687, 689 (E.D. Pa. 1993) ("A court should not lightly disturb plaintiffs' choice of forum and should hold defendants to establishing a strong preponderance in favor of transfer.").

With regard to the parties' physical and financial conditions, there is no doubt that litigating in the Eastern District would be less costly for Defendants than litigating in the Middle District would be for Plaintiffs. Not only do most Plaintiffs live in the Eastern District, (Second Am. Compl. ¶¶ 1-7), but they all suffered financial loss when their jobs were terminated. Moreover, Defendant KU is located in the Eastern District, along with its employees—Vargas, Cevallos, Silberman, Picus, and Green.  A large institution such as Kutztown University would not incur more costs litigating in its home district than would Plaintiffs, most of whom would need to travel in order to litigate in the Middle District. Therefore, Defendants have not met their burden to establish this particular factor. *See Falu–Rodriguez,* 2011 U.S. Dist. LEXIS 833, at

*4–5 (reiterating the need to assess "the convenience of the parties as indicated by their relative physical and financial condition[.]")

Next, all surviving claims undoubtedly arose due to actions taken or withheld in the Eastern District, since each surviving claim involves either Defendant KU or its employees. Furthermore, in assessing the relative ease of access to sources of proof, common sense suggests that an overwhelming majority of the witnesses and/or sources would be situated in the Eastern District since all of the alleged claims implicate KU's operations as an employer. This Court notes that a single defendant, Fritsche, resides in the Middle District. However, it would neither serve the interests of justice nor convenience to transfer venue to the Middle District based on this one fact, especially since the remaining Defendants all reside in the Eastern District.

Turning to the public factors, Defendants have failed to demonstrate that local interests would be better served by deciding this case in the Middle District. With specific regard to the preference of deciding local controversies at home, Defendants' only arguments draw from the fact that ESU is located in the Middle District. Given that ESU is no longer a party to this action, said arguments are no longer of any consequence.  Regardless, Plaintiffs' claims are in no way uniquely tied to the Middle District.

Accordingly, this Court finds that Defendants have failed to satisfy their burden of proving the interests of justice would be better served by a transfer to the Middle District. Accordingly, their request for same shall be denied.[21]

---

[21] Defendants' Motion to Sever the remaining claim against Fritsche shall likewise be denied. In their own Motion, Defendants assert that "[d]efendants bear the burden of demonstrating that bifurcation is appropriate." (Defs.' Mot. Mem. 33) (citing *Reading Tube Corp. v. Emp'r Ins. of Wausau*, 944 F. Supp. 398, 404 (E.D. Pa. 1996)). However, they fail to offer a single reason as to why this Court should sever Fritsche's claims. (Defs.' Mot. Mem. 33.) Instead, Defendants merely laid out the applicable legal standard this Court must consider when assessing such a

**V.       Conclusion**

In view of the foregoing, Counts I and II of Plaintiffs' Second Amended Complaint shall be dismissed because the Eleventh Amendment bars Plaintiffs from suing Defendant Kutztown University - a state entity - under the ADEA. As for Counts III and IV, although Plaintiff Yurvati has sufficiently stated plausible Title VII gender discrimination and retaliation claims, she has failed to demonstrate that her administrative remedies have been exhausted.  Accordingly, these claims shall be dismissed with leave to amend.  With regard to Plaintiff Bartlett, she has neither stated a plausible Title VII gender discrimination claim, nor provided this Court with any indication that she has properly exhausted her administrative remedies regarding same. However, because this Court cannot definitively conclude that Plaintiff Bartlett cannot cure these defects with regard to her Title VII gender discrimination claim, she shall be granted leave to amend.  With respect to Bartlett's Title VII retaliation claim, although she has exhausted her administrative remedies, her Complaint is devoid of the facts necessary to establish a plausible retaliation claim against KU.  Because the extensive facts contained within her Second Amended Complaint provide this Court with no indication that further amendment could cure this defect, Count IV as it pertains to Bartlett shall be dismissed with prejudice.

Inasmuch as the Eleventh Amendment bars Plaintiff Stahler from suing Defendant KU under the ADA, Defendants' Motion to Dismiss Plaintiff Stahler's ADA claim (Count V) shall be granted.  With regard to Plaintiffs' claims brought pursuant to 42 U.S.C. § 1983, Defendants' Motion to Dismiss Counts VI and VII shall be granted because the Eleventh Amendment similarly bars those claims. However, Defendants' Motion to Dismiss Count VIII claim shall be granted as to Defendant Welsh but denied as to the remaining individual defendants because the

---

request. (*Id.*) Without any factual support, this Court must deny Defendants' Motion to Sever any claims brought against Defendant Fritsche.

Eleventh Amendment does not bar suit against Defendants in their individual capacities and Plaintiffs have met their burden with regard to everyone except Welsh.

Plaintiffs' state law claims brought under the PHRA in Counts IX, X, XI, and XII shall be dismissed, as these claims are barred by the Eleventh Amendment since ESU, KU and PASSHE all enjoy Eleventh Amendment immunity and Pennsylvania's waiver of immunity under the PHRA only applies in state court.[22]  With regard to Count XIII, Plaintiffs have sufficiently stated a PHRA aiding and abetting claim against all individual defendants except Welsh. Defendants' Motion to Dismiss or Strike Plaintiffs' request for punitive damages under the PHRA shall be granted because the PHRA does not permit punitive damages. Lastly, Defendants' Motion to Dismiss Plaintiffs' request for declaratory relief shall be granted and their Motion to Transfer or Sever Venue shall be denied.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II

_____
C. Darnell Jones, II        J.

---

[22]  *See Merces-Clark v. Pennsylvania,* Civ. No. 13-2111, 2013 U.S. Dist. LEXIS 164961, at *7-8 (E.D. Pa. Nov. 19, 2013) ("While the Pennsylvania legislature waived immunity for suit under the PHRA in its own courts, the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity for PHRA claims brought in federal courts.").